Russell Greer
P. O. Box 46602
Las Vegas, NV 89114
801-895-3501
russmark@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT COURT OF NEVADA

---

| | |
|---|---|
| **RUSSELL G. GREER,** | **PLAINTIFF'S COMPLAINT FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT, INJUNCTIVE RELIEF & STATE LAW INTENTIONAL TORT CLAIMS** |
| Plaintiff | |
| v. | |
| **FREMANTLE PRODUCTIONS,** a corporation | **JURY TRIAL DEMANDED** |
| Defendant | Case No.:   2:21-cv-01905-RFB-NJK |
| | Judge: |

Plaintiff Russell G. Greer comes forward now with his Complaint against Defendant named above and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action seeking redress for suffering disability discrimination by Fremantle, an entertainment production company, under the Americans with Disabilities Act (hereafter referred to as the "ADA"), in relation to Plaintiff being discriminated and denied a chance to go on Fremantle's show, America's Got Talent. In addition to discrimination, Defendant recklessly inflicted upon Plaintiff emotional distress.

## JURISDICTION AND VENUE

2.       This is a civil action seeking declaratory-injunctive relief for disability discrimination under the Americans with Disabilities Act (ADA): 42 U.S.C. *§ 12182, et seq* and monetary damages per NRS 651.070 (herein referred to as the Nevada-ADA).

3.       This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C. §§ 1331.*

4.       This Court also has jurisdiction because there is complete diversity between both parties. *28 U.S.C. § 1332* and the damage amount is above $75,000.00.

5.       Venue is proper in this district pursuant to *28 U.S.C. §§ 1391.*

## PERSONAL JURISDICTION

6.       This Court has specific and general personal jurisdiction over Defendant, as Fremantle has made substantial contacts with the state. Either specific or general jurisdiction can be found on Defendant.

## SPECIFIC PERSONAL JURISDICTION

7.       Specific jurisdiction can be found that Fremantle's show (aka its product), America's Got Talent, offers the winner of the show a headerliner show in Las Vegas, in addition to a million dollar prize. This has been a perk on the show since 2008. AGT is the same show Greer was

2

trying to get on and said show's perks was an advantage Greer was trying to obtain. This shows

Defendant has substantial contacts with Nevada that relates to the cause of action and Fremantle

has purposefully availed itself to Nevada. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141

S.Ct. 1017, 592 U.S. (2021).

8.      Additionally, Fremantle has partnered with the Luxor Hotel & Casino in Las Vegas to

offer a live version of America's Got Talent. From the Luxor home page, it reads: "America's

Got Talent Las Vegas LIVE.  The show will perform two times per night, five nights a week, at

Luxor Theater. MGM Resorts International, ***Fremantle*** and Syco Entertainment, three

entertainment powerhouses, have collaborated to produce this must-see, variety-style production

for audiences of all ages." Luxor Las Vegas.

(https://luxor.mgmresorts.com/en/entertainment/americas-got-talent-las-vegas-live.html). (2021).

The show has also been heavily marketed in Nevada and carried by Nevada news outlets. *Lineup*

*Revealed for "America's Got Talent" live show in Las Vegas.* News3LV. (2021).

(https://www.google.com/amp/s/news3lv.com/amp/news/local/lineup-revealed-for-americas-got-

talent-live-show-in-las-vegas). Defendant has placed its product (its shows) into the commerce of

Nevada and thus Fremantle has the  "intent or purpose" to serve the forum state to bring Nevada

residents and tourists of Nevada to its shows and in turn, profit from the attendance on the Vegas

Strip and in turn, stimulate the Nevada economy. It has purposely availed itself into Nevada's

commerce.

9.      The claims relate to the forum state because the prestige of having a Vegas show enticed

Plaintiff to invest in his accommodations for his disability, so that he could be on equal footing

to compete for the advantages Fremantle was offering. Further, Plaintiff auditioned for the show

while in Vegas because Fremantle designated specific days for certain days and 02/08/21 was the

last day of the Western States auditions. Greer even moved from Utah to Las Vegas, Nevada

SPECIFICALLY to find accommodations to assist him in auditioning.

10.     Applying the 9th Circuit "but for" test for specific jurisdiction, if Fremantle's show AGT did not offer its prestigious perks of having a show in Vegas and did not offer a prize of any kind of the sort, Plaintiff would not have invested in his accommodation and gone through the harm he went through to move from Utah to find accommodations and audition for AGT in Vegas to compete for the prize of having a show in Las Vegas. It was the advantages of having a show in Vegas, and a million dollar prize, that lured Plaintiff. Without that prize and privilege and prestige, Plaintiff's harm would not relate to the forum state, nor would it relate had he not auditioned in Vegas nor suffered his injuries by learning of his rejection while in Vegas. There is a strong "relationship among the defendants, the forum, and the litigation'—the `essential foundation' of specific jurisdiction." *Ford v.Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).

## **GENERAL JURISDICTION**

11.     General jurisdiction can also be found because Fremantle is essentially at home by maintaining an active business and registered agent in Carson City, Nevada.

12.     Fremantle has an active business license in Nevada, with a registered agent in Carson City, Nevada. This Nevada business was created in 2008, which is the same time AGT started offering a show in Vegas. Fremantle's Nevada's last business filing was in 05/2021. (https://esos.nv.gov/EntitySearch/BusinessFilingHistoryOnline).

13.     Fremantle heavily investing in Las Vegas as a perk and privilege for its show and partnering with other Nevada businesses shows that its essentially at home in Nevada.

14.     Given the substantial amount of contacts that Fremantle has with Nevada, including partnering with the Luxor for an AGT Live show and offering the winner of the show  a headliner gig in Vegas, the same show that is the subject of the litigation, and maintaining an active Nevada business license, it is clear that the plaintiff's cause of action "relates to"

Fremantle's contacts with the forum state and that there is specific and general personal jurisdiction.

## PARTIES

15.     Plaintiff Russell G. Greer resides in the State of Nevada. Greer also has a facial disability termed, "moebious syndrome". This essentially means that Greer's 7th cranial facial nerves are paralyzed and so he cannot close his lips and his daily life functions of communicating are difficult. For instance, though he has a paralegal degree, his disability has made it hard to find work in law firms or in a high paying position because communication is essential in those roles. Not only is speaking difficult, he is also often shunned for his deformity, thus limiting his social opportunities. EXHIBIT A (contains photo of Plaintiff).

16.     Defendant Fremantle is incorporated in Burbank, California and produces many different reality based TV shows, namely the show, "America's Got Talent" (hereafter referred to as "AGT"), which is the show Greer auditioned for and knows he was discriminated by the producers from appearing on the show. As established, this Court has jurisdiction over Defendant.

## GENERAL ALLEGATIONS

### Background of Plaintiff

17.     Greer has had a long held dream of getting into the entertainment industry as a songwriter and an entertainer, but with a facial paralysis, his dreams have been stifled and hindered because of his disability because communication is essential as an entertainer.

18.     Greer's disability is such a speech hindrance that he even has trouble pronouncing his own last name. When he says "G", some think he is saying "P". He can't use his lips to form clear words. He has had to do years of speech therapy to get to where he's at in his communication level. So it should be no surprise to this Court that his disability puts him at a disadvantage as an aspiring entertainer.

19.     In high school, in 2009, Greer was in the drama club and the club went to different schools to perform skits. And Greer can remember being laughed at by audience members because of his disability. Shortly afterwards, his teacher urged him that if he pursued his entertainment career, he should "stay behind the camera". Greer has seen opportunities taken from him because of his disability throughout his life. Greer's entire life has been filled with a search for purpose and belonging.

20.     Growing up in Utah, Greer didn't really have any serious entertainment options to pursue. His family flirted with the idea of him being an "extra" (background actor) in LDS professionally produced movies, but they weren't sure how casting directors would react with a disability on camera.

21.     In 2015-2016, when Greer was beginning to get serious about his musical pursuits, he had many heartbreaking experiences of trying to work remotely with out of state music producers, but because of his disability, they couldn't understand him. This isn't a problem a non-disabled musician faces.

22.     When Greer has posted videos online of himself playing music, he has been mercilessly harassed by trolls who have attacked him for his deformity, which is another struggle non-disabled musicians don't face. It is interesting how in a world that champions underdogs, strangers can be so cruel to those they do not know.

23.      Greer's disability has caused him to doubt his own talent at times, as he is a talented entertainer stuck in a body where he can't clearly express himself or where others have doubted his talents because of how he looks. For years, instead of chasing his dreams, he was discouraged and working as a janitor. As shown, not only does Greer face the struggle of communication, he also faces the struggle of being accepted by society and trying to be seen as more than a deformity; fighting to be given chances in not just the entertainment industry, but also in his college degree field of law as a legal assistant.

24.     Besides his disability struggles, Greer has faced the struggles of the Hollywood system that is grounded centrally on networking and nepotism.

25.     Because of unsolicited policies and not knowing anybody within the industry, Greer has essentially "spun his wheels" in regards to his efforts. At times, he feels like a failure.

26.     Greer has written and produced many songs, which are on streaming platforms like Spotify. The effort it takes for him to produce these are tremendous. He works with a professional producer who helps Greer tie up the loose ends of his music. Greer write all of his own music. The effort costs him a lot of money for the production costs, hiring vocalists and for the mixing/mastering. Despite working with producers and being talented, he again is stuck in the rut of not having the right connections.

27.     Greer figured a reality show like AGT would give him much needed publicity to jump-start his entertainment career. Many musicians have started their careers this way.

## AMERICA'S GOT TALENT

28.     America's Got Talent (AGT) is a reality television show that launched in 2006. The premise is to find unknown talent (although many acts have had had varying degrees of success before even going on the show) and have those acts compete through different rounds in front of celebrity judges for a million dollar prize. The judges buzz off acts they don't like and have the acts they do like, proceed forward in the competition. The acts get narrowed down to a Top 30 group, where a live audience and viewers can vote who moves forward.

29.     AGT was the perfect reality show to give Greer a boost to his entertainment career because the show has a variety of acts that have gone on, whereas other shows are strictly limited to one category like singing or cooking, etc, and the contestant is limited to one person, whereas groups can go onto AGT and act as a single contestant. AGT is the type of format where Greer could have an accommodation (other entertainers) help him with his act, as doing a solo act wouldn't be feasible.

30.     The important thing about AGT is that it's not a cut-throat competition show to get on, say like, American Ninja Warrior, where world class athletes compete for a prize. No, with AGT, the producers look for unique acts with inspiring life stories. Sometimes, the show will have an very silly acts, like a guy singing the "Tequila" song with karaoke.

(https://youtu.be/mVCC0MBT6bE).

31.     Per the official audition site for the show, AmericasGotTalentAuditions.com, the show's producers offer the following advice for auditions:

32.     Be original.

33.     Stand out from the crowd.

34.     Be fearless.  *Audition* Tips *and Advice.*

(https://americasgottalentauditions.com/faq/audition-tips-and-advice/).

35.     The show regularly features "sob stories" of people talking about different adversities in their lives, such as a blind contestant with autism or a man wrongly incarcerated in prison for 23 years.

36.     This all led Greer to believe that if he tried his best, he could honestly make it on the show, as he has could inspire others with his story and his talent.

<u>**REASONABLE MODIFICATION**</u>

37.     Several competitions and tournaments have allowed disabled contestants to have reasonable accommodations. The most notable example is the Supreme Court case of *PGA Tour v. Martin,* where the Court allowed a disabled golfer to use a golf cart. The decision came down to deciding that such an accommodation didn't alter the nature of the tournament, where contestants usually just walked. The accommodation was also found to be necessary for Martin to compete in the competition.

38.   Likewise, Greer needed an accommodation that made it necessary for him to compete on AGT. Greer wanted to perform an original pop song he wrote about show judge Heidi Klum, and

since the song involved singing, Greer needed to invest in an accommodation, a vocalist, to be his song's vocals, as Greer himself cannot clearly or coherently sing because of his disability. The accommodation fit within his talent, as he is a songwriter and he writes songs and his songs involve lyrics.

## HIRING AN ACCOMMODATION

39.    Greer didn't just wake up one morning and decide to audition for AGT. Rather, his audition was planned out a year in advance in February of 2020. He was going to audition for the 2021 Season (16) of AGT.

40.    With his producer, they produced the audition song, which was an original song about celebrity show judge Heidi Klum. They studied successful acts from different musical shows and created the style of the song based on what had been successful, while showing originality. The song would then act as a reference song for a live band to follow.

41.    Greer then spent the next several months saving up money to find professional band mates to help him perform the song, as due to his disability, he is unable to audition by himself a pop song, e.g. can't sing the lyrics clearly.

42.    Greer was unable to find talent in Utah, so Greer made the move to Las Vegas, Nevada to find talent to help him in December of 2020. Greer currently lives in Vegas.

43.    Once he was located in Vegas, Greer reached out to different musicians for connections. He eventually found a drummer, a singer and a back up dancer. Greer was on the keyboards and a keytar he specifically bought for the audition. His accommodations are professional musicians who have done jobs on the Vegas Strip.

44.    Greer then used his money to rent rehearsal space in a rehearsal studio in Las Vegas.

45.    In total, Greer spent roughly 3,000 dollars for the audition.

46.    As explained, the costs were an accommodation to his disability because Greer is already at a disadvantage with auditioning.

**The Day of the Audition**

47.   The day of the audition was 02/08/2021 over Zoom. All auditions would be done virtually because of COVID. EXHIBIT B.

48.   Greer and his band set up a Zoom call to have a video call with a Fremantle producer to perform the audition. Greer also had to fill out an information form and in that form, he explained he had a disability and that his efforts were being done as an accommodation to aid said disability.

49.   The audition went smoothly. By the end of the act, the producer was clapping and told Greer he enjoyed the act.

50.   The producer asked Greer to submit the video on the online portal as well and then told him good job.

51.   Per the contest rules, all acts would be notified by Spring of 2021 as to whether they made it on the show. EXHIBIT C.

52.   After the audition, Greer's band mates were jumping up and down and hugging Greer, ecstatic. They all assumed, based on the producer's reaction, that they had made it onto AGT.

53.   Months passed by, with Greer so optimistic to receive an email from the producers. But an email never came.

54.   Greer also noticed that the YouTube video he submitted, at the producer's request, also was not viewed. Greer began to grow worried. The YouTube video was important because it contained a better quality audition than the Zoom audition. EXHIBIT D.

55.   April 2021 approached and although he never received an email from the producers, one of the celebrity judges posted on Instagram that filming started.

56.   Greer was shocked. He began to have a panic attack and he vomited. He was in disbelief because the producer's reaction did not match the end result. Surely, something happened during the period of months.

57.   In a haze, Greer reached out to a producer on 03/26/21 on the AGT helpline email and was told to try again "next year" by a person running the email. The email gave no specifics on Greer's audition, just to try again. EXHIBIT E.

58.   After spending 3,000 dollars on this audition, Greer couldn't believe the response.

59.   Greer figured he could try reaching out to a producer for reconsideration and so he sent Fremantle a letter and sent it to the Burbank location in April 2021.

60.   Greer waited two weeks and received no response. Greer then hired a lawyer under contract to write a reconsideration letter on his behalf, citing the facts and claiming Greer was a victim of discrimination. EXHIBIT F.

61. The letter read: "

*April 12, 2021*

*Via Certified Mail – Signature Required*

*America's Got Talent Production*

*Fremantle*

*2900 W. Alameda Ave., Ste. 800*

*Burbank, CA  91505*


*Re:  Russell Greer;*

*Formal Request for Reconsideration*

*To Whom It May Concern:*

*Our office has been retained by Russell Greer in connection with America's Got Talent (AGT") denial of Mr. Greer a chance to perform on the show. Please accept this correspondence as a formal request for reconsideration as to Mr. Greer and his band to be given an opportunity to perform on AGT.*

It is our understanding that Mr. Greer auditioned for AGT this past February. Mr. Greer has a facial disability termed "Moebious Syndrome" (the "syndrome"), which has made all aspects of his life difficult, especially with communicating. In essence, Mr. Greer's 7th cranial facial nerves are paralyzed and he cannot close his lips. Mr. Greer worked really hard on his audition, and spent $2,000 to hire a band to help him. When Mr. Greer auditioned at the virtual audition, the producer really liked Mr. Greer's work, and requested that he submit videos through an online process. Mr. Greer and his band were very excited as they thought that the encouragement from the producer indicated that they had made it on the AGT.

However, Mr. Greer never heard back from the producer or AGT, and learned that filming had already started – reflecting that Mr. Greer and his band had not made AGT. Thereafter, Mr. Greer learned that the videos he had submitted at the request of the producer were never viewed. Mr. Greer wrote a letter to the producers of AGT, asking them to reconsider their decision. No one has replied to Mr. Greer's correspondence. Mr. Greer feels he was discriminated against by AGT and its' producers.

Through his work and music, Mr. Greer attempted to convey his story of overcoming adversity, demonstrating how he did not let his challenges stop him from accomplishing his dreams. Mr. Greer contends he has the talent and skill to be granted a spot on AGT, and he has demonstrated his talent in the video he submitted at the request of the producer.

Mr. Greer believes he was indirectly discriminated against in light of AGT's denying him a spot. Mr. Greer's face is paralyzed and he has trouble communicating, and thus, he was at a disadvantage when auditioning. That is the reason for him paying $2,000 to professional band members to perform his song.

Pursuant to the Equal Employment Opportunity Commission, indirect discrimination occurs when there is a particular policy that affects persons with disabilities unequally. Here, AGT rejected Mr. Greer's position on the show, and that rejection was based on discrimination

*because AGT failed to take into consideration that Mr. Greer had to put together a production to demonstrate his talent because of his disability – Mr. Greer is unable to go out on a stage and perform his song by himself.*

*Therefore, based on the above, Mr. Greer hereby makes a formal request to sign a contract with AGT to perform on the show in 2022. He has already auditioned, he was applauded and praised by the producer, and he produced further videos of his song(s) at the request of AGT's producers. Mr. Greer has demonstrated his skill and talent, which is the basis for having him perform on the show.*

*We have consulted with our client regarding his available options and avenues of redress, and we have been authorized to engage in confidential settlement negotiations. If you have any interest in resolving this matter in such a manner, please contact the undersigned via email and we will have an assistant or paralegal contact you to schedule a call. Please ensure you reference RUSSELL GREER in the subject line of your email.*

*Our client wishes to resolve this matter amicably. We look forward to hearing from you, or your representative, to discuss this matter more meaningfully."*[1]

62.   The letter was delivered to Fremantle. Soon afterwards, Greer's YouTube video suddenly had views. The video was set on unlisted, so only those with the link could view the video. So this confirmed the Fremantle producers received Greer's request. EXHIBIT G.

63.   Greer waited many months for a reply and never received any reply.

64.   Greer made contact with Fremantle VP of Legal Affairs Kovan Saaty, in September of 2021, and still received no reply. EXHIBIT H. In fact, it wasn't just one message Greer sent. Greer made four messages to Kovan Saaty between September to October of 2021. He also reached out to Diane, Kovan's assistant, and two different listed ADA emails. He also left a

---

[1] Said firm was solely retained for writing the letter and representing Plaintiff in modification terms. They are not involved with the current case because they don't work contingency basis.

voice message on Kovan's phone. Thus it wasn't just one message that possibly got lost or buried. It was 8 messages, in a span of 6 months, from Greer and the attorney under contract who were trying to make an ADA allowed modification request. 8 polite and professional messages. To ignore the request, without any explanation or response (as was shown) is discrimination, per the statute language of US Code 42 12182(2)(A)(ii).

## TITLE III OF THE ADA

65.     On July 26, 1990, Congress enacted the Americans with Disabilities Act (ADA) to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress also enacted the ADA to assure individuals with disabilities have "full participation" in public accommodations. 42 U.S.C. § 12101(a)(7).

66.     Title III of the ADA, codified as 42 U.S.C. 12182, protects the rights of disabled individuals in places of public accommodations.

67.     Courts have held that production companies offering privileges and chances to compete on a show, do in fact qualify as a place of public accommodation. *Rendon v. Valleycrest Productions*, (11th Cir. 2002) (which involved disabled contestants being unfairly screened out to be contestants on the game show, "Millionaire").

## NOT AFFECTING DEFENDANT'S SPEECH

68.     As a preliminary caution for this Court, to help ponder the claims: since America's Got Talent is not a scripted show, it is not linked to an artistic narrative. Unlike a scripted show in which there is an intended message tied to a scripted artistic narrative, reality television shows do not seek to hire contestants to convey a particular message.  Rather, they seek to hire for an intended purpose-depicting "real life" in a reality-based setting.

69.     With AGT, it's to show off talent and compete for a prize, not to portray a message of a screenwriter. Thus, without being tied to an artistic message, casting decisions in neutral reality

14

programs are not subject to broad First Amendment treatment and so the governmental goal of promoting diversity on television should trump any First Amendment claims of Fremantle. *An Immovable Object and an Unstoppable Force: Reconciling the First Amendment and Antidiscrimination Laws in the Claybrooks Court.* Vanderbilt Journal of Entertainment & Technology Law. (2015).

70.     With that said, this case is not challenging Fremantle's speech, nor the expressive content of AGT, but rather, this case is holding Fremantle liable for their failing to make a reasonable modification for Greer, per ADA Title III, and the resulting emotional fall out from their outrageous and reckless conduct.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF US CODE**
**42 12182(2)(A)(ii) — DEFENDANT FAILED TO MAKE MODIFICATIONS TO THEIR**
**PROCEDURES AND PRACTICES**

71.     Russell Greer realleges each and every allegation in paragraphs 1 through 70 as if fully set forth herein.

72.     Title III of the ADA provides that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182.

73.     Although Title III of the ADA does not have the words  "qualified individual with a disability", courts have been instructed to apply Title II's wording to Title III. *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141, 154 (1st Cir.1998).

74.     As established above with *Rendon,* Fremantle is a public accommodation, as they were offering privileges and advantages to compete on their show, AGT, for a one million dollar prize, and they are a private, entertainment entity. 42 U.S.C. § 12181(7)(C ).

75.     As previously established, Greer has a disability as defined by the ADA, as it substantially limits his communication and substantially limits his social opportunities. 42 U.S.C. § 12102(1)(A). Said disability had Plaintiff at a disadvantage when auditioning.

76.    42 12182(2)(A)(ii) holds that it's discrimination to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. US Code 42 12182(2)(A)(ii).

77.    To state a Title III claim, Plaintiff shows that: "(1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. American Multi-Cinema Inc,* 364 F.3d 1075 (9th Cir. 2004).

78.    Having shown that Greer has a disability under the ADA and that Fremantle was offering entertainment privileges and advantages as a public accommodation, the contention Plaintiff raises is not that Fremantle employed a discriminatory policy, but rather, Fremantle's AGT producers failed to adhere to company policies of affording opportunities to disabled contestants and abiding by Fremantle's commitment to equal access for people with disabilities and thus it had a discriminatory effect in practice. (See said policy in paragraph 87).

79.    Although Greer was a qualified individual and contestant (qualified per the Zoom producer's favorable feedback), the producers for Fremantle discriminated against Plaintiff by denying Greer an opportunity as a disabled entertainer and contestant to appear on the show and enjoy the privileges and advantages AGT was offering, which goes against Fremantle's policies of equal access. Thus the acts and practices of the producers discriminated against Greer.

80.    Fremantle further discriminated against Greer by failing to adhere to its own policy of affording opportunities to disabled contestants by overlooking that Greer's efforts were made to act as a reasonable accommodation and that his efforts were necessary for him to compete on the show, which he made clear on his informational form he was provided and that he filled out and

in one of the videos he submitted online. When Greer stated he had a disability and that his efforts in forming this group were to accommodate his disability, that *should have triggered a deeper analysis of his audition, per case law*. Such oversight stemmed from the acts and practices of the AGT producers. Oversight is established with Greer's YouTube video having no views until after filming started, when the lawyer sent the letter, and so it can safely be assumed anything else Greer wrote, such as explaining his disability and accommodations, were ignored as well. Indeed, the ADA defines discrimination as a public accommodation treating a disabled patron the same as other patrons, despite the former's need for a reasonable modification. *Fortyune v. American Multi-Cinema Inc*, 364 F.3d 1075 (9th Cir. 2004),

81.     By Fremantle failing to see that Greer utilized reasonable accommodations that were necessary for him to compete for the privileges and advantages of AGT, that he wasn't just another act, and ignoring or overlooking the effort he put in as a disabled contestant and thus treating him like other non-disabled contestants, the rejection and oversight had a discriminatory effect in practice by not following their policies and adhering to the ADA to give Plaintiff equal access and a chance at competing for the advantages and privileges of AGT.

82.     The existence of a policy of non-discrimination is prima facie evidence of awareness on the part of Fremantle and its producers of the federally protected rights of plaintiff and their duty in ensuring reasonable accommodation and equal access.

83.     After the producers discriminated against Greer by not letting him compete for the privileges and advantages of AGT and overlooking/ignoring that his efforts were meant to be accommodations, he then sought modification from Fremantle to modify the rejection.

84.     When Greer's contract attorney contacted Fremantle through letter in April 2021, Fremantle failed to address the discriminatory actions of the producers and their mistake of rejecting a qualified contestant with a disability and modify their oversight of Greer's accommodation efforts.

85.     Modification in this instance would have been that even though Greer was not selected for the 2021 show, a modification would have been seeing how much Greer invested in his audition to compensate as an accommodation, seeing that he was actually talented and letting him on the show for the 2022 season, as the legal reconsideration letter asked for, without having him audition again like the AGT Helpline told him to do, as he was a qualified contestant, per the Zoom producer's favorable reaction. This fits within the policy of Fremantle (as shown in paragraph 87) to allow **exceptions** and **modifications** for contestants. The modification would be necessary to afford Plaintiff  Fremantle's privileges and advantages, as it would be redundant to make Plaintiff preliminary audition again. There is no guarantee that Plaintiff wouldn't be rejected/ignored again due to producer oversight and lose even more money and suffer more damages if he were to go through preliminary auditions again. Nor is he in the same financial position to gather accommodations to audition again. The only way he could have accommodations help him is through an agreement (or court order) with Fremantle to let him on the next season of the show.

86.     This would have been a very reasonable modification and could have easily fit within a case by case basis approach, as Greer showed talent,  harm and loss. This would have afforded Greer the privileges and advantages of the show, per the statute, and wouldn't have altered the show or competition, as Fremantle's producers frequently reach out to acts to come onto the show without auditioning[23], [4]groups of more than one person frequently audition on the show and Fremantle has previously made a deal with the Department of Justice that they would allow disabled contestants to make modification requests for exceptions. "A modification that provides

---

[2] Good Mythical Morning YouTube channel details how they were called by AGT producers to go on the show with their "Dope Zebra" skit. They didn't go to an audition call — AGT called them.  https://youtu.be/rxrzvGNhDOg
[3] *20 Facts About America's Got Talent that Fans Would Be Surprised To Learn.* TheThings.com (2020). (Point 8 states that AGT producers recruit talent on the show that never preliminary audition). (https://www.google.com/amp/s/www.thethings.com/20-facts-about-americas-got-talent-that-fans-would-be-surprised-to-learn/amp/).
[4] Couldn't it be argued that the producers themselves are fundamentally altering the show's purpose by having acts on the show that bypass the preliminary audition? So any claims of Plaintiff's modification requests altering the show are wholly arbitrary and unwarranted.

an exception to a peripheral tournament rule without impairing its purpose cannot be said to "fundamentally alter" the tournament." *PGA Tour v. Martin,* 532 US 661 (2001). Most importantly: the modification was only asking to go on the show to audition in front of the celebrity judges. Greer wasn't asking to automatically win the prize or for any unfair advantages.

87.     Back in 2011, Fremantle even agreed that it would make modifications for disabled contestants upon written request. This agreement was made between the DOJ and FremantleMedia after three discrimination complaints were filed regarding their show, *The Price is Right* (TPIR). *Settlement Agreement Under the ADA Between USA, Fremantle and CBS.* ADA.gov (2011). (https://www.ada.gov/price-is-right.htm). EXHIBIT I.

88.     Per paragraph 17 of the 2011 ADA agreement: "Consistent with its current stated practices, [Fremantle] will make reasonable modifications to policies, practices, and procedures to afford opportunities and access to individuals with disabilities, including but not limited to individuals who wish…. to become a contestant on the Show. Reasonable modifications are ***exceptions***, modifications, and adjustments to policies, practices, and procedures that are necessary to avoid discrimination against an individual with a disability. Requests for reasonable modifications may be made orally or in writing by or on behalf of an individual with a disability." EXHIBIT J.

89.      Even though this agreement was made for TPIR, there is no reason Fremantle as a company can't adhere to similar modification policies for all of its programs because in Exhibit C of the DOJ-Fremantle agreement, a document states that Fremantle has a commitment to public access for people with disabilities. This seems to read that Fremantle's policy applies to all of its shows. Additionally, the document states that Fremantle makes reasonable accommodations that may be necessary to provide equal access for individuals with disabilities to be selected, compete, and win on "the Show"  (assuming this applies to all of their shows).

90.     Greer cannot find a company-wide anti-discrimination policy for Fremantle. However, looking through their website, it says: "we believe in giving all people a voice. We are committed to stories of diversity across genres, continents and cultures." (https://fremantle.com/about/). However, the DOJ website defines a settlement agreement as an "out-of-court resolution that requires a signed agreement, or memorandum of understanding, and **performance by the defendant.**" ( https://www.justice.gov/opa/pr/justice-department-releases-memorandum-litigation-guidelines-civil-consent-decrees-and). Performance in this regard could infer the DOJ meant for Fremantle to apply that agreement and policy liberally, since, as stated, Exhibit C makes it seem Fremantle has a wide policy.

91.     It makes no logical or legal or practical sense for Fremantle to stipulate that it "recognizes that the American public welcomes a television game show in which all individuals, including persons with all types of disabilities, have an equal opportunity to be selected as a contestant, participate, compete for prizes, and win. Fremantle is therefore committed to providing equal access to individuals with disabilities to be considered and selected as contestants and to compete for and win prizes," yet ignore Plaintiff, a disabled contestant, or for Fremantle to say because the agreement was only for TPIR, that the same policies can't be expected for AGT.[56]

92.     Fremantle is in breach of its own agreement with the DOJ and its promised practices and policies of accommodating contestants with disabilities and in violation of ADA law and its website's belief of diversity.

93.     Fremantle ignored Greer's requests for modification, requests that he and the attorney under contract made numerous times through certified mail, email and phone message.

---

[5] At the time of this writing, Greer has reached out to the DOJ attorney who helped reach this agreement with Fremantle and see if the attorney believes the agreement was meant to be applied broadly. He will update the Court with a response.
[6] If a company in general has a certain department (say, their legal department) sanctioned by the DOJ, obviously, it wouldn't excuse another department (their finance department) to continue with the complained of behavior.

94.     Going back to Fremantle's ADA agreement with the DOJ, it states in paragraph 23,  that upon ten days of receiving an ADA complaint it will investigate such claims and return a response after 90 days. 90 days after ten days of receiving the Complaint, would have been July 23rd, 2021. At the time of this writing, it's October 2021 and still no response from Fremantle. This is going off of the belief that the agreement was meant to be applied broadly to Fremantle as a whole.

95.     As stated, although this agreement was for TPIR, there is no reason Fremantle as a company can't abide by a broad agreement like this, as it's the same company and TPIR is housed at the same location as AGT: 2900 W. Alameda Ave, Suite 800, Burbank, CA 91505, which TPIR's site lists as the ADA Coordinator address. The AGT site lists no ADA Coordinator, only that it's copyrighted by Fremantle. EXHIBIT K.

96.     By failing to make any modification or even attempting to return any communication to Greer or the contract attorney, Greer was discriminated, per the statute.

97.     Greer has thus satisfied a Title III claim.

98.     Just like Martin needed a golf cart in *PGA* to be his legs, Greer needed a vocalist to be his voice to perform his pop songs.

99.      This present case, as *PGA* showed, is about trying to get Plaintiff on equal footing, not give him an unfair advantage. As the *PGA* court mentioned, "The other golfers have to endure the psychological stress of competition as part of their fatigue; Martin has the same stress plus the added stress of pain and risk of serious injury. As he put it, he would gladly trade the cart for a good leg. To perceive that the cart puts him—with his condition—at a competitive advantage is a gross distortion of reality." *PGA v. Martin*, 532, US 661 (2001).

100.     Likewise, while rejected contestants may suffer from disappointment on not making it on AGT, Greer has to deal with the disappointment, plus the added loss of feeling inadequate because of a disability and the discriminatory effects Greer faced by investing in a reasonable

accommodation and that not even being considered, despite being told he was talented, or for any modifications being accepted. The pain Greer suffers from coping with his disability is "undeniably greater than the fatigue his able-bodied competitors endure from walking the course." *Id.,* at 1251.

101.    As much as Greer would like to, his disability does not realistically allow him to sit at a piano by himself and sing for any kind of audience, let alone a talent competition show, like a non-disabled contestant can do. In fact, when Greer would practice in his bottom floor apartment for the audition, by himself, at his piano, passerbys would walk past his window and loudly and rudely mock his disability. It was hurtful, but Greer's dream and determination of getting on AGT kept him strong. His motivation, in part, was to rise above his haters and the bigots of the world, who treat disabled people like secondary citizens. Bigots who feel tough (but obviously insecure about themselves) to walk past a complete stranger's home and mock him. Greer also wanted to inspire others with challenges.

102.    The vocalist, other crew and Greer have not performed together since the virtual audition, proving that Greer retained the vocalist and crew solely as an accommodation for the AGT audition and that they were not a regular band or group. Further, when Greer wrote down the act name, he put his name and not a group name, thus showing that he was auditioning as himself and that his group were indeed his accommodation, not auditioning as a regular band or group. Lastly, Greer even told the people he hired that he was not looking to form a band, but rather retaining their services to act as an accommodation for his disability.

## **REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF**

103.    Because a private party cannot collect money damages under the ADA, Greer requests injunctive relief, per 42 USC 12188(2).

104.    Per 42 USC 12188(2), "where appropriate, injunctive relief shall include…modification of a policy or provision of alternative methods."

105.     The injunctive relief Plaintiff requests is an order that Fremantle places Greer on Americas's Got Talent for the 2022 season, which begins filming in April 2022, thus relief would be requested to be issued as soon as possible. Such an order would be giving Plaintiff, a disabled contestant, access to the privileges and advantages of AGT.

106.     Injunctive relief is appropriate because Fremantle has demonstrated that they do not care about Greer's efforts, by ignoring his letters and the helpline email telling Greer to try again next year. This is further evidenced by Greer's video not even being viewed until AFTER a lawyer sent them a reconsideration letter.

107.     There is no assurance from Fremantle that if Greer retained even more talented accommodations and went through the preliminary audition process once again, that his efforts and accommodations would not meet the same rejection fate. The harms and injuries are likely to recur.

108.     Further, Greer's financial standing has changed dramatically from early 2021 and the only way he could obtain an accommodation to help him on the show would be by some assurance, through either a preliminary injunction ordering Greer's appearance on AGT, or a mutual agreement between Fremantle and Greer (a modification request which Fremantle ignored), that he can go on the show because he does not have the funds like he did in December 2020-February 2021 to hire accommodations again and go through the same process.

109.     An injunction would offer assurance in two ways: (1) that Greer could compete on the show and (2) it would assure any accommodations that help him that Greer indeed can go on the show, so that they would be confident in helping him.

110.     The injunction would still allow Greer to face the risk of getting buzzed off the show just like any other contestant who goes before the celebrity judges. The injunction would just be allowing Greer to go onto the show to audition in front of the celebrity judges.

<u>**COUNT II**</u>

**INTENTIONAL INFLICTION OF EMOTIONAL STRESS**

111.    Russell Greer realleges each and every allegation in paragraphs 1 through 110 as if fully set forth herein.

112.    Greer brings his IIED claim under Nevada state law. Under Nevada law, the tort of IIED has three elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) actual or proximate causation." *Jordan v. State ex. rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 52 (Nev. 2005) (en banc)

113.    Fremantle engaged in extreme and outrageous conduct by knowing the efforts Greer put in and the hurt he was feeling,  but purposefully ignored his pleas for reconsideration and his claims of discrimination. Fremantle showed reckless indifference to the plight of a disabled man who gave his all to rise above his adversity.

114.    This outrageous conduct included: (1) Fremantle ignored certified legal mail that was signed for by Fremantle and the videos being subsequently viewed, confirming receipt of the letter on April 14th, 2021. (2) Fremantle further ignored a FedEx letter sent by Greer before the letter from the attorney in late March 2021. (3) Fremantle ignored the email the lawyer sent on May 14th,  2021 to the AGT helpline email. (4) Fremantle ignored Greer's personal emails to Kovan Saaty, Senior Vice President of Legal and Business at Fremantle, on 09/14/2020, 09/24/21 and 10/01/21. (5) Fremantle ignored Greer's email to Kovan's assistant, Diane (sent when Kovan didn't reply) on 09/27/21 (which Greer sent because he assumed maybe Kovan was busy). (6) Fremantle ignored Greer's email to Jeff, Director of ADA complaints[7], on 09/30/21. (7) Fremantle ignored the phone call Greer left on Kovan's office phone on 09/20/21. (8) Greer,

---

[7] An out of office message for Diane listed Jeff's email to reach out to in her absence. A LinkedIn search showed he was in charge of ADA complaints at Fremantle.

on 10-07-21, decided to see if he could get a response from the ADA Coordinator for TPIR since the DOJ agreement required an ADA email for TPIR. Since they're with the same company, Greer reached out and briefly explained the situation and asked if AGT or Fremantle had an ADA coordinator email[8], and unsurprisingly, Greer received no response from there too! EXHIBIT K and EXHIBIT G.[9]

115.    Lastly, when Greer wished to speak to a producer in March 2021 and explained about his efforts and loss and how heartbroken he was, he was simply met with: "try again next year."

116.    Similar conduct of ignoring discrimination complaints have been found to be grounds for damages for reckless and/or indifferent conduct. *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520 (8th Cir. 2019).[10] This is indeed outrageous and reckless behavior. That is why companies have anti-discrimination policies to avoid such conduct and that discrimination complaints are taken seriously.[11]

117.    It shouldn't take Fremantle 6 months to consider a modification/reconsideration request. As shown, Fremantle has a 90 day policy of responding to ADA complaints, which said date has long past. It's clear that they are recklessly disregarding the pain he has suffered. No remedial measures or efforts to resolve or address Greer's complaints were ever made.

118.    Greer's outreach was polite, with a hint of urgency[12] and the purpose of reconsideration, thus it is outrageous conduct that Fremantle would just ignore these messages that had the sole purpose of trying to modify the polices and make an exception, per the ADA.

---

[8] Asked this, in case the LinkedIn info for Jeff was outdated. Some people don't update their LinkedIn's.

[9] An attorney who proofread Greer's complaint told Greer it was acceptable to follow up weekly with his request, which as shown, Greer did respectfully for nearly a month to ensure that his messages were seen by Fremantle.

[10] Proof of discrimination in a case of public accommodation are similar to those in employment discrimination cases, so precedent should be followed.

[11] Greer even asked others (reasonable persons) if they thought ignoring these messages constituted outrageous and reckless conduct and they agreed it did.

[12] The urgency was because with Greer's accommodation, he needed to know where Fremantle stood on modifying and creating an exception for Greer to appear on AGT in 2022, as Greer needed to gather his accommodations and to practice. His accommodations have busy schedules, with some of them performing professionally, and so they need advance notice, thus why Greer was politely reaching out.

119.    Greer was mainly reaching out because he was emotionally broken upon learning of the rejection and he sincerely felt, as explained in Claim I, he was discriminated against, by his accommodation efforts not being considered and weighed more than a non-disabled contestant who doesn't need an accommodation. Greer was reaching out to rectify the pain he felt and still feels, hence why he retained the lawyer under contract to help explain on his behalf. Greer, as stated, sought modification, which he was entitled to under the ADA.

120.    Fremantle obviously had reckless disregard for the discrimination that Greer felt and his attempts at trying to rectify the situation. Such reckless disregard of the discrimination Greer has felt has caused Greer severe emotional distress.  Fremantle's conduct is the proximate cause for Plaintiff's severe emotional distress, which Greer explains in paragraphs 123-129.

121.    The emotional distress was triggered in late March 2021, upon learning of his rejection, which said pain was aggravated by the AGT helpline being callous to his plight and the pain being extended with Fremantle purposely and recklessly ignoring his modification requests.

122.     To put it best: Fremantle has figuratively hit Greer with a car and instead of apologizing or realizing their mistake or offering any response, they have kept driving, with Greer wedged under the wheel and they have continued to ignore his pleas.

123.    The severe emotional distress consisted of Greer vomiting, fainting, insomnia, losing drive and ambition, lack of energy, feeling of hopelessness, his limbs stiffening up from stress, hair receding and weight gain. Feeling like he is worthless as a human being and that his efforts and plights as a man with a significant disability are insignificant to Fremantle. Feeling like Plaintiff is essentially stuck in a rut in his life with nowhere to go to achieve his dreams that he was trying to get with AGT and how he doesn't know where else to look to accomplish his dreams. Spending months on end crying and frustrated and venting to anybody who would listen about how he felt robbed and discriminated and humiliated by Fremantle. Greer suffers from

depression and anxiety and his severe emotional distress stemming from AGT only makes his chronic ailments worse.

124.     The pain of rejection still carries on 6 months later because Greer feels hopeless as a disabled musician and feels pained that Fremantle frankly doesn't care about the disabled by Fremantle still ignoring his requests for modification. It makes it worse by living in Vegas and seeing the AGT adverts on the news and down on the Strip. The adverts, in a way, taunt and haunt Greer, sending a message that only people without facial deformities have talent and that his accommodations and requests for modifications mean nothing. Even going online, he will accidentally stumble upon AGT material (when he isn't looking for it) and it will cause distress in the same way. And Greer moved to Las Vegas specifically to find talent to act as his accommodation and now he is in the city, not only defeated as the primary reason for moving, but he has no family or friends close by. He is lonely and feels worthless.

125.     Greer has suffered distress by being rejected with an accommodation he put so much effort into, while seeing Fremantle allow onto AGT very bad acts that get instantly buzzed off the show by the judges. While some of those bad acts can be silly and momentarily entertaining, they are hurtful and insulting to the real and sincere efforts Greer put in as a disabled man to rise above his challenges and try to go somewhere in his life. Fremantle's ignoring of Greer's plight devalues his struggles as a disabled man. Others have agreed with Greer and say that AGT devaluates real talent for cheap laughs or momentary thrills.

126.     Plaintiff has also suffered with extreme embarrassment, as the Zoom producer's favorable reaction led Greer and his band mates to believe they had made it on to the show and so he had told people close to him that he was "probably" going onto AGT, and so when he ended up not being selected, it caused extreme embarrassment and distress. Being misled by the producer has made  him and his efforts feel insignificant and that feeling being extended by

Fremantle outrageously ignoring his request for reconsideration, when it's been proven they are in receipt of his messages.

127.    All of Greer's band mates personally saw the producer's favorable reaction that led not just Greer, but all of them, to believe they were going on the show. The Zoom call recording would even prove this. Plaintiff has no reason to believe the producer would lie or mislead Greer.

128.    Fremantle's conduct has made Greer lose his self-esteem and his self-worth. Greer hasn't touched his piano since his rejection because Fremantle's discrimination and ignoring his requests spat in his face and made Greer feel like his talent as a disabled songwriter means nothing. This distress is no different than the other instances of disability discrimination, where reasonable modifications were denied and ignored. *W. Tobin v. Liberty Mutual Insurance,* 553 553 F. 3d 121 (1st Circuit 2009). (Along with failing to provide accommodations, plaintiff was also incorrectly told of losing health insurance).

129.    Greer's distress got so bad that it made Greer think he was having a stroke and so in July of 2021, he called 911 and an ambulance came and he was put in an ambulance and checked out. Luckily, he wasn't having a stroke, but the paramedics even conceded that Greer was possibly having an anxiety attack, which he  attributed to AGT rejection and his resulting despair. Greer hasn't had money to afford to go to the doctor. This all satisfies the IIED physical-impact requirement.

## **DAMAGES**

130.    Plaintiff requests a calm and reasonable award of $200,000.00 for past and future emotional suffering. Such an award would be reasonable, as this isn't Fremantle's first contestant discrimination case. Fremantle, years earlier, signed an agreement with the DOJ that it would strive to have more disabled contestants on screen (the show in question with the DOJ was, *The Price is Right*). (https://www.ada.gov/price-is-right.htm). Obviously, Fremantle has learned nothing, nor have they bettered their practices since the DOJ agreement of 2011.

131.    Additionally, damages would fall in line with non-economic damages such as loss of opportunities. Loss of business opportunities would also count under this claim, as Greer feels he is stuck in a hole and that he will never succeed in the entertainment industry. His accommodation was to help him get potential business opportunities from going on the show. Being denied the chance to have those possible and very real opportunities has damaged Greer's psyche and his self-worth as a disabled musician. Greer lost on out on an opportunity competing for the one million dollar prize, and at the very least, having good publicity by being on the show and attracting talent agents, which would create more opportunities.

132.    Greer asks for a jury to determine the final amount.

## A SHOWING OF PUNITIVE DAMAGES

133.    The actions of Fremantle also show "oppression" and "conscious disregard" towards Plaintiff, per NRS 42.007, which falls under punitive damages.

134.    The Nevada Revised Statutes define "conscious disregard" as knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences. NRS 42.001(1). "It must exceed mere recklessness or gross negligence." *Countrywide Home Loans, Inc. v. Thitchener,* 192 P.3d 243, 255 (Nev. 2008).

135.    Per a reading of the statute and case law,  "conscious disregard" can only be pled by pleading "oppression" or "malice".

136.    The Nevada Revised Statutes define "oppression" as despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." NRS 42.001(4).

137.    Corporations can be liable for punitive damages if an officer, director or managing agent of the corporation expressly authorized to direct or ratify the wrongful act of the employee for which damages are awarded.. NRS 42.001. Plenty of cases have awarded punitive damages based upon a showing that a corporation engaged in a discriminatory practice with "malice" or

"reckless indifference" to one's federally protected rights. *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1063(8th Cir. 1997).

138.    Oppression, to be awarded punitive damages, is shown as follows:

139.    Greer, as a qualified disabled contestant, had a federal right under 42 USC 12182(2)(A)(ii) to a reasonable modification, that Fremantle even purported to support reasonable modifications with their stated anti-discrimination agreement with the DOJ, so that he could partake in the advantages and privileges that Fremantle was offering, after showing the efforts and accommodations he invested in. Such a modification would not have altered the competition, as many acts are brought on the show without auditioning. Per the statute, to deny Greer a modification, without a showing of how allowing him on the show to compete (when Fremantle's producers frequently have acts on without preliminary auditioning) would "fundamentally alter" the privileges or show, is discrimination. *Id.*

140.    And although Greer cannot bring monetary damages under Title III, he brings those damages here, under a state law IIED claim, as Greer has shown it is outrageous conduct to ignore 8 messages, in a 6 month period, requesting modification that Greer showed he was entitled to as a qualified disabled contestant. The messages from Greer and the attorney under contract were polite, showed urgency and professionalism. Not only that, but they were sincere and expressed discrimination. There was no reason to not reply. Per Fremantle policy, they would reply within 90 days and never did.

141.     Fremantle acted with oppression and not once did they ever return any sort of message, knowing very well that as disabled man, he was entitled to modification, per the ADA, which is what his lawyer and him requested.

142.    The only message he ever received was an insensitive message that told him to try again next year. Greer has demonstrated that by trying again next year, there is no guarantee his accommodation will be considered. Even if they would be considered, as stated, he isn't in the

financial position to afford accommodations. Such accommodations would only help through assurance of an injunction or voluntary modification agreement with Fremantle, because time is money and an order going on the show would be motivation for the musicians to accommodate Greer.

143.     Kovan Saaty, who is VP of Legal at Fremantle, and other officers in charge of ADA modification requests, directed all employees to ignore Greer. This can easily be presumed by Kovan's assistant not even messaging Greer back. Last time Greer checked, that's what assistants were for: to act as a go-between.

144.     Possibly not seeing one email or a letter could be attributed to a simple mistake and regular office pitfalls. But to ignore 8 different forms of messages, coming from both plaintiff and a lawyer, over a 6 month period is more than outrageous. It showed a conscious disregard to the distress and pain Greer was in with dealing with discrimination. This conduct is as outrageous as the other earlier cases Greer cited above under the same circumstances. Failing to make a modification and ignoring all contact is indeed discriminatory and oppressive.

145.     An alternative theory Greer can prove is that Kovan Saaty, Vice President of Legal Affairs, should have known that Greer's discrimination complaints were being ignored, based upon the many messages Kovan and her assistant received, and Kovan authorized the complaints and requests to continued to be ignored, based on how she or her assistant never replied. Her silence and ignoring the complaints and requests shows conscious disregard.

146.     This is despicable conduct because as VP of Legal, Kovan should have been aware of her company's legal obligations to answer ADA modification requests, obligations Fremantle made with the DOJ and obligations under ADA Title III.

147.     Presumption can easily fall under a prima facie claim at this stage of the case, per the Federal Rules of Evidence 301. Circumstantial evidence is enough to support punitive damages.

148.    Not adhering to anti-discrimination policies and ignoring claims of discrimination shows conscious disregard and is indeed grounds to award punitive damages. ("It is well established that it is insufficient for an employer simply to have in place anti-discrimination policies; it must also implement them. *See* *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 517 (9th Cir.2000); *Lowery v. Circuit City Stores,* 206 F.3d 431, 446 (4th Cir.2000) ("While an employer's institution of a written policy against race discrimination may go a long way toward dispelling any claim about the employer's reckless or malicious state of mind with respect to racial minorities, such a policy is not automatically a bar to the imposition of punitive damages.").

149.    Per NRS 42.005(1)(a), Greer additionally seeks $600,000.00 in punitive damages, as it is three times the amount of $200,000.00 that he asked for in paragraphs 149-150.

150.    Greer requests a jury to decide this claim and for the final amount of monetary award.

## TRIAL BY JURY REQUESTED

151.    Plaintiff requests a trial by jury on the IIED claim.

## PRAYER FOR RELIEF

WHEREFORE, Russell Greer prays for judgement against Defendants:

152.    For emotional and non-economic damages under Claim II in the amount of $200,000.00.

153.    For an award of punitive damages in the amount of $600,000.00.

155.    For a preliminary injunction ordering that Greer appear on AGT season 17, which begins filming in April 2022, per Claim I

156.    For a jury trial to determine the claims and final monetary award for Claim II, as juries can't determine Title III injunctive claims.


DATED:  October 14th, 2021

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer/

**EXHIBIT A**



**EXHIBIT B**

## AGT Time Zone Reminder



Hello Russell Greer,

We look forward to seeing you at your audition!

You have selected an audition time of **1:00 PM.**

**Please note the arrival time is in Pacific Standard Time.**

If that time does NOT work for you, just join us when you can. After we check you in, you will be placed into an audition in the order that you arrived.

If you prefer to select a different date to audition, sign in to you sign in to your Performer Profile and pick a new date that fits your schedule.

Good Luck!

### CLICK HERE TO ENTER YOUR VIRTUAL AUDITION!



Should you need support your Contestant ID in our system is a5088a-1-795207.

**AMERICA'S GOT TALENT Producers**



         

**EXHIBIT C**





Hello Russell Greer,

Thank you for attending the Virtual Auditions for Season 16 of America's Got Talent.

We would love for you to tell your friends & followers that you auditioned for the show! If you are a solo performer, click **HERE** to download a shareable graphic. If you auditioned as a group, we've got **THIS** graphic for you!

Please share on social media using #AGT in the caption!

An AGT producer will reach out to you *if* you are in consideration to advance in the competition. Keep an eye on your emails. These decisions are likely to be made in early spring 2021.

If you would like to audition again, or add any supplemental videos or material to your profile, you can sign in to your Performer Profile and do so! Online Auditions will remain open into the spring.

We are looking forward to another great season of America's Got Talent & couldn't do it without YOU!

Should you need support your Contestant ID in our system is a5088a-1-795207.

**AMERICA'S GOT TALENT Producers**

THIS EMAIL WAS SENT ON BEHALF OF

   

**EXHIBIT D**

.ull Verizon 🛜          9:46 AM          ⊙ ◢ ଲ▐ 27% 🔋

< Inbox                              ⋀    ⋁



**Russell Greer**          2/22/21
To: agt.support@etribez.c......

# Video views

Hello,

Two weeks ago, the producer at the virtual audition asked me to upload videos to the video audition link and so I uploaded two YouTube links of different takes of my audition. The links are functional and are unlisted. However, it doesn't show that they've been viewed by anybody.

So I was wondering:

         

**EXHIBIT E**



.Ill Verizon 🛜                    9:46 AM              ◉ ⌀ ⌂ 27% ▭

< Inbox                                        ⌃        ⌄

**RG**   **Russell Greer**              3/26/21
         To: agt.support@etribez.c......

# I would like to speak to a producer

Hello,

I auditioned in February and had positive feedback from the producer. I had high hopes. However, I just saw on a judge's Instagram that filming starts in one day. So I guess this means I didn't get on.

I am completely shattered. I spent $2500 on this audition. It was a

**EXHIBIT F**

## OFFICE OF DASH AND ASSOCIATES
ONE LIBERTY PLAZA
165 BROADWAY
23RD FLOOR
NEW YORK CITY, NEW YORK, 10006

_____

TELEPHONE: (877) 709-1472
FACSIMILE: (888) 994-9958

## CONFIDENTIAL AND PRIVILEGED

| | |
|---|---|
| **To:** | **AMERICA'S GOT TALENT, FREMANTLE** |
| **From:** | **Barbara S. Harper, Esq.** |
| **Re:** | **Russell Greer – Request for Reconsideration** |
| **Date:** | **April 12, 2021** |
| **Comments:** | **See Enclosed.** |

The enclosed contains privileged and confidential information intended only for the use of the addressee named above. If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copy of this letter is strictly prohibited. If you have received this in error, please notify us immediately via email and return the original copies to us at the above address via U.S. Mail. Thank you.

---

**CALER STEVENS, ESQ**
*Under contract*

**DANIEL SWEENEY, ESQ**
*Under contract*

**CHRISTOPHER RAY, ESQ**
*MA & NH*
*Under contract*

**DAVID GOULD, ESQ**
*not admitted in New York bar*
*Under contract*

**AMBER BARGER, ESQ.**
*Under contract*

**AL MARMERO, ESQ.**
*Under contract*

**REBECCA LARSON, ESQ.**
*Under contract*

**LUIGI CINIGLIO, ESQ.**
*Under contract*

**MARIA PALACIOS, ESQ.**
*Under contract*

**ANTHONY CAMPBELL, ESQ**
*not admitted in New York bar*
*Under contract*

**BARBARA HARPER, ESQ**
*CA / not admitted in New York bar*
*Under contract*

### THE OFFICE OF
# DASH & ASSOCIATES

ONE LIBERTY PLAZA
165 BROADWAY, 23RD FLOOR
NEW YORK CITY, NEW YORK 10006

April 12, 2021

Page 2
**AMERICA'S GOT TALENT**
PRE-LITIGATION

**FILE NUMBER:**
0001754-DG

**SETTLEMENTS CONTACT**
SETTLEMENTS@DASHATONELIBERTY.COM
ADMINISTRATION AND SETTLEMENTS

**DASH & ASSOCIATES**
ONE LIBERTY PLAZA
165 BROADWAY
23RD FLOOR
NEW YORK CITY, NY, 10006

TELEPHONE: (877) 709-1472
FACSIMILE: (888) 994-9958
www.dashatoneliberty.com

dissemination or copy of this letter is strictly prohibited.  If you have received this in error, please notify us immediately via email and return the original copies to us at the above address via U.S. Mail.  Thank you.

## 2 of 4

CALEB STEVENS, ESQ
*Under contract*

DANIEL SWEENEY, ESQ
*Under contract*

CHRISTOPHER RAY, ESQ
*MA & MD*

DAVID GOULD, ESQ
*not admitted in New York bar*
*Under contract*

AMBER BARGER, ESQ.
*Under contract*

AL MARMERO, ESQ.

REBECCA LARSON, ESQ.
*Under contract*

LUIGI CINIGLIO, ESQ.

MARIA PALACIOS, ESQ.
*Under contract*

ANTHONY CAMPBELL, ESQ
*not admitted in New York bar*
*Under contract*

BARBARA HARPER, ESQ
*CA: not admitted in New York bar*
*Under contract*

THE OFFICE OF
# DASH & ASSOCIATES

ONE LIBERTY PLAZA
165 BROADWAY, 23RD FLOOR
NEW YORK CITY, NEW YORK 10006

April 12, 2021

Page 2
AMERICA'S GOT TALENT
PRE-LITIGATION

FILE NUMBER:
0001754-DG

SETTLEMENTS CONTACT
SETTLEMENTS@DASHATONELIBERTY.COM
ADMINISTRATION AND SETTLEMENTS

DASH & ASSOCIATES
ONE LIBERTY PLAZA
165 BROADWAY
23RD FLOOR
NEW YORK CITY, NY, 10006

TELEPHONE: (877) 709-1472
FACSIMILE: (888) 994-9958
www.dashatoneliberty.com

*Via Certified Mail – Signature Required*
America's Got Talent Production
Fremantle
2900 W. Alameda Ave., Ste. 800
Burbank, CA  91505

        Re:   **Russell Greer;**
              **Formal Request for Reconsideration**

To Whom It May Concern:

    Our office has been retained by Russell Greer in connection with America's Got Talent (AGT") denial of Mr. Greer a chance to perform on the show.  Please accept this correspondence as a formal request for reconsideration as to Mr. Greer and his band to be given an opportunity to perform on AGT.

    It is our understanding that Mr. Greer auditioned for AGT this past February.  Mr. Greer has a facial disability termed "Moebious Syndrome" (the "syndrome"), which has made all aspects of his life difficult, especially with communicating.  In essence, Mr. Greer's 7th cranial facial nerves are paralyzed and he cannot close his lips.  Mr. Greer worked really hard on his audition, and spent $2,000 to hire a band to help him.

Page 3 of 4
AMERICA'S GOT TALENT
PRE-LITIGATION

    When Mr. Greer auditioned at the virtual audition, the producer really liked Mr. Greer's work, and requested that he submit videos through an online process.  Mr. Greer and his band were very excited as they thought that the encouragement from the producer indicated that they had made it on the AGT.

he cannot close his lips.  Mr. Greer worked really hard on his audition, and spent $2,000 to hire a band to help him.

Page 3 of 4
**AMERICA'S GOT TALENT**
PRE-LITIGATION

When Mr. Greer auditioned at the virtual audition, the producer really liked Mr. Greer's work, and requested that he submit videos through an online process.  Mr. Greer and his band were very excited as they thought that the encouragement from the producer indicated that they had made it on the AGT.

However, Mr. Greer never heard back from the producer or AGT, and learned that filming had already started – reflecting that Mr. Greer and his band had not made AGT.  Thereafter, Mr. Greer learned that the videos he had submitted at the request of the producer were never viewed.

Mr. Greer wrote a letter to the producers of AGT, asking them to reconsider their decision.  No one has replied to Mr. Greer's correspondence.  Mr. Greer feels he was discriminated against by AGT and its' producers.

Through his work and music, Mr. Greer attempted to convey his story of overcoming adversity, demonstrating how he did not let his challenges stop him from accomplishing his dreams.  Mr. Greer contends he has the talent and skill to be granted a spot on AGT, and he has demonstrated his talent in the video he submitted at the request of the producer.

Mr. Greer believes he was indirectly discriminated against in light of AGT's denying him a spot.  Mr. Greer's face is paralyzed and he has trouble communicating, and thus, he was at a disadvantage when auditioning.  That is the reason for him paying $2,000 to professional band members to perform his song.

Pursuant to the Equal Employment Opportunity Commission, indirect discrimination occurs when there is a particular policy that affects persons with disabilities unequally.  Here, AGT rejected Mr. Greer's position on the show, and that rejection was based on discrimination because AGT failed to take into consideration that Mr. Greer had to put together a production to demonstrate his talent because of his disability – Mr. Greer is unable to go out on a stage and perform his song by himself.

Therefore, based on the above, Mr. Greer hereby makes a formal request to sign a contract with AGT to perform on the show in 2022.  He has already auditioned, he was applauded and praised by the producer, and he produced further videos of his song(s) at the request of AGT's producers.  Mr. Greer has demonstrated his skill and talent, which is the basis for having him perform on the show.

Page 4 of 4
**AMERICA'S GOT TALENT**
PRE-LITIGATION

We have consulted with our client regarding his available options and avenues of redress, and we have been authorized to engage in confidential settlement negotiations.  If you have any interest in resolving this matter in such a manner, please contact the undersigned via email and we will have an assistant

Pursuant to the Equal Employment Opportunity Commission, indirect discrimination occurs when there is a particular policy that affects persons with disabilities unequally. Here, AGT rejected Mr. Greer's position on the show, and that rejection was based on discrimination because AGT failed to take into consideration that Mr. Greer had to put together a production to demonstrate his talent because of his disability – Mr. Greer is unable to go out on a stage and perform his song by himself.

Therefore, based on the above, Mr. Greer hereby makes a formal request to sign a contract with AGT to perform on the show in 2022. He has already auditioned, he was applauded and praised by the producer, and he produced further videos of his song(s) at the request of AGT's producers. Mr. Greer has demonstrated his skill and talent, which is the basis for having him perform on the show.

Page 4 of 4
**AMERICA'S GOT TALENT**
PRE-LITIGATION

We have consulted with our client regarding his available options and avenues of redress, and we have been authorized to engage in confidential settlement negotiations. If you have any interest in resolving this matter in such a manner, please contact the undersigned via email and we will have an assistant or paralegal contact you to schedule a call. Please ensure you reference RUSSELL GREER in the subject line of your email.

Our client wishes to resolve this matter amicably. We look forward to hearing from you, or your representative, to discuss this matter more meaningfully.

Very truly yours,

Barbara S. Harper, ESQ.
Barbara.harper@dashatoneliberty.com
(877) 709-1472
*UNDER CONTRACT*

CC:   Russell Greer

**EXHIBIT G**



"Walks Like Heidi Klum"...

15 views · 7 mont...



Walks Like Heidi Klum...

28 views · 7 mont...

**EXHIBIT H**



## Re: Request for Discussion/Mediation

Good morning,

I left a voice message on your answering machine at your office. Forgive me for the persistence. The lawyer I had hired sent your company the letter for reconsideration back in April. I've been waiting 6 months for a reply. So I'm respectfully hoping that we can talk and reconsider this.



**Following up**

Good morning,

I was just following up with my past emails, as I really need to know where Fremantle stands on my reconsideration request.

Thanks.

www.russellgreer.com

Sent from my iPhone

**EXHIBIT I**

..ıl Verizon LTE    12:05 PM    ◉ ⊿ ⌒🔋 27% 🔋

< Inbox 

# AGT Contestant Information Form



Welcome to the AGT Virtual Auditions Russell Greer,

You have been successfully checked in to the AGT Auditions and will be seen by a producer shortly. Please keep your microphone muted, and your camera on as you wait.

We ask each performer/group to fill out our Information Sheet so we can get to know a little bit more about you. Tell us when you started your talent, where you see it going, and some of your biggest obstacles you have encountered along the way.

Please click below to access this form, and fill it out as soon as possible. We want our producer's to be able to access your responses as you are auditioning.

## CLICK HERE TO ACCESS YOUR INFORMATION FORM.

If you have any questions about the form or how to access it, please use the Raise Hand feature on Zoom and ask the Host of the meeting.

Please note that receiving this questionnaire does not guarantee your advancement in the competition and it is not confirmation of you performing in front of the celebrity judges.

Should you need support your Contestant ID in our system is a5088a-1-795207

Good luck!
**AMERICA'S GOT TALENT Producers**



   

**EXHIBIT J**

# SETTLEMENT AGREEMENT
# UNDER THE AMERICANS WITH DISABILITIES ACT
# BETWEEN
# THE UNITED STATES OF AMERICA,
# FREMANTLE PRODUCTIONS, INC., AND CBS BROADCASTING INC.
# REGARDING THE PRICE IS RIGHT

## Department of Justice
## Complaint Numbers 202-12C-317 and 202-12C-369

### BACKGROUND

A. Parties

1. The parties (Parties) to this Settlement Agreement (Agreement) are the United States of America and The Price Is Right (TPIR). TPIR consists of both Fremantle Productions, Inc., (Fremantle) in its role as producer of The Price Is Right game show (the Show), and CBS Broadcasting Inc. (CBS), in its role as the provider of the facilities and related services utilized in the production of the Show.

2. The United States Department of Justice (United States) is the federal agency responsible for administering and enforcing Title III of the Americans with Disabilities Act of 1990 (ADA), *42 U.S.C. §§ 12181-12189, on behalf of the United States of America.*

B. Investigation

3. This matter was initiated by two complaints filed with the United States which alleged violations of Title III of the ADA (Title III) and its implementing regulation, 28 C.F.R. Part 36, in connection with the Show. Complainant #1 attended a taping of the Show with her mother (Complainant #2), who uses a wheelchair. The taping occurred at Studio 33 (the Bob Barker Studio) at CBS Television City, 7800 Beverly Boulevard, in Los Angeles, California. Complainants #1 and #2 alleged that the wheelchair seating areas at the Bob Barker Studio were at the back of the audience seating area and that the lines of

57

12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303; and

    d.  TPIR will remove barriers to access for individuals with disabilities where it is readily achievable to do so in facilities that were designed and constructed prior to January 26, 1993, and which have not been altered, 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R. §§ 36.304, 36.308.

TPIR may assert any applicable affirmative defenses.

    B. Specific Actions

17.  Reasonable Modifications. Consistent with its current stated practices, TPIR will make reasonable modifications to policies, practices, and procedures to afford opportunities and access to individuals with disabilities, including but not limited to individuals who wish to be a member of the audience or eligible to become a contestant on the Show, that are equal to the opportunities and access afforded to individuals without disabilities, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302(a). Reasonable modifications are exceptions, modifications, and adjustments to policies, practices, and procedures that are necessary to avoid discrimination against an individual with a disability. Requests for reasonable modifications may be made orally or in writing by or on behalf of an individual with a disability. TPIR will grant requests for such modifications unless it can demonstrate that a requested modification would fundamentally alter the nature of its operations. Individuals who request reasonable modifications will generally not be required to provide medical documentation.

18.  Effective Communication. Consistent with its current stated practices, TPIR will provide auxiliary aids and services when necessary to ensure effective communication with individuals with disabilities, 42 U.S.C. § 12182(b)(2)(A) (iii) and 28 C.F.R. § 36.303. Within thirty (30) days after the effective date of this Agreement TPIR will submit for review and approval by the United States, which approval shall not be unreasonably withheld or delayed, written policies and procedures for providing auxiliary aids and services to achieve effective communication with individuals with disabilities in connection with the Show. The United States shall review the proposed written policy for consistency with the requirements of Title III of the ADA and provide written comments to TPIR. TPIR shall provide the United States with a revised policy that addresses the

**EXHIBIT K**



## Tracking Number:

Remove ✕

9410803699300135472750

Your item has been delivered to an agent for final delivery in BURBANK, CA 91505 on April 14, 2021 at 10:19 am.

USPS Tracking Plus™ Available ⌄



## ☑ Delivered to Agent for Final Delivery

April 14, 2021 at 10:19 am
BURBANK, CA 91505

## Text & Email Updates ⌃







**EXHIBIT L**



## Mobile Menu

### ELIGIBILITY REQUIREMENTS

1. In connection with my potential participation in the Program, I represent and warrant that I am either:

   (i) a United States Citizen.

   (ii) a legal permanent resident

Done    🔍 fre                    1 of 2    ∧   ∨

◄ Word 📶 📶 ☀️ 3:40 AM 🌙 ⊚ ✈ 80% 🔋
🔒 americasgottalentauditions.com

## ☰ Mobile Menu



You can check out our eligibility
requirements.

Privacy Policy | Terms of Use | Video Audition
Terms of Use
All Audition Dates and Cities Subject to Change |
America's Got Talent ®/© FremantleMedia North
America & Simco, Ltd. 2021 | All Rights Reserved.



## OFFICE OF DASH AND ASSOCIATES

ONE LIBERTY PLAZA
165 BROADWAY
23RD FLOOR
NEW YORK CITY, NEW YORK, 10006

_____

TELEPHONE: (877) 709-1472
FACSIMILE: (888) 994-9958

## CONFIDENTIAL AND PRIVILEGED

**To:**       **AMERICA'S GOT TALENT, FREMANTLE**

**From:**     **Barbara S. Harper, Esq.**

**Re:**       **Russell Greer – Request for Reconsideration**

**Date:**     **April 12, 2021**

**Comments:**  **See Enclosed.**

The enclosed contains privileged and confidential information intended only for the use of the addressee named above.  If you are not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copy of this letter is strictly prohibited.  If you have received this in error, please notify us immediately via email and return the original copies to us at the above address via U.S. Mail.  Thank you.

Page 2
AMERICA'S GOT TALENT
PRE-LITIGATION

FILE NUMBER:
0001754-DG

SETTLEMENTS CONTACT
SETTLEMENTS@DASHATONELIBERTY.COM
ADMINISTRATION AND SETTLEMENTS

**CALEB STEVENS, ESQ**
*Under contract*

**DANIEL SWEENEY, ESQ**
*Under contract*

**CHRISTOPHER RAY, ESQ**
*MA & NH*
*Under contract*

**DAVID GOULD, ESQ**
*not admitted to New York bar*
*Under contract*

**AMBER BARGER, ESQ.**
*Under contract*

**AL MARMERO, ESQ.**
*Under contract*

**REBECCA LARSON, ESQ.**
*Under contract*

**LUIGI CINIGLIO, ESQ.**
*Under contract*

**MARIA PALACIOS, ESQ.**
*Under contract*

**ANTHONY CAMPBELL, ESQ**
*not admitted to New York bar*
*Under contract*

**BARBARA HARPER, ESQ**
*CA / not admitted to New York bar*
*Under contract*

**THE OFFICE OF**

# DASH & ASSOCIATES

**ONE LIBERTY PLAZA**
**165 BROADWAY, 23RD FLOOR**
**NEW YORK CITY, NEW YORK 10006**

April 12, 2021

**DASH & ASSOCIATES**
ONE LIBERTY PLAZA
165 BROADWAY
23RD FLOOR
NEW YORK CITY, NY, 10006

TELEPHONE: (877) 709-1472
FACSIMILE: (888) 994-9958
www.dashatoneliberty.com

*Via Certified Mail – Signature Required*
America's Got Talent Production
Fremantle
2900 W. Alameda Ave., Ste. 800
Burbank, CA  91505

      **Re:   Russell Greer;**
              **Formal Request for Reconsideration**

To Whom It May Concern:

    Our office has been retained by Russell Greer in connection with America's Got Talent (AGT") denial of Mr. Greer a chance to perform on the show.  Please accept this correspondence as a formal request for reconsideration as to Mr. Greer and his band to be given an opportunity to perform on AGT.

    It is our understanding that Mr. Greer auditioned for AGT this past February.  Mr. Greer has a facial disability termed "Moebious Syndrome" (the "syndrome"), which has made all aspects of his life difficult, especially with communicating.  In essence, Mr. Greer's 7th cranial facial nerves are paralyzed and he cannot close his lips.  Mr. Greer worked really hard on his audition, and spent $2,000 to hire a band to help him.

Page 3 of 4
**AMERICA'S GOT TALENT**
PRE-LITIGATION

When Mr. Greer auditioned at the virtual audition, the producer really liked Mr. Greer's work, and requested that he submit videos through an online process. Mr. Greer and his band were very excited as they thought that the encouragement from the producer indicated that they had made it on the AGT.

However, Mr. Greer never heard back from the producer or AGT, and learned that filming had already started – reflecting that Mr. Greer and his band had not made AGT. Thereafter, Mr. Greer learned that the videos he had submitted at the request of the producer were never viewed.

Mr. Greer wrote a letter to the producers of AGT, asking them to reconsider their decision. No one has replied to Mr. Greer's correspondence. Mr. Greer feels he was discriminated against by AGT and its' producers.

Through his work and music, Mr. Greer attempted to convey his story of overcoming adversity, demonstrating how he did not let his challenges stop him from accomplishing his dreams. Mr. Greer contends he has the talent and skill to be granted a spot on AGT, and he has demonstrated his talent in the video he submitted at the request of the producer.

Mr. Greer believes he was indirectly discriminated against in light of AGT's denying him a spot. Mr. Greer's face is paralyzed and he has trouble communicating, and thus, he was at a disadvantage when auditioning. That is the reason for him paying $2,000 to professional band members to perform his song.

Pursuant to the Equal Employment Opportunity Commission, indirect discrimination occurs when there is a particular policy that affects persons with disabilities unequally. Here, AGT rejected Mr. Greer's position on the show, and that rejection was based on discrimination because AGT failed to take into consideration that Mr. Greer had to put together a production to demonstrate his talent because of his disability – Mr. Greer is unable to go out on a stage and perform his song by himself.

Therefore, based on the above, Mr. Greer hereby makes a formal request to sign a contract with AGT to perform on the show in 2022. He has already auditioned, he was applauded and praised by the producer, and he produced further videos of his song(s) at the request of AGT's producers. Mr. Greer has demonstrated his skill and talent, which is the basis for having him perform on the show.

Page 4 of 4
**AMERICA'S GOT TALENT**
PRE-LITIGATION


        We have consulted with our client regarding his available
options and avenues of redress, and we have been authorized to
engage in confidential settlement negotiations.  If you have any
interest in resolving this matter in such a manner, please
contact the undersigned via email and we will have an assistant
or paralegal contact you to schedule a call.  Please ensure you
reference RUSSELL GREER in the subject line of your email.

        Our client wishes to resolve this matter amicably. We look
forward to hearing from you, or your representative, to discuss
this matter more meaningfully.


                        Very truly yours,



                        Barbara S. Harper, ESQ.
                        Barbara.harper@dashatoneliberty.com
                        (877) 709-1472
                        *UNDER CONTRACT*



CC:  Russell Greer