**HONE LAW**
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone 702-608-3720
Fax    702-703-1063

**O'MELVENY & MYERS LLP**
Molly M. Lens, Esq.
mlens@omm.com
*(Pro Hac Vice Application to be Submitted)*
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Phone 310-246-8593

*Attorneys for Defendants Fremantle Productions
North America, Inc. and Marathon Productions, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RUSSELL G. GREER, | Case No. 2:21-cv-01905-RFB-NJK |
| Plaintiff, | |
| v. | **MOTION TO COMPEL ARBITRATION** |
| FREMANTLE PRODUCTIONS NORTH AMERICA, INC, a corporation and MARATHON PRODUCTIONS, INC, a corporation, | ***(Filed concurrently with Defendants' request for judicial notice and the Declaration of Molly M. Lens)*** |
| Defendants. | |
| | **HEARING REQUESTED** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................... 1

III.    ARGUMENT ...................................................................**Error! Bookmark not defined.**

    A.    The Court Should Compel Arbitration, Including On Any Threshold Questions Of Arbitrability............................................................................................... 4

    B.    In the Alternative, If The Court Proceeds To Decide Arbitrability, Which It Should Not, It Should Compel Arbitration. ...................................................... 7

        1.    Federal law favors enforcement of arbitration provisions. ........................ 7

        2.    The plain language of the Audition Agreement encompasses this dispute. .................................................................................................... 8

        3.    There is no basis for the Court to find that Greer's arbitration agreement is unconscionable................................................................. 10

        4.    Greer cannot avoid arbitration by improperly naming Fremantle Productions as a defendant..................................................................... 11

IV.     CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur Andersen LLP v. Carlisle,*
   556 U.S. 624 (2009) ............................................................................................... 11

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
   475 U.S. 643 (1986) ................................................................................................. 9

*Ballard v. Corinthian Colls., Inc.,*
   2006 WL 2380668 (W.D. Wash. Aug. 16, 2006) ................................................... 15

*Bank Leumi, USA v. Miramax Distrib. Servs., LLC,*
   2018 WL 7568361 (C.D. Cal. Dec. 27, 2018) ................................................... 5, 7

*Bates v. Nev. Resort Props. Polo Towers Ltd. P'ship,*
   238 P.3d 795, 2008 WL 6043844 (Nev. Sept. 5, 2008) (unpublished disposition) ................. 13

*Belnap v. Iasis Healthcare,*
   844 F.3d 1272 (10th Cir. 2017) ............................................................................... 6

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) ................................................................................. 6

*Canfora v. Coast Hotels & Casinos, Inc.,*
   121 P.3d 599 (Nev. 2005) ...................................................................................... 12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) ................................................................................. 2

*Cohen v. TNP 2008 Participating Notes Program, LLC,*
   243 Cal. Rptr. 3d 340 (Ct. App. 2019) ................................................................. 13

*Cooper v. WestEnd Cap. Mgmt., L.L.C.,*
   832 F.3d 534 (5th Cir. 2016) ................................................................................... 6

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ................................................................................................. 9

*Doctor's Assocs. Inc. v. Burr,*
   226 F. Supp. 3d 106 (D. Conn. 2016) ................................................................... 11

*Dropp v. Diamond Resorts Int'l, Inc.,*
   2019 WL 332399 (D. Nev. Jan. 25, 2019). ........................................................... 13

*Elko Broadband Ltd. v. Dhabi Holdings PJSC,*
   2020 WL 6435754 (D. Nev. Nov. 2, 2020) ........................................................... 11

*Emilio v. Sprint Spectrum L.P.,*
   508 F. App'x 3 (2d Cir. 2013) ................................................................................. 6

- ii -

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Geier v. m-Qube Inc.,*
  824 F.3d 797 (9th Cir. 2016) ........................................................................................ 13

*Gibson v. Wal-Mart Stores Inc.,*
  181 F.3d 1163 (10th Cir. 1999) ..................................................................................... 13

*Hansen v. Musk,*
  2020 WL 4004800 (D. Nev. July 15, 2020) ................................................................ 9, 14

*Harbers v. Eddie Bauer, LLC,*
  2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ............................................................. 2

*Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cty. of Clark,*
  390 P.3d 166, 2017 WL 881877 (Nev. Feb. 27, 2017) (unpublished disposition) ................. 14

*Henry Schein, Inc. v. Archer and White Sales, Inc.,*
  139 S.Ct. 524 (2019) ..................................................................................................... 4

*Jaffe v. Zamora,*
  57 F. Supp. 3d 1244 (C.D. Cal. 2014) ........................................................................... 14

*Karter v. Sunvest Communities USA, LLC,*
  2010 WL 2976173 (D. Nev. July 23, 2010) ..................................................................... 7

*Kaufman v. Sony Pictures Television, Inc.,*
  2017 WL 3090256 (D. Mass. July 20, 2017) ................................................................... 9

*Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe,*
  996 P.2d 903 (Nev. 2000) ............................................................................................ 10

*Knievel v. ESPN,*
  393 F.3d 1068 (9th Cir. 2005) ....................................................................................... 2

*Larson v. D. Westwood, Inc.,*
  2016 WL 5508825 (D. Nev. Sept. 27, 2016) ................................................................... 9

*Letizia v. Prudential Bache Sec., Inc.,*
  802 F.2d 1185 (9th Cir. 1986) ...................................................................................... 11

*Mallia v. Drybar Holdings, LLC,*
  2020 WL 1250817 (D. Nev. Mar. 16, 2020) ............................................................. 9, 10, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ..................................................................................................... 10

*Mohazzabi v. Wells Fargo, N.A.,*
  2019 WL 4675768 (D. Nev. Sept. 25, 2019) .................................................................. 15

*Momot v. Mastro,*
  652 F.3d 982 (9th Cir. 2011) .......................................................................................... 5

MOTION TO COMPEL ARBITRATION

TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ............................................................................................................ 8

*New Eng. Mech., Inc. v. Laborers Loc. Union 294*,
    909 F.2d 1339 (9th Cir. 1990) ........................................................................................ 6

*O'Neal v. Zurich Ins. Co. Inc.*,
    2021 WL 3824665 (D. Nev. Aug. 25, 2021) ................................................................. 3

*Reflex Media, Inc. v. Vibe Media, Inc.*,
    2016 WL 11000047 (C.D. Cal. Jul. 18, 2016) ............................................................... 8

*Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*,
    2014 WL 12690187 (C.D. Cal. Oct. 16, 2014) ............................................................. 2

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .......................................................................................................... 4

*Sheehan v. Sparks Black Bear, LLC*,
    2019 WL 591445 (D. Nev. Feb. 13, 2019) .................................................................. 10

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) .......................................................................................... 8

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ............................................................................................................ 7

*Sparling v. Hoffman Const. Co., Inc.*,
    864 F.2d 635 (9th Cir. 1988) ........................................................................................ 15

*State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
    199 P.3d 828 (Nev. 2009) ............................................................................................... 8

*SteppeChange LLC v. VEON Ltd.*,
    354 F. Supp. 3d 1033 (N.D. Cal. 2018) ....................................................................... 15

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.*,
    189 P.3d 656 (Nev. 2008) ............................................................................................. 11

*Wright v. Incline Vill. Gen. Improvement Dist.*,
    597 F. Supp. 2d 1191 (D. Nev. 2009) .......................................................................... 12

*WuMac, Inc. v. Eagle Canyon Leasing, Inc.*,
    2015 WL 995095 (D. Nev. Mar. 5, 2015) .................................................................... 12

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ................................................................................... 6

*Zeevi v. Citibank, N.A.*,
    2021 WL 621423 (D. Nev. Feb. 16, 2021) ........................................................ 5, 7, 11

MOTION TO COMPEL ARBITRATION

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

**Statutes**

42 U.S.C. § 12212 ................................................................................................................. 10

MOTION TO COMPEL ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Plaintiff Russell Greer is an individual with a documented (and admitted) practice of trying to use the judicial system to get the attention of female celebrities.  This case is no different, as Greer asks this Court to order Heidi Klum—one of the judges on the popular television show *America's Got Talent* ("*AGT*")—to watch Greer perform a song that he wrote about her.  The merits (or lack thereof) of Greer's complaint, however, are not currently before this Court.  Rather, the only issue before this Court is whether Greer should be held to his agreement to arbitrate any claims arising out or relating to his audition for *AGT*.  He should.  In fact, because Greer's agreement to arbitrate expressly includes any issues of arbitrability, any gateway issues regarding the scope, applicability, or enforceability of the parties' agreement to arbitrate that Greer tries to assert in response to this motion must similarly be referred to arbitration.  Accordingly, Fremantle Productions North America, Inc. ("Fremantle Productions") and Marathon Productions, Inc. ("Marathon Productions" and, collectively, with Fremantle Productions, "Marathon") respectfully request that the Court grant their motion to compel arbitration and dismiss Greer's improperly filed lawsuit.

**II.    FACTUAL BACKGROUND** [1]

In 2021, Greer auditioned for Season 16 of *AGT*.  Second Amended Complaint ("SAC"), ECF No. 23, ¶ 40.  Marathon produces *AGT*.  *Id.* ¶¶ 16-17.  *AGT* first aired in 2006 and is currently preparing for production of its 17th season.  *Id.* ¶¶ 29, 127.  Each season of *AGT* features contestants performing various talents before a panel of celebrity judges.  *Id.* ¶ 29.  To compete on *AGT*, contestants first audition.  *Id.* ¶¶ 52, 98.  After the audition, contestants may be selected to advance through the competition and, potentially, appear on one of the televised rounds of *AGT*. *Id.* ¶¶ 29, 52, 98.

Before auditioning, and as consideration for being considered for the show, Greer agreed to

---

[1] For the purposes of this motion, Marathon does not challenge Greer's recitation of the purported facts underlying the parties' dispute.  To be clear, however, Marathon does not agree with many of Greer's allegations.

- 1 -

the terms of an audition agreement (the "Audition Agreement").  *See* Request for Judicial Notice

("RJN"), Ex. A (Audition Agreement) at J002 (noting that Greer entered into the Audition

Agreement as "consideration of Producer [i.e., Marathon Productions] possibly including me in an

episode(s) of the television series currently entitled 'America's Got Talent'").[2]  The Audition

Agreement contains an arbitration provision, stating in relevant part:

> I agree that if any controversy or claim arising out of or relating to this Agreement cannot
> be settled through direct discussions, I shall endeavor first to settle the controversy or claim
> by a mediation administered by JAMS under its applicable rules. IF THE DISPUTE IS
> NOT OTHERWISE RESOLVED THROUGH DIRECT DISCUSSIONS OR
> MEDIATION, I AGREE THAT THE CONTROVERSY OR CLAIM, INCLUDING THE
> SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL
> THEN BE RESOLVED BY FINAL AND BINDING CONFIDENTIAL ARBITRATION
> ADMINISTERED BY JAMS IN ACCORDANCE WITH ITS STREAMLINED
> ARBITRATION RULES AND PROCEDURES OR SUBSEQUENT VERSIONS
> THEREOF . . .

*Id.* at J003.

In his audition, Greer performed "an original pop song" titled "Walks Like Heidi Klum."

SAC ¶ 39; *id.*, Ex. G at 44.  Heidi Klum is one of the celebrity judges on *AGT*.  *See id.* ¶¶ 39, 41.

Like most contestants, Greer was not selected to advance in the competition.  *See id.* ¶ 56.

Greer, however, did not accept this decision gracefully.  Greer first repeatedly begged that

Marathon "reconsider" its decision and that he be permitted to "sign a contract with AGT to

perform on the show in 2022."  SAC ¶ 62.  After Marathon refused, Greer commenced this

lawsuit.

/ / /

---

[2] The Court can consider the Audition Agreement in ruling on Marathon's motion for multiple reasons.
First, a "court must consider evidence of the existence of an arbitration agreement in the context of a motion
to compel arbitration."  *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *5 (W.D. Wash. Nov. 19,
2019) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also
Regents of Univ. of Cal. v. Japan Sci. & Tech. Agency*, 2014 WL 12690187, at *3 n.24 (C.D. Cal. Oct. 16,
2014) ("Although the court normally cannot consider matters outside the pleadings in deciding a Rule
12(b)(6) motion to dismiss . . . it may consider such evidence in deciding a motion to compel arbitration.").
Second, Greer concedes that he signed an arbitration agreement and has incorporated it by reference in his
SAC.  *See* SAC ¶ 72 ("Plaintiff did sign a release form/arbitration agreement prior to auditioning . . . ."); *see
also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine permits
courts "to take into account documents whose contents are alleged in a complaint and whose authenticity no
party questions, but which are not physically attached to the [plaintiff's] pleading").  And third, in an
abundance of caution, Marathon requests that the Court take judicial notice of the Audition Agreement.  *See*
RJN at 3 (collecting cases demonstrating courts routinely take judicial notice of arbitration agreements).

Greer requests an injunction and no other relief.  Specifically, in his own words, "[t]he injunctive relief Plaintiff requests is an order that Fremantle and Marathon place Greer on America's Got Talent for the 2022 season for the celebrity audition round . . . ."  *Id.* ¶ 121; *see also id.* ¶ 126 ("The injunction would just be allowing Greer to go onto the show to audition in front of the celebrity judges.").  That is, Greer asks this Court to order Heidi Klum to watch Greer perform "Walks Like Heidi Klum."  *See also* Declaration of Molly Lens ("Lens Decl."), Ex. 4 at D017 ("With that said, since my 3k dollar act was written about Heidi  Klum, let's have the show judge decide whether she likes it or not and not an arbiter or a court judge."); *id.*, Ex. 5 at D019 ("Because I wrote a song about the show judge, right? So let's have that judge decide if she likes it . . .").

Unfortunately, this lawsuit is not the first time that Greer has improperly attempted to use the legal system to try to gain access to a woman celebrity.[3]  To the contrary, this lawsuit is simply the latest in a troubling and well-documented pattern.  Within just the last few years, Greer has filed at least five lawsuits against women celebrities—a lawsuit against reality TV personality Farrah Abraham, a lawsuit against the singer Ariana Grande, and three lawsuits against the singer Taylor Swift.  *See* RJN, Exs. B, D, F, H, J.  In each of these lawsuits, Greer conceded that he was attempting to get the attention of these women and, like this case, each involved Greer's attempt to get the female celebrity to listen to a song that he wrote about them.  *See, e.g.*, RJN, Ex. B (Affidavit and Summons in *Greer v. Abraham*, Case No. 168400383 (2016)) ¶ 11 ("Greer decided, in the summer of 2015, that he would try getting [Farrah Abraham's] attention by writing a song for her to show her that she's 'naturally beautiful' . . . ."); *id.*, Ex. D (Affidavit and Summons in *Greer v. Swift*, Case No. 168401024 (2016)) ¶ 27 ("What is the most disturbing about this case is that Greer gave his all; he made a song ABOUT Taylor to get her attention and went the correct route of pitching to Swift with hoping his story and works would give him leverage . . . ."); *id.*, Ex. F (Affidavit and Summons in *Greer v. Grande et. al.*, Case No. 178400268 (2017)) ¶¶ 5-6

---

[3] Marathon reserves the right to seek to have Greer designated as a vexatious litigant.  *See, e.g.*, *O'Neal v. Zurich Ins. Co. Inc.*, 2021 WL 3824665, at *5 (D. Nev. Aug. 25, 2021) (declaring plaintiff to be a vexatious litigant where he had filed five actions based on "the same underlying facts against the same or similar defendants on the basis of the same or similar legal theories").

(alleging that Greer purchased a backstage pass to one of Ariana Grande's concerts because it "was his chance of meeting Ariana and giving her [an original song he had written for her]").  But, when these women purportedly slighted or ignored Greer, he filed suit claiming that they had discriminated against him because of his disability and caused him emotional distress.  Greer has also sued a female sex worker for alleged slights.  *Id.*, Ex. L (Affidavit of Complaint and Order in *Greer v. Walters*, Case No. RSC2015-000191 (2015) at J174-77.  Each of Greer's lawsuits was promptly dismissed or otherwise failed.  RJN, Exs. C, E, G, I, K, M.  Equally disturbing, at least three women have secured protective orders against him. RJN, Exs. N, O, P.

In the instant suit, Greer is once again inappropriately using the judicial system to try to gain access to a woman celebrity (here, Heidi Klum).  Accordingly, Marathon now moves to compel this case to arbitration so that it may promptly resolve Greer's claims in the forum to which he agreed.[4]

## III.   LEGAL ARGUMENT

### A.   The Court Should Compel Arbitration, Including On Any Threshold Questions Of Arbitrability.

"The [Federal Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S.Ct. 524, 527 (2019).  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts *must* respect the parties' decision as embodied in the contract." *Id.* at 528.[5]  This principle applies to all "gateway questions of arbitrability," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), including "the authority to decide the unconscionability of the arbitration agreement," whether the parties have

---

[4] Prior to filing this motion, Marathon requested that Greer dismiss his complaint and commence arbitration, as he agreed prior to auditioning. Lens Decl., Ex. 1 at D002.  Greer proposed that Marathon agree to pay his arbitration costs and fees. *Id.* ¶ 3.  Greer then confirmed that proposal in writing. *Id.*, Ex. 2 at D004.  Marathon agreed. *Id.*, Ex. 3 at D012.  Greer, however, then reneged on his agreement, first saying it was a "slip of the tongue" and then claiming he made the offer "as reverse phycology." *Id.* at D010, D007.  In addition, claiming that he held the "major pieces in the game of chess," Greer threatened that he had "a few news reporters lined up who are interested in covering this," should Marathon continue to refuse to advance him in the competition  *Id.*, Ex. 5 at D019.

[5] All emphases added, and citations and quotations omitted, unless noted otherwise.

agreed to arbitrate, or whether their agreement covers a particular controversy, *Zeevi v. Citibank, N.A.*, 2021 WL 621423, at *3 (D. Nev. Feb. 16, 2021).[6]

The Audition Agreement requires that an arbitrator—and not this Court—decide gateway questions of arbitrability for three independent reasons: (1) it explicitly states that any disputes regarding the "scope or applicability" of the arbitration clause will be decided by an arbitrator; (2) it incorporates the JAMS Streamlined Arbitration Rules which grant the arbitrator exclusive jurisdiction to decide questions of arbitrability; and (3) it mandates that all disputes "arising out of or relating to" the agreement be decided by an arbitrator.

*First*, the arbitration clause in the Audition Agreement provides that "any controversy or claim arising out of or relating to this Agreement . . . ***including the scope or applicability of this Agreement to arbitrate***, shall . . . be resolved by final and binding confidential arbitration administered by JAMS . . . ." RJN, Ex. A at J003.  The Ninth Circuit has held that substantially similar language constitutes a clear and unmistakable agreement to arbitrate threshold questions of arbitrability.  *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("We hold that this language, delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause, constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.  In other words, the parties clearly and unmistakably agreed to arbitrate the question of arbitrability.").  Other courts are in accord.  *See, e.g.*, *Bank Leumi, USA v. Miramax Distrib. Servs., LLC*, 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) ("By requiring arbitration of disputes over the 'scope or applicability' of arbitration, the parties clearly and unmistakably agreed to arbitrate the question of whether and to what extent Plaintiff's claims are subject to arbitration.").

*Second*, the Audition Agreement incorporates the JAMS Streamlined Arbitration Rules.  *See* RJN, Ex. A at J003 (noting that any controversy or claim arising out of related to the agreement will "be resolved by final and binding confidential arbitration administered by JAMS in

/ / /

---

[6] For the purposes of this motion, Marathon assumes that Nevada law—where Greer auditioned, lives, and filed suit—applies to the enforcement of the Audition Agreement.

- 5 -

accordance with its Streamlined Arbitration Rules and Procedures or subsequent versions thereof . . . .").  As relevant here, Rule 8(b) of the JAMS Streamlined Arbitration Rules provides that: "Jurisdictional and arbitrability disputes, ***including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration***, shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  *See* Rule 8, JAMS Streamlined Arbitration Rules & Procedures, available at https://www.jamsadr.com/rules-streamlined-arbitration/.  The Ninth Circuit has held that incorporation of the JAMS arbitration rules constitutes a clear and unmistakable agreement to arbitrate arbitrability.  *See Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc*., 497 F. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability.").[7]  Other courts are in accord.  *See, e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (holding that parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into [their] Agreement"); *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (noting that the parties had "expressly adopted" the JAMS Rules in their agreement, "present[ing] clear and unmistakable evidence that [they] agreed to arbitrate arbitrability"); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (noting that incorporation of the JAMS Rules "clearly committed gateway questions of arbitrability to the arbitrator").

*Third*, Greer agreed to arbitrate any disputes "arising out of or relating to" the Audition Agreement.  *See* RJN, Ex. A at J003.  The Ninth Circuit has held that "parties may empower the arbitrator to decide arbitrability through the use of a broad arbitration clause."  *New Eng. Mech., Inc. v. Laborers Loc. Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990).  Other courts are in accord. *See, e.g.*, *Bank Leumi*, 2018 WL 7568361, at *6 ("Even without the express language providing for

---

[7] The Ninth Circuit has similarly held that incorporation of nearly identical provisions in the arbitration rules of the American Arbitration Association likewise constitutes a clear and unmistakable agreement to delegate arbitrability decisions to an arbitrator.  *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

arbitration over disputes about 'scope or applicability,' courts nevertheless have found clear and unmistakable evidence of an intent to arbitrate questions of arbitrability in a broad commercial arbitration clause requiring arbitration of disputes 'arising out of or related to this agreement.'") (collecting cases).

Thus, in no fewer than three places in the Audition Agreement, Greer agreed to arbitrate arbitrability.  Accordingly, consistent with the parties' agreement, the Court should grant Marathon's motion to compel arbitration without reaching any gateway issues regarding the scope, applicability, or enforceability of the parties' agreement to arbitrate.  *See id.* at *7 ("[T]he Court must grant Miramax's motion to compel arbitration over Plaintiff's claims, which in the first instance will require a determination of the scope of the arbitrator's own jurisdiction."); *Zeevi*, 2021 WL 621423 at *3 ("Accordingly, any threshold questions, including unconscionability, fall within the authority of the arbitrator, and Defendant's Motion to Compel Arbitration is granted.").

### B.   In the Alternative, If The Court Proceeds To Decide Arbitrability, Which It Should Not, It Should Compel Arbitration.

If the Court proceeds to evaluate arbitrability, which it should not, it should order Greer to arbitrate his claims against Marathon because (i) the Federal Arbitration Act ("FAA") reflects a strong preference in favor of arbitration, (ii) the Audition Agreement's plain and expansive language encompasses this dispute, (iii) there is no basis for the Court to find the arbitration provision is unconscionable, and (iv) third-party-beneficiary and equitable-estoppel principles preclude Greer from avoiding arbitration with Fremantle Productions.

#### 1.   Federal law favors enforcement of arbitration provisions.

In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration."  *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  "The [FAA] creates a strong presumption in favor of enforcing arbitration agreements."  *Karter v. Sunvest Communities USA, LLC*, 2010 WL 2976173, at *2 (D. Nev. July 23, 2010).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  / / /

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Nevada law is in accord with these longstanding principles.  *See State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 199 P.3d 828, 832 (Nev. 2009) ("As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration.").

> **2.      The plain language of the Audition Agreement encompasses this dispute.**

Greer agreed to arbitrate "any controversy or claim arising out of or relating to" the Audition Agreement.  RJN, Ex. A at J003.  Greer's claim is that Marathon purportedly discriminated against him by failing to advance him to the live, televised rounds of *AGT* based on his audition.  *See, e.g.*, SAC ¶ 90 (alleging that "the producers for Fremantle and Marathon discriminated against Plaintiff by failing to adhere to its own policy of affording opportunities to disabled contestants by overlooking that Greer's efforts [during his audition] were made to act as a reasonable accommodation and that his efforts were necessary for him to compete on the show . . . ."); *id.* ¶ 101 (alleging that "the producers discriminated against Greer by not letting him compete for the privileges and advantages of AGT on the celebrity audition of the show and overlooking/ignoring that his efforts [during his audition] were meant to be accommodations  . . . ."). This claim unquestionably "aris[es] out of or relat[es]" to the Audition Agreement.

The phrase "arising out of or relating to" "constitute[s] the broadest language the parties could reasonably use to subject their disputes to [arbitration]."  *State ex rel. Masto*, 199 P.3d at 833 n.5; s*ee also Reflex Media, Inc. v. Vibe Media, Inc.*, 2016 WL 11000047, at *3 (C.D. Cal. July 18, 2016) ("Under Nevada law, the phrases 'arising out of' and 'related to' constitute the broadest language parties can use to subject their disputes to arbitration."); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (holding that "the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").  When parties use language such as this in an arbitration agreement, "only an express provision excluding a specific dispute or 'the most forceful

///

- 8 -

1   evidence of a purpose to exclude the claim from arbitration' will remove the dispute from

2   consideration by the arbitrator." *Hansen v. Musk*, 2020 WL 4004800, at *4 (D. Nev. July 15,

3   2020) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986)).

4          Not surprisingly then, this Court has previously held that where a party agrees to arbitrate

5   claims and controversies arising out of or relating to an agreement, they must arbitrate claims of

6   discrimination relating to the subject of that agreement.  For example, in *Mallia v. Drybar*

7   *Holdings, LLC*, this Court held that where a party agreed to arbitrate claims arising out of or

8   relating to their employment agreement, they must arbitrate claims of alleged discrimination in

9   their employment, including claims asserted under the ADA.  *Mallia v. Drybar Holdings, LLC*,

10  2020 WL 1250817, at *1 (D. Nev. Mar. 16, 2020) (J. Boulware II).  The Court reached the same

11  conclusion in *Larson v. D. Westwood, Inc.  See Larson v. D. Westwood, Inc*., 2016 WL 5508825,

12  at *1 (D. Nev. Sept. 27, 2016) (J. Boulware II) (granting motion to compel arbitration of complaint

13  alleging discrimination based on arbitration provision in employment agreement); *see also*

14  *Kaufman v. Sony Pictures Television, Inc*., 2017 WL 3090256, at *4, *7 (D. Mass. July 20, 2017)

15  (granting motion to dismiss based on arbitration provision in a participation agreement for a reality

16  show).

17         As Greer's claims all stem from the subject of his agreement—his audition for *AGT*—and

18  there is no indication whatsoever in the agreement that Greer's claim of discrimination is excluded

19  from arbitration, the Court must grant Fremantle's motion and refer this case to arbitration.  *See*

20  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no

21  place for the exercise of discretion by a district court, but instead mandates that district courts *shall*

22  direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

23  signed.") (emphasis in original).

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

### 3.    There is no basis for the Court to find that Greer's arbitration agreement is unconscionable.

In his SAC, Greer does not dispute that he signed the Audition Agreement.  SAC ¶ 72. Rather, Greer suggests that the Court should decline to hold Greer to his agreement to arbitrate for two reasons.  Neither has merit.

*First*, Greer claims that he "did not knowingly or voluntarily waive his American [sic] with Disabilities Act remedies."  *Id.*  Greer thus conflates his agreement to arbitrate (RJN, Ex. A at J003) with the question of the scope of the release in the Audition Agreement (*id.* at J002).[8]  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").  Indeed, the ADA itself encourages parties to resolve disputes through arbitration.  *See* 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter.").  And courts regularly compel arbitration of claims arising under the ADA.  *See, e.g.*, *Mallia*, 2020 WL 1250817, at *1, *3-*4 (finding an arbitration agreement neither procedurally nor substantively unconscionable in granting motion to compel arbitration of claims including for violation of the ADA); *Sheehan v. Sparks Black Bear, LLC*, 2019 WL 591445, at *1, *3 (D. Nev. Feb. 13, 2019) (same).

*Second*, Greer claims that "the delegation clause" of his arbitration agreement is "procedurally and substantively unconscionable."  SAC ¶ 73.  Greer, however, does not identify a single basis on which this clause is supposedly unconscionable.  Nor could he.  The Audition Agreement is not a contract of adhesion because Greer is not a "consumer[] of goods and services"; rather, he is a prospective contestant for a reality competition show.  *See Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000) ("An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on

---

[8] Because the impact (if any) of the release in the Audition Agreement is an issue for the arbitrator, not this Court, Fremantle does not address it further here.

a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain.").

Moreover, as discussed above in Section III.A, the Supreme Court and every Federal Circuit Court

has found that delegation clauses just like the one in the Audition Agreement are enforceable and

thus are not substantively unconscionable.  *See supra* § III.A; *see also Zeevi*, 2021 WL 621423 at

*3 (rejecting argument that delegation clause was unconscionable and granting motion to compel

arbitration).

### 4. Greer cannot avoid arbitration by improperly naming Fremantle Productions as a defendant.

Nor can Greer avoid arbitration by (improperly) naming Fremantle Productions as a

defendant.  The law is clear that "the obligation to arbitrate, which was executed by another party,

may attach to a nonsignatory."  *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660

(Nev. 2008); *see also Elko Broadband Ltd. v. Dhabi Holdings PJSC*, 2020 WL 6435754, at *4 (D.

Nev. Nov. 2, 2020) ("In arbitration agreements, a signatory may be forced to arbitrate claims they

have brought, especially where it sues a parent instead of a subsidiary in a transparent attempt to

avoid arbitration.").  In particular, "traditional principles of state law allow a contract to be

enforced by or against nonparties to the contract through assumption, piercing the corporate veil,

alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also Letizia v. Prudential Bache

Sec., Inc*., 802 F.2d 1185, 1187 (9th Cir. 1986) ("Other circuits have held consistently that

nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract

and agency principles.").  Here, Greer must arbitrate his claim against Fremantle Productions for

two independent reasons:  (1) Fremantle Productions is a third-party beneficiary of the Audition

Agreement; and (2) Greer is estopped from avoiding arbitration with Fremantle Productions.[9]

---

[9] Even further still, the arbitration clause in the Audition Agreement is not limited to claims against Marathon.  Rather, the arbitration clause applies to "any controversy or claim arising out of or relating to this Agreement . . . ."  RJN, Ex. A at J003.  Put differently, it is not limited to claims against a particular party, but applies more broadly to "any controversy or claim" arising out of or relating to the Audition Agreement.  *See Doctor's Assocs. Inc. v. Burr*, 226 F. Supp. 3d 106, 111, 113 (D. Conn. 2016) (finding that arbitration clause applied to nonsignatory where clause "contain[ed] a broad reference to all claims 'arising out of or relating to [defendants'] application or candidacy for the grant of a SUBWAY® franchise from Franchisor,' which, on its face, could encompass claims against nonparties to the agreement").

- 11 -

***Fremantle Productions is a third-party beneficiary of the Audition Agreement.***  Under Nevada law, whether a party is an intended third-party beneficiary "depends on the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Canfora v. Coast Hotels & Casinos, Inc*., 121 P.3d 599, 605 (Nev. 2005).  A party does not have to be named in an agreement in order to be a third-party beneficiary, so long as there is language or other evidence to demonstrate an intent to benefit that party.  *See, e.g.*, *WuMac, Inc. v. Eagle Canyon Leasing, Inc.*, 2015 WL 995095, at *8 (D. Nev. Mar. 5, 2015) ("The courts have equitable authority to enforce contracts as to intended third party beneficiaries who are not named in the contract."); *Wright v. Incline Vill. Gen. Improvement Dist*., 597 F. Supp. 2d 1191, 1207 (D. Nev. 2009) ("Although the 1968 property owners are not named parties to the 1968 deed . . . they are intended third-party beneficiaries of the deed.").

The Audition Agreement leaves no doubt that Fremantle Productions is a third-party beneficiary.  The agreement was entered into by Marathon Productions for the express purpose of conducting auditions for *AGT*, a television series that Greer alleges Fremantle Productions produces.  *See* RJN, Ex. A at J002 (noting that Greer entered into the Audition Agreement in "consideration of Producer [i.e., Marathon Productions] possibly including me in an episode(s) of the television series currently entitled 'America's Got Talent'"); SAC ¶ 88 (alleging that "Marathon is a subsidiary of Fremantle and produces AGT with Fremantle").  Critically, Fremantle Productions is a named beneficiary of the release in the Audition Agreement.  RJN, Ex. A at J002 ("I and my heirs . . . hereby release, discharge and hold harmless Producer [i.e., Marathon Productions] [and] Producer's parent . . . .").  In addition, Greer agreed that Fremantle Productions has rights to Greer's audition and likeness.  *Id.* at 1 ("I agree that the Producer or any of the Released Parties [e.g., Fremantle Productions] (and their assignees and/or designees) may use all or any part of the Program Materials and My Likeness.").  And Greer agreed to be bound by Fremantle Productions' privacy policy regarding the use of Greer's personal information.  *Id*. at J003 ("I understand that I am agreeing to Producer's Privacy Policy located at [Fremantle Productions' website].").

/ / /

- 12 -

1    The face of the Audition Agreement thus repeatedly confirms that Fremantle Productions is

2   a third party-beneficiary entitled to enforce the arbitration provision.  *See, e.g.*, *Geier v. m-Qube*

3   *Inc.*, 824 F.3d 797, 801 (9th Cir. 2016) (holding that party was a third-party beneficiary of

4   arbitration agreement where agreement included a release of claims with respect to that party);

5   *Gibson v. Wal-Mart Stores Inc.*, 181 F.3d 1163, 1165-66, 1170 n.3 (10th Cir. 1999) (same); *Cohen*

6   *v. TNP 2008 Participating Notes Program, LLC*, 243 Cal. Rptr. 3d 340, 355 (Ct. App. 2019)

7   ("Third parties may enforce a contract with an arbitration provision . . . where they are . . .

8   assigned rights under the contract.").

9       ***Greer is equitably estopped from avoiding arbitration with Fremantle Productions.***

10  Under Nevada law, the doctrine of equitable estoppel may require a party to arbitrate with a non-

11  signatory to an arbitration agreement in two circumstances.  First, equitable estoppel applies when

12  "each of a signatory's claims against a nonsignatory makes reference to or presumes the existence

13  of the written agreement . . . ."  *Dropp v. Diamond Resorts Int'l, Inc.*, 2019 WL 332399, at *5 (D.

14  Nev. Jan. 25, 2019).  Second, equitable estoppel applies "when the signatory to the contract

15  containing the arbitration clause raises allegations of substantially interdependent and concerted

16  misconduct by both the nonsignatory and one or more of the signatories to the contract."  *Id*.  Both

17  estoppel theories readily apply here.

18      Greer's complaint is premised on discrimination he allegedly suffered by not being chosen

19  to advance on *AGT*.  *See, e.g.*, SAC ¶¶ 90, 101.  Greer expressly agreed to terms of the Audition

20  Agreement as "consideration" for the opportunity of "possibly [being] include[ed] in an episode of

21  the television series currently entitled 'America's Got Talent.'"  *See* RJN, Ex. A at J002.  Thus,

22  Greer cannot dispute that his allegations that he was discriminated against during his audition "rely

23  on and closely relate to" the Audition Agreement.  *See, e.g.*, *Bates v. Nev. Resort Props. Polo*

24  *Towers Ltd. P'ship*, 238 P.3d 795, 2008 WL 6043844, at *1 (Nev. Sept. 5, 2008) (unpublished

25  disposition) (holding that "nonsignatory to a contract [could] properly enforce an arbitration

26  agreement against a signatory of the contract" under doctrine of equitable estoppel where

27  / / /

28  / / /

- 13 -

1  signatory's "claims against [nonsignatory] rel[ied] upon and [were] closely related to the

2  agreements that contain the arbitration agreement").

3     Likewise, Greer "raises allegations of substantially interdependent and concerted conduct"

4  by both Fremantle Productions and Marathon Productions.  Greer *alleges* that Marathon

5  Productions is a subsidiary of Fremantle Productions and that both Marathon Productions and

6  Fremantle Productions are producers of *AGT*.  *See* SAC ¶ 17 ("Defendant Marathon

7  Productions . . . is a subsidiary of Fremantle and is also a producer of AGT."); *id.* ¶ 88 ("Marathon

8  is a subsidiary of Fremantle and produces AGT with Fremantle . . . .").  Moreover, throughout his

9  complaint Greer affirmatively—and repeatedly—lumps Marathon Productions and Fremantle

10  Productions together.  *See, e.g.*, *id.* ¶ 49 (alleging that "Greer and his band set up a Zoom call to

11  have a video call with a ***Fremantle/Marathon Productions*** producer to perform the audition"); *id.*

12  ¶ 90 (alleging that "the producers for ***Fremantle and Marathon*** discriminated against Plaintiff by

13  failing to adhere to its own policy of affording opportunities to disabled contestants").  Because

14  Greer alleges that Marathon Productions and Fremantle Productions engaged in the exact same

15  conduct, his claims necessarily "raise[] allegations of substantially interdependent and concerted

16  conduct."  *See, e.g.¸ Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cty. of Clark*,

17  390 P.3d 166, 2017 WL 881877, at *2 (Nev. Feb. 27, 2017) (unpublished disposition) (holding that

18  where plaintiff alleged that signatory and non-signatories to an agreement "acted in concert in

19  making [alleged] misrepresentations, [plaintiff's] tort claims necessarily raise[d] allegations of

20  substantially interdependent and concerted misconduct"); *Hansen*, 2020 WL 4004800, at *3

21  ("Because [plaintiff] alleged that Musk used his influence to exercise control, the allegations are

22  'substantially interdependent and concerted misconduct' between Tesla, the signatory, and Musk,

23  the nonsignatory. Therefore, the arbitration agreement applies equally to Musk.").

24     Accordingly, under both third-party beneficiary and equitable estoppel principles,

25  Fremantle Productions is entitled to enforce the Audition Agreement.[10]

26  ─────────────────

[10] Even if Greer's claims against Fremantle Productions were not arbitrable (which they are), Greer's claim

27  against Fremantle Productions would need to be stayed pending a resolution of the arbitration between
Greer and Marathon Productions.  *See, e.g.*, *Jaffe v. Zamora*, 57 F. Supp. 3d 1244, 1248 (C.D. Cal. 2014)

28  ("Where some litigants are not parties to the arbitration agreement, the court may nonetheless stay the entire

**IV.    CONCLUSION**

Marathon respectfully requests an order (1) that an arbitrator will decide the question of arbitrability or, in the alternative, compelling Greer to submit to binding arbitration of all of the claims he has asserted against Marathon; and (2) dismissing this litigation.  *See Mallia*, 2020 WL 1250817, at *4 (D. Nev. Mar. 16, 2020) (J. Boulware II) ("The Court thus finds that the Arbitration Agreement is broad enough to require that all of [plaintiff's] claims are arbitrated.  The Court therefore exercises its discretion as articulated by the Ninth Circuit . . . to dismiss all claims in this action.") (citing *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); *Mohazzabi v. Wells Fargo, N.A.*, 2019 WL 4675768, at *4 (D. Nev. Sept. 25, 2019) (J. Boulware II) (same).

Dated this 4th day of February 2022.

HONE LAW
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074


O'MELVENY & MYERS LLP
Molly M. Lens*
mlens@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
*Pro hac vice application to be submitted*

*Attorneys for Defendants Fremantle Productions North America, Inc. and Marathon Productions, Inc.*

---

action if arbitration of claims against a party to an arbitration agreement is likely to resolve factual questions coextensive with claims against nonparties to that arbitration agreement."); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1036, 1045 (N.D. Cal. 2018) (staying litigation on grounds of "judicial and litigation economy" where arbitration agreement only applied to parent company and not its subsidiary); *Ballard v. Corinthian Colls., Inc.*, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006) (staying litigation where only some parties were subject to arbitration, but where the claims against all parties were "grounded in identical facts and legal theories").

1

2

3 **CERTIFICATE OF SERVICE**

4       The undersigned, an employee of Hone Law, hereby certifies that service of the foregoing

5 document was made on the 4th day of February 2022 via the Court's CM/ECF filing system

6 addressed to all parties on the e-service list.

7

Candice Ali, an employee of HONE LAW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28