# EXHIBIT D
## Affidavit and Summons (Small Claims), *Greer v. Swift*, Case No. 168401024 (Salt Lake City Justice Ct.)

F I L E D

October 11, 2016

SALT LAKE CITY JUSTICE COURT

__Russell Greer__
Name

▓▓▓▓▓▓▓▓▓▓
Address

Murray, Utah 84107
City, State, Zip

▓▓▓▓▓▓▓▓
Phone

▓▓▓▓▓▓▓▓▓▓▓▓
Email

I am the  [ X ] Plaintiff
         [ ] Attorney for the Plaintiff and my Utah Bar number is _____

## In the Justice Court of Utah

____3rd____ Judicial District ____Salt Lake____ County

Court Address: 333 South 200 East, Salt Lake City, Utah 84111

| Russell Godfrey Greer | **Affidavit and Summons** (Small Claims) |
|---|---|
| Plaintiff | |
| v. | 168401024 <br> Case Number |
| Taylor Alison Swift | Pro Tem <br> Judge |
| Defendant | |
| And | |
| Defendant | |

I swear that the following is true.

(1) Defendant owes me     $ 6,800.00       for the claim described in paragraph (2)
    plus the filing fee of  $ 100.00
    plus an estimated service fee of  $ 100.00
    plus estimated attorney fees of  $ _____   (Attach statute or contract showing you are authorized to claim attorney fees.)

for a total of: $ 7,000.00

plus prejudgment interest, if qualified for prejudgment interest.

(2) The events happened on **September 13th, 2016**_____(date). My claim is based on the following facts.

(see attached papers)

(3) [ ] Defendant resides within the jurisdiction of the court.
    [X] The events happened within the jurisdiction of the court.

(4) [X] I am not suing a government entity. I am not suing a government employee for the employee's on-the-job conduct.

(5) [X] I am not suing on a claim that has been assigned to me.

(6) [ ] I am filing this affidavit in the First District Court for Cache County because the defendant resides in unincorporated Cache County or in a municipality within Cache County that does not have a justice court and the cause of action arose in unincorporated Cache County or in a municipality within Cache County that does not have a justice court.

I have not included any non-public information in this document.

10/10/2016
Date

Sign here ▶ [signature]

Typed or Printed Name  Russell Greer

I certify that Russell Greer, who is known to me or who presented satisfactory identification, has, while in my presence and while under oath or affirmation, voluntarily signed this document and declared that it is true.

10/11/16
Date

Sign here ▶ [signature]

Typed or printed name (Court Clerk or Notary Public)

Notary Seal

## Summons

To:   Taylor Alison Swift, 147 Maple Row Blvd, Hendersonville, Tennessee 37075

_____
Defendant Name and Address                              *Nombre y dirección del Demandado*

_____
Defendant Name and Address                              *Nombre y dirección del Demandado*

You are summoned to appear at trial to answer the above claim. The trial will be held at the court address shown above. **If you fail to appear, judgment may be entered against you for the total amount claimed**.

*Se le cita a comparecer a juicio para responder al reclamo arriba descrito. El juicio tendrá lugar en la dirección del tribunal que se muestra arriba. **Si usted no comparece, se podría dictar un fallo contra usted por el total de la cantidad reclamada.***

Date *(Fecha)* Dec. 8 2016      Time *(Hora)* 5:30  [ ] a.m. [×] p.m.
Room *(Sala)* TBD                Judge *(Juez)* Pro Tem

### Notice to the Defendant

A small claims case has been filed against you. This imposes upon you certain rights and responsibilities. You can find small claims information and instructions at https://www.utcourts.gov/howto/smallclaims/.

The court's Finding Legal Help web page **(www.utcourts.gov/howto/legalassist/)** provides information about the ways you can get legal help, including the Self-Help Center, reduced-fee attorneys, limited legal help and free legal clinics.

*Un caso de reclamos menores ha sido presentado contra usted. Esto le impone a usted ciertos derechos y obligaciones. Usted puede encontrar información e instrucciones sobre reclamos menores en https://www.utcourts.gov/howto/smallclaims/.*

*La página del tribunal sobre Como Encontrar Ayuda Legal (www.utcourts.gov/howto/legalassist/) proporciona información acerca de las maneras en que usted puede obtener ayuda legal, incluyendo el Centro de Ayuda del tribunal, abogados a precio reducido, ayuda legal limitada y talleres jurídicos gratuitos.*

**Attendance.** You must attend. If you do not attend, the relief requested might be granted. You have the right to be represented by a lawyer.

> ***Asistencia.*** *Presentarse es obligatorio. Si usted no llegara a presentarse, el remedio solicitado podría ser otorgado. Usted tiene el derecho de que lo represente un abogado.*

**Evidence.** Bring with you any evidence that you want the court to consider.

> ***Pruebas.*** *Traiga con usted cualquier prueba que quiera que el tribunal tome en cuenta.*

**Interpretation.** If you do not speak or understand English, contact court staff at least 3 days before the hearing, and an interpreter will be provided.

> ***Interpretación.*** *Si usted no habla ni entiende el Inglés contacte al personal del tribunal por lo menos 3 días antes de la audiencia y le proveerán un intérprete.*

**Disability Accommodation.** If you have a disability requiring accommodation, including an ASL interpreter, contact court staff at least 3 days before the hearing.

> ***Atención en caso de incapacidades.*** *Si usted tiene una incapacidad por la cual requiere atención especial, favor de contactar al personal del tribunal por lo menos 3 días antes de la audiencia.*

**Right to Jury Trial.** If you want to have a jury trial in this case, you must file documents to remove the case to district court. See the Small Claims web page for information about that process, and forms: https://www.utcourts.gov/howto/smallclaims/.

> ***El derecho a juicio por jurado.*** *Si usted quiere tener un juicio con jurado, usted deberá presentar documentos pidiendo que el caso sea transferido al tribunal de distrito. Vea la página de internet de Reclamos Menores para más información sobre el proceso y formularios: https://www.utcourts.gov/howto/smallclaims/.*

Date: 10/11/16

Sign here ▶ _____
Court Clerk

## OVERVIEW OF THE CLAIM:

1.      After spending a year writing songs about and for Taylor Swift and spending thousands of dollars and hundreds of hours trying to get her attention, Greer came so close to getting Ms. Swift's attention to become a songwriter for her, but each time, he was stonewalled by her managers at 13 Management who were very unsympathetic and did not fulfill their agent responsibilities under Ms. Swift's supervision. He also approached her family and they seemed to have ignored him thus leaving Greer monetarily damaged and emotionally damaged. Greer now approaches the Court with a Complaint of *Respondent Superior* as the agents are under her duty as she is the principal. They are in a principal-agent relationship. The complaint encompasses *Negligence* and *Intentional Infliction of Emotional Distress* claims.

2.      It is important to analyze the background of the case, the facts, and relevant case law/statutes that support Greer's cause of action and to take into consideration that Greer is "an eggshell skull" plaintiff, in that he suffers from depression and severe anxiety, and said mental health issues were *aggravated* by the agents of Swift. *Vosburg v. Putney*, 80 Wis. 523, 50 N.W. 403 (1891) ("defendant who kicked plaintiff could not avoid liability because plaintiff suffered from an infection in his tibia that *aggravated* his injury -- he was an "eggshell skull plaintiff"). It should also be taken into consideration that Greer's face is paralyzed and he is made fun of daily and only wanted to write music for somebody that he greatly admired. Celebrities are held to a higher standard of protection and therefore are held to a higher standard of care and thus their representatives should be too. The actions of her agents, Jay Schaudies and Robert Allen, were reckless, outrageous, and were negligent. *Utah Code 78B-5-818*.

## BACKGROUND OF PLAINTIFF AND DEFENDANT:

3.       Defendant Taylor Alison Swift is a world renowned celebrity, as she is famous for her inspiring music. She is 26 years old (a year and three months older than Greer). Her last album, *1989,* broke *Billboard* records.

4.       Her management, *13 Management,* is headquartered in Hendersonville, Tennessee, a suburb of Nashville. She has two managers (which is a very similar role to agents): Jay Schaudies and Robert Allen.

5.       Plaintiff Russell Godfrey Greer is a paralegal graduate from the LDS Business College. He currently works for an IP law firm in downtown Salt Lake City. He also served an LDS mission in Phoenix, AZ. Greer is also an Eagle Scout and tries to "do a good turn daily". These accomplishments have been particularly meaningful to Greer as his face is paralyzed. He was born with a facial deformity termed, *"Moebius Syndrome"*. He was also diagnosed with depression and anxiety at the age of 14 and has taken anti-depressants all of his life.

6.       Greer has had a taste for the theatrics since he was a kid. He has been a musician since he was in his early teens and can play the piano very fluently. He has been professionally trained and can read and write music. He can also play music by ear. But because of his disability, it is much harder for him to break into the entertainment industry. Greer can't go to an audition and nail it like any other actor or musician. He also lacks his own personal recording equipment because he never bothered to buy any since he can't sing clearly. So Greer writes all of his music down on a sheet music program and then pays others large sums of money to record his music. He has to pay up to four figures for his demos because he wants the best quality.

## FACTS OF THE CASE:

7.      Greer was in college, working two jobs, when Taylor Swift did the publicity stunt of going to prom with different high school boys in 2014. This inspired Greer, who was struggling to break into the entertainment business as a screenwriter/songwriter, to try getting Swift's attention. He felt the perfect way would be to write an original song about her. He figured flattery would get her attention. He thought that if kids could go to a silly dance with her then he could do something meaningful and career helping for her.

8.      It wasn't until September 2015 that Greer finished writing out the lyrics and sheet music to his song. He spent several months fundraising for his song, but had very little donations. He created a professional video with an amateur filmmaker to raise money for the song. During the winter of 2015-2016, job loss happened and he had to work two part-time janitor jobs so it hindered his ability to personally pay for the song.

9.      In June 2016, he was able to find a professional job again and paid a large sum of money to a demo band that he found online. He selected the band too soon and regretted the payment since they messed up the song that he wrote about Taylor Swift. The song was called, "I Get You" and detailed how he related to her life's struggles. Though the song did not produce how he wanted it to be, it still showed sincerity and effort. During this time, he read on the news how a girl wrote a letter to Taylor Swift and was able to get her to sing at her brother's wedding. This gave Greer hope that he could get Taylor. He felt he was a shoo in.

10.     In July, he paid a large sum of money to a man who helped produce the Grammy winning song, "Where Are U Now?" by Justin Bieber. He also hired a Fifth Harmony background vocalist. They produced Greer's demo, "Safari Ride". He wanted to be fully equipped as he was ready to approach and pitch to Taylor Swift after working so hard on this.

11.   Greer registered with the International Movie Data Base website and became a Pro User and thus obtained the contact information for Swift's managers.

12.   On July 17, Greer contacted her manager Jay Schaudies through email and gave a long pitch of how he wrote a song about Taylor and wanted to give it to her in admiration and that it would flatter Swift and open the door to letting him pitch songs to her in case there was an unsolicited submission policy. The next day, Schaudies replied, but it was a short and a tad rude email that simply said Swift writes all of her own music, and since the request was unsolicited, it could not be forwarded.

13.   Greer was devastated. Her managers seemed to ignore the fact that he wrote a song to flatter her and that couldn't be forwarded? He spent several days in a haze because of the rude rejection. Greer couldn't let his efforts and time and money go to waste so he gave it a month's rest. He contacted her managers again in September and begged for an exception to be made and explained his challenges and how he wanted to rise above them with the help of somebody he admired.

14.   Schaudies called Greer on September 13. Greer was at work so he did not answer, but Schaudies reiterated what he had told Greer a few months earlier, but completely ignored Greer's request for an exception. Greer was again disappointed.

15.   Greer attempted to contact Swift through her father and her brother, but never received answers. Greer also sent a package with a heartfelt letter with sheet music for a Christmas song he wanted Swift to do to her parents' house on 173 Inlet Drive in Hendersonville. He also had flowers and chocolates delivered for her. He also got her mother flowers. After all of that, he still never heard back from any of the Swifts.

16.   Greer tried one more option: he approached the lawyers for 13 Management at the Milom firm to try getting them to amend her contract to make exceptions. The head partner replied and said that he was unable to do that without offering any further explanation.

17.   Greer realized he had hit a dead end with thousands of dollars lost in producing music for Swift and his anxiety and depression was eating away at him. He felt like a failure. He had done everything right and he felt that the agents were being negligent in their judgement with the communication and reckless to the disregard to his feelings. He feels that Swift would have better instructions on how to deal with making exceptions. Their conduct falls on her. So he approaches the court with the following complaint.

## SUMMARY of CONFLICT

18.   Because of their adherence to a "No Unsolicited Submissions" policy and not using prudent judgement to follow the spirit of the law and create an exception for the material and the pitch to be sent to Taylor Swift, her agents committed acts of negligence and infliction of emotional distress. Since Swift is their principal, she is liable for their conduct per the doctrine of *respondeat superior*.

## RESPONDEAT SUPERIOR

19.   Swift is the principal to her agents (managers) Schaudies and Allen. *"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 634 A.2d 74, 79 (1993) (citing *Arcell v. Ashland Chem. Co.*, 152 N.J.Super. 471, 378 A.2d 53, 65 (Law Div.1977); 2A C.J.S. Agency § 37 (1972); Restatement (Second) of Agency § 1 (1958)). Swift uses her managers to help her find work; secure performances; act as the

communication point for inquiries; the usual job description of a talent manager while Swift decides all end results. This creates a master-servant relationship and thus Swift is liable for their conduct.

20. Plaintiff sues under *Respondeat superior* because it "reflects the likelihood that an employer will be more likely to satisfy a judgment" than an employee and is in a better position to "insure against liability encompassing the consequences of all employees' actions." RESTATEMENT (THIRD) OF AGENCY § 2.04 cmt. b (AM. LAW INST. 2006). Second, *respondeat superior* is also aimed at deterrence. It "creates an incentive for principals to choose employees and structure work within the organization so as to reduce the incidence of tortious conduct." *Id.* "This incentive may reduce the incidence of tortious conduct more effectively than doctrines that impose liability solely on an individual tortfeasor." *Id.* Greer hopes that after this lawsuit, that exceptions can be implemented with 13 Management to not repeat what he went through.

21. Under the *Birkner Test,* the principal is held liable for the actions of the agent if: (1) "'an employee's conduct [is] of the general kind the employee is employed to perform'"; (2) "'the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment'"; and (3) "'the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest.'" *Birkner v. Salt Lake County* (Utah 1989). All three of the steps of the test can be proven with the incident at hand. (1) Schaudies and Allen, as previously established, were hired to help Swift find work and to manage her schedule and correspondence. (2) Schaudies communicated with Greer from the 13 management email system and called Greer from the 13 management phone during regular business hours. (3) Schaudies thought that he was adhering to company rules or contract stipulations or whatever by

refusing to take into consideration Greer's email. And while company policy may call for no unsolicited contact, it led to negligence and harm by Schaudies not attempting to converse with Swift about the urgency of the message and to maybe try making an exception to the rules. Exceptions can be granted.

22.     According to professionals who contribute to the HR blog site, *HR Law Matters*, exceptions should be made for compelling reasons. A contributor goes on to write: "Policies are helpful because they set expectations and guidelines for employees. But they should not be enforced rigidly, blind to real life and real personal and business circumstances with no exceptions." *When Should Employers Make Exceptions to Their HR Policies?* (http://www.hrlawmatters.com/2012/08/when-should-employers-make-exceptions-to-their-hr-policies). When looking to make an exception, a person in charge should consider three things: (1) what is the business benefit from making an exception?; (2) will others request an exception?; (3) how will others in similar circumstances react? *Id.* Greer's effort; well-written pitch; quality of his work; and background story should have amounted to an exception being made or at least convincing the managers to talk to Swift about it. The rule proves an exception that established artists can work with Taylor such as John Mayer and Ed Sheeran.

23.     There are two claims that arose out of the agents' conduct and thus resulted in harm to Greer that Swift should be held liable for:

## NEGLIGENCE

24.     Negligence consists of (1) a reasonable duty of care owed by defendant to plaintiff (2) the duty is breached (3) causation of injuries sustained from that breach (4) damages suffered by plaintiff. *William v. Melby* 699 P. 2d 723 (Utah 1985). To find if defendant is negligent, it

J033

"depends upon the circumstances of that case and on the extent of foreseeable danger involved." *DCR v. Peak Alarm Co.,* Utah, 663 P. 2d 433, 435 (1983). As established in earlier paragraphs, it was completely negligent of her agents to not take into factor Greer's uniqueness or how he wrote a song ABOUT her as a flattery song. If nothing else, if his works couldn't be accepted, the song about her should have been accepted at the very least to reward his hard work. Schaudies seemed to have forgot that people are willing to do anything to meet Swift since she is a public figure which is defined as: "The public recognizes [her] and follows [her] words and deeds, either because it regards [her] ideas, conduct, or judgment as worthy of its attention or because [she] actively pursues that consideration." *Waldbaum v. Fairchild Publications, Inc.* 627 F. 2d 1287 (Court of Appeals, Dist. of Columbia Circuit 1980). Schaudies took time to call Greer. While he was calling Greer, he could have decided that he would just message Swift about Greer because Schaudies was under no obligation to call Greer. It showed time and effort to pick up a phone and leave a minute long message on Greer's phone. It is assumed that Schaudies called Greer to be kind because he saw Greer's determination. In that time, he could have decided to just tell Swift about it. Greer has seen videos on YouTube where Swift gives shoutouts to fans so she is told about fans' admirations all of the time. He feels that they purposely did not tell Swift about him and thus has caused harm to Greer.

25.     Due to lack of information on procedures of Swift's management, it is assumed that Swift owes some liability for negligence for not laying out exceptions since there seemed to be no exceptions that the agents would follow, though, Greer believes in the spirit of the law and feels one should make exceptions based upon the circumstances. Given their status, "celebrities have *moral expectations*" of how they "should and ought" to treat exceptions. *Ethics for Nurses: Theory and Practice.* Open University Press. Cranmer & Nhemachena (2013). Since she knows

she is highly sought after, there should be caveats put into place to allow extraordinary feats created to get her attention. But it would be untrue to say that there are no exceptions ever taken by Swift. Swift allowed an exception to go to a wedding and sing; to go to prom with high school kids; exceptions to Skype with fans for New Years; to allow paper cranes to be delivered to her mom when her mom was going through cancer treatments. There was negligence from both Swift's lack of direction to her managers and negligence on how the managers handled the correspondence.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

26. Arguing whose responsibility it was to allow exceptions or to make sound judgement is a moot point. The point is: reckless infliction of emotional distress was inflicted on Greer. IIED has four elements that must be proven in Utah courts: (i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended . . . generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress. *Prince v. Bear River Mut. Ins. Co.* (Utah 2002). Any reasonable person would argue that the total disregard to Greer's efforts and background story would offend general accepted community practices. It is usually held that one's works should create exceptions and allow them to go places. Such exceptions have been seen in the entertainment industry e.g. Disney has a "No Felon" policy, but exceptions were made to allow the talents of Tim Allen and Robert Downey Jr to work with them. Just because one has an agent and thus makes a submission allowable, it does not mean a person has talent. Most Hollywood elite can produce one to a few good projects, which is how they get an agent, before they become stale and duds and somehow retain their agents. (Greer

**J035**

feels as a sidenote that rules should be implemented by agencies to drop their talents once they produce so many duds whether it be failing to chart in the Top Ten at the Box Office or in the Top 100 on Billboard. Doing that would create a fair submission process into the industry as agencies would always be looking since they would be dropping clients left and right). Therefore, exceptions should be determined on a case by case basis i.e the quality of the submission; how well the pitch is written; inspiring background stories of the person submitting.

27. What is the most disturbing about this case is that Greer gave his all; he made a song ABOUT Taylor to get her attention and went the correct route of pitching to Swift with hoping his story and works would give him leverage, but the agents were so strict and closeminded that they completely disregarded his feelings and his work he produced about Taylor. In the news recently, singer Demi Lavato commented on a fan's drawing of her. Other celebrities receive fan made works all of the time. Therefore, why couldn't Taylor notice a piece of fan work made about her? If it was on social media, Taylor would probably have a hard time seeing it since she has a lot of followers. But since Greer went the correct route and even communicated with her managers, there is no reason she couldn't have seen it. It is quite unnerving.

28. Greer has suffered severe anxiety, depression, weight gain, restlessness, insomnia, self-esteem issues, feelings of ugliness, feelings of hopelessness, feelings of ending his life. He has anxiety attacks every time Taylor appears on the news or her name trends on social media. He has flashbacks of giving his all to his person of interest when he sees other people in the news who are able to meet their celebrity idols and he feels hopeless because he knows he gave his all. Greer also has a disability and is made fun of daily. He wanted somebody he admired to accept him and help him.

### EGGSHELL SKULL PLAINTIFF

29. While this distress may seem minor to some, Greer is an "eggshell skull plaintiff" and therefore any injuries inflicted upon him are aggravated by pre-existing ailments e.g. depression, anxiety, and a disability. *Lancaster v. Norfolk and Western Railway Company* (1985). Swift's defenses are futile as she is required to take the plaintiff as she finds him, as are her agents. *Id.* The "eggshell skull rule always prevails" in tort cases. *Avita v. Metropolitan Club of Chicago Inc.* (7th Circuit of United States Court of App. 1995).

### **PRAYER FOR RELIEF**

30. With all of the facts stated with supporting case law, it is hoped that Plaintiff can recover the amount asked for in damages to set an example to 13 Management to create laid out exceptions if they cannot follow the spirit of the law. He also seeks recovery so he can recover monetary loss for producing the song about Taylor Swift.