Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF NEVADA

| | |
|---|---|
| **RUSSELL G. GREER,** an individual | **PLAINTIFF'S OPPOSITION MOTION IN RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| Plaintiff | |
| v. | Case No.: 2:21-cv-01905 |
| **FREMANTLE PRODUCTIONS,** a corporation, **ET AL.** | |
| Defendant | Judge Richard F. Boulware, II |
| | Magistrate Judge Nancy J. Koppe |

1

## INTRODUCTION

Plaintiff Russell Greer writes this response in opposition to Defendants' Motion to Compel. Not only do Defendants attempt to hurtfully portray Greer in a false light with many things that Greer has suffered severe depression and regret with, but their arguments fail as a matter of law in trying to force arbitration. Greer will go through and offer his rebuttal to specific arguments Defendants bring up.

## PRIOR CASES IRRELEVANT

In their opening first few pages, Defendants try to portray Greer as misusing the justice system to "harass famous women" and that it's "well-documented." First and foremost, those cases are irrelevant. Federal Rules of Evidence 404(b) prohibits evidences of crimes or acts unless it can be shown to align with one's  motive and opportunity.

Those prior lawsuits are irrelevant because they did not involve the Americans with Disabilities statute and Greer hasn't sued other production companies. *Barbee v. Se. Pa. Transp. Auth.*, 323 Fed. Appx. 159 (3d Cir. 2009) (allowing plaintiff's prior history of lawsuits as evidence to attack his credibility). Here: there is no credibility to attack. This is the first time Greer has sued for injunctive relief to go onto a reality show.

While Greer did write a song about Heidi Klum, a judge on the show, and was wanting to play it for her, she is not a defendant to this case nor does he have any plans on suing her or anybody else. He also was not planning on getting her attention with this lawsuit, but was hoping to go on the show and not have this lawsuit mentioned when he goes on the show. To put it into perspective: had Greer written a song about a male judge on the show, like Simon Cowell, and Defendants overlooked his accommodation efforts and failed to make a modification to their policies in accordance with the ADA, Greer would still have sued Defendants. Greer wanted to write a song about a show judge because per the AGT rules: they look for unique acts. Writing a

song about a show judge is pretty darn unique. Klum never saw the song, so Defendants can't say she wouldn't have liked it.

To say this case is among a line of cases about trying to get the attention of famous females is being very deceptive and is distracting from the arguments of the case. As the SAC argues, this case is about a disabled man investing in accommodations to compete for goods and privileges being offered by a public accommodation, being denied said privileges and being denied a modification that Greer is entitled to under the ADA.

## OMITTED INFORMATION

Besides relevance, Defendants omit important aspects of those cases. Since those cases are being used against him, he may as well defend himself. *Abraham* was a case that Greer dismissed personally because he realized how dumb it was. *Swift* was more of a publicity stunt gone wrong, that ended up attracting internet trolls and unwanted infamy and inaccurate news coverage. **EXHIBIT A.** The second and third  *Swift* cases was arguing that celebrities should be careful with their words to avoid the damages Greer suffered. The second Swift case was dismissed because he couldn't locate Swift for service. The third Swift case, again, couldn't find her for service. *Grande* was a case where Greer paid 1k dollars to meet and greet Ariana Grande at her concert. She discriminated against him, she wouldn't apologize and he argued discrimination under Utah disability statute. **EXHIBIT B.** Despite Defendants' contentions, Greer's family stands behind him with the *Grande* case and they agree what she did to him was not OK.

Defendants fail to mention that *Grande and Swift 1* were filed in Salt Lake City Justice Court, in small claims, and so they were mainly dismissed for lack of jurisdiction. Had they been filed in state or federal courts, the outcome might have been different.

Lastly, Defendants bring up *Walters,* a case involving a sex worker in a Nevada brothel in a Reno justice court. Again, they ignore the fact that the brothel owner, the late Dennis Hof, wrote

a letter and signed it, affirming that said sex worker stole 4K dollars from Greer. In the letter, Hof states: "Mr. Hof feels Keira [the sex worker] took full advantage of Russell and ripped him off from the start. Mr. Hof felt that she had been conning him all along and only wanted his monies." **EXHIBIT C.** That case was dismissed because Greer didn't subpoena Hof and the judge wouldn't accept the letter because it wasn't notorized and so without the notary or Hof to testify, it was Greer's word vs. Walters.

## TIME OF THOSE PAST CASES

Another fact Defendants fail to bring up is that many of those cases were from many years ago. *Walters:* 7 years ago. *Abraham:* 6. *Swift I:* 6. *Grande:* 5. Certainly, a certain lapse of time has to show a change in Plaintiff, as he hasn't sued any other celebrities. This current case is the only case filed in the District of Nevada. Defendants' counsel are only lawyers — not mind readers. They don't know that Greer is actually embarrassed by some of those past cases because they reflect poorly on serious cases like the current case. Believe it or not: people can feel remorse for poorly strategic actions from the past. Our society lives in a cancel culture world where any misunderstood or supposedly bad thing a person does should be an automatic death sentence. Greer knows in his heart he is a genuinely good person.

Others, Greer doesn't feel remorse for. He shouldn't be swindled out of 4K dollars from a legal sex worker. He shouldn't have to pay 1k dollars to meet a pop star who was rather cruel to him and said meeting still gives him nightmares.

The restraining orders Defendants bring up have expired and aren't relevant. Again, more misunderstandings that Plaintiff reserves the right to not delve into.

## BAD SOURCES

Lastly, Defendants say how well-documented these cases are, but again leave out the fact that many sites that have these cases are notorious hate sites. Defendants interestingly left out a 10th Circuit case that Greer is currently in: Greer v. Moon. Greer is being represented by the Digital

4

Justice Foundation in that appeal because they feel so extremely sorry for the hate Greer has had to deal with. Defendants also leave out the fact that Greer wrote and published a book called, "Why I Sued Taylor Swift." **EXHIBIT D.** In the book, he explains the Swift, Grande and Walters cases. The book has bad reviews because Moon's users have inundated Greer's works with hate, hence the lawsuit against Moon and Moon's site. But Greer hasn't hidden these cases. He has been open and has tried explaining the cases. However, they have no relevance to the current case.

Again, more misunderstandings that Defendants didn't tell this Court and that Plaintiff isn't going to waste time arguing about. See Federal Rules of Civil Procedure 403, which is another reason to deny Defendants' Judicial Notice because it confuses the important issues at hand and is just wasting time.

Now onto the meat of the matter.

## GREER DIDN'T KNOWINGLY OR VOLUNTARILY WAIVE HIS ADA STATUTORY RIGHTS

The most important fact and rebuttal that Greer has to offer is that he did not knowingly or voluntarily waive his ADA statutory rights. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Plainly, Greer did not agree to submit to arbitration his ADA statutory rights.

## THE ARBITRATION AGREEMENT

At 3 pages long, the Release and Arbitration Agreement is jumbled, has no paragraph headings and reads like an unpaid intern put it together. While not terrible to read, the JAMS arbitration clause is in giant capital letters, making it hard to read. Greer had to use a document reader to ensure he wasn't overlooking any words and in that reader, he typed in "ADA", "disability", "federal", "statute", "statutory" and "civil" and these were his results:

"ADA" had zero results.

"Disability" had zero results.

"Federal" only showed results for federal offenses for misuse of Producer material.

"Statute" nothing that pertains to the ADA or civil rights statute.

"Statutory" no results.

"Civil" nothing about civil rights.

With nothing in the agreement pertaining to the ADA or any civil rights statutes, how can it be said that Greer knowingly waived his statutory rights? Controlling law on this Court dictates that an arbitration agreement must state the statute being waived explicitly. Simply saying "any controversy or claim" is not enough.

## CONTROLLING LAW

### U.S. SUPREME COURT

Even with broad, all-encompassing arbitration agreements like Defendants', an agreement to arbitrate statutory anti-discrimination claims "must be explicitly stated. More succinctly, the waiver must be clear and unmistakable." *Metro Design v. National Labor Relations,* 460 U.S. 693 (1983). The U.S. Supreme Court maintained this view again in *Wright.* The agreement at issue in *Wright* contained a "very general" arbitration clause, which stated that "[m]atters under dispute" were subject to arbitration. *Wright v. Universal Mar. Serv. Corp.,* 525 U.S. 70, 119 S. Ct. 391 (1998). Another clause in the agreement provided that the "Agreement [was] intended to cover all matters affecting wages, hours, and other terms and conditions of employment." Id. at 81. As the agreement "contain[ed] no explicit incorporation of statutory anti-discrimination requirements" and did not "mak[e] compliance with the ADA a contractual commitment . . . subject to the arbitration clause," the Supreme Court held that the agreement did not contain a "clear and unmistakable" waiver of the employee's right to litigate his ADA claim. Id. at 80-82.

### 9th CIRCUIT

The 9th Circuit has been very firm that if an arbitration agreement does not mention a specific statutory right waiver, the Plaintiff couldn't have knowingly waived it. In *Nelson*, the 9th Circuit held that the choice to arbitrate an ADA claim must be explicitly presented and the person signing the agreement must explicitly agree to waive the specific right in question. *Nelson v. Cyprus Bagdad Copper Corp*., 119 F.3d 756 (9th Cir. 1997). On the other hand, in <u>Ashbey</u>, the court found that an employee had agreed to arbitrate where he acknowledged receipt of a dispute resolution policy that stated unambiguously that the policy applied "to disputes arising out of the employment relationship . . . including, without limitation, disputes over . . . harassment and claims arising under . . . Civil Rights Acts of 1964." <u>Ashbey</u>, 785 F.3d at 1325-26. The <u>Ashbey</u> court distinguished <u>Nelson</u>, noting that "[a]nyone who reviewed the Dispute Resolution Policy would immediately realize he was entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute." <u>Id.</u> at 1325.

    This is not to say that a person can never arbitrate their statutory rights. They can. But said rights must be explicitly stated in the arbitration agreement. Contrast this present case with one of the cases Defendants cited: *Larson.* In *Larson*, the agreement that the employee signed, explicitly stated: "covered disputes, claims and controversies include, but are not limited to, any and all disputes, claims and controversies . . . arising under . . . Title VII of the Civil Rights Act of 1964 . . . 42 U.S.C. § 1981 . . . [and] any other claims arising under Nevada State Law . . . regulating employment termination. . .". *Larson v. D. Westwood, Inc*., Case No. 2:15-cv-01372-RFB-GWF (D. Nev. Sep. 27, 2016). *Larson* stated the statutory rights the employee would be waiving.

    The fatal flaw with Defendants' agreement is that it does not state which specific statutory rights one will be waiving, nor does it make mention of any civil rights. It just says "any and all claims and controversies." Controlling law, as shown, has held that specific statutes that will be

waived, must "explicitly state" the statutes to be waived. See: *Wright:* "contain[ed] no explicit incorporation of statutory anti-discrimination requirement."

## DELEGATION CLAUSE UNCONSCIONABLE

If for some reason the Court finds that Greer knowingly and voluntarily waived his ADA claims, the delegation clause delegating the agreement to an arbitrator is unconscionable: both procedurally and substantively. As stated in his SAC, Greer reserved his right to explain why the delegation clause is unconscionable.

The Court in *Rent-A-Center* held that "unless [plaintiff] challenge[s] the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." Id. at 72. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). The Supreme Court labeled this delegation provision a "gateway issue." *Id.*

Although the agreement in question has no labeled "delegation clause", it incorporates the rules of the American Arbitration Association (AAA and JAMS). Because the AAA rules give arbitrators authority to decide their own jurisdiction, their incorporation in the contract amounts to a delegation clause.

Procedural unconscionability refers to a party's unequal bargaining power and misunderstanding of the provision's effects. Substantive unconscionability focuses on whether an agreement's terms are one-sided or bilateral. *D.R. Horton v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (quoting Burch v. Dist. Ct., 49 P.3d647, 650 (Nev. 2002)

## SUBSTANTIVELY UNCONSCIONABLE

### Contract of Adhesion

First off, the delegation clause is substantively unconscionable because it put Plaintiff in a take it-or-leave it position. Despite the protests from Defendants that adhesion contracts only apply to goods, contestants are not employees, which employees have been traditionally barred

from raising adhesion contract arguments. Contestants are not employees and thus are not owed common employer-employee duties. *Surviving Reality TV: the Ultimate Challenge for Reality Show Contestants.* Loyola of Los Angeles Entertainment Law Review. (2010). Logically, since contestants are not employees, they should not be barred from using an adhesion contract defense.

Further, at least one other reality show case has held that the contestants discriminated against were competing for goods. "Goods, services, facilities, privileges, advantages, or accommodations to which Title III ensures access should not be treated as free-standing concepts, but rather all refer to the statutory term `public accommodation' and thus to what these places of public accommodation provide." *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002).

With it established that Greer was competing for the goods Defendants were offering, he was put into a take it or leave it position because as a disabled performer, opportunities are rare, which is established in Greer's SAC. America's Got Talent has the market for talent shows or shows where a group can audition. Greer was desperate and starving for his chance to be on television in the hopes to jump start his entertainment career. Several cases have agreed with the desperate analysis.

In *Powertel*, the court found that the consumers had a lack of meaningful choice where they could only avoid the arbitration clause if they canceled their telephone service with the defendant and signed up with a new provider. *Powertel, Inc. v. Bexley,* 743 So. 2d 570, 572 (Fla. Dist. Ct. App. 1999).

### Lacks Mutuality

The arbitration agreement is also unconscionable because it lacks mutuality. For instance, the agreement allows Producers to seek injunctive relief, but Plaintiff must give up his injunctive relief.  "An arbitration provision lacks mutuality and is substantively unconscionable when it

authorizes the stronger party to obtain injunctive relief without establishing all of the essential elements for the issuance of an injunction." (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 250. Establishing substantive unconscionability when agreement is one-sided, even if it's not "overwhelming". *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 96 P.3d 1159 (Nev. 2004). Without injunctive relief, Plaintiff would not be able to go on the show any other way. As stated earlier in this motion, Plaintiff didn't knowingly waive his ADA statutory rights or the injunctive relief that comes with it.

## PROCEDURALLY UNCONSCIONABLE

"Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton*, 96 P.3d at 1162. As stated with the voluntary and knowingly claim made earlier, the agreement didn't inform Greer that he would be waiving his ADA statutory rights. Failing to inform Greer of which rights he would be waiving, he now suffers the consequence of not being able to use injunctive rights. He was not told he would be forgoing his ADA rights. Contrast this case with *Echevarria-Hernandez,* where the Plaintiff was put on notice of which rights she would be waiving and thus couldn't argue procedural unconscionableness. *Echevarria-Hernandez v. Affinitylifestyles.com* (D. Nevada 2017).

## SLIDING SCALE

While procedural and substantive unconscionability must be present in a case, they need not be present to the same degree. *Higgins v. Superior Court* - 140 Cal. App. 4th 1238, 45 Cal. Rptr. 3d 293 (2006). A sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa. *Id.*

Although Plaintiff has shown how the delegation clause is both procedurally and substantively unconscionable, the Court is free to use a sliding scale to determine which element is more present. *DR Horton* has already established that elements of unconscionability don't need to be "overwhelming". They just need to be present.

## <u>CONCLUSION</u>

With it established that the personal attacks on Greer were not relevant, that Greer didn't knowingly or voluntarily waive his ADA rights, and the delegation clause is substantively and procedurally unconscionable, the Court should deny Defendants' Motion to Compel Arbitration.

Respectfully submitted,

DATED: February 6th, 2022

By:

Russell Greer

Pro Se Litigant

/rgreer



**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing OPPOSITION RESPONSE TO

MOTION TO COMPEL with the Clerk of the Court by using email.

I certify that the following participants in this case are registered electronic filing systems users

and will be served electronically.

Served are:

Joel Schwarz: joel@h1lawgroup.com

Molly Lens: mlens@omm.com

Zachary Dekel: zdekel@omm.com

Counsel for Fremantle and Marathon.

**EXHIBIT A**

 

# Utah man sues Taylor Swift after her agents 'stonewall' his efforts to make music with her

By Kaileen Gaul For Mailonline
10:18 08 Dec 2016, updated 18:48 08 Dec 2016



 Share    

**EXHIBIT B**



**<u>EXHIBIT C</u>**

To Whom it May Concern:
Date:  March 28th 2015
Re:  Russell Greer court case April 7th 2014

Russell Greer had put down $4,000 booking deposit with Murphy
Walters aka Keira Keeper for an appointment date on Nov. 9th 2014.
Greer had traveled several hours per train to reach his destination of
the BunnyRanch on Nov. 9th 2014.   He had had this planned for
several months and was talking and emailing back and forth with her
during that time.   This obviously was a huge deal for this gentleman.
Mr. Hof had talked to Keira many times to make sure this party had
included sex, in which she acknowledged.  She knew from the start
that there was going to be sex involved with Russell's date.  We
picked him up at the train station with Keira in the limo with him.  We
brought them both back to the ranch and made the payment.  Keira
did not explain to Russell that the date had started as soon as he got
in the limo and the clock was ticking.  In just a short time When Keira
announced to Russell time was up, Russell was very hurt and
complained right away.  He had thought that they were going to have
sexual relations because he knew that the BunnyRanch was a house
of legalized prostitution. Keira had told him that she did not want to
have sex with him. Mr. HOf feels Keira took full advantage of Russell
and ripped him off from the start.  He feels Russell should be
compensated for the funds that were given to Keira.  Mr. Hof felt that
she had been conning him all along and just strung him in to get his
monies.
Mr. Hof felt that this was not right and cut her monies in half to a
$2,000 booking and gave the balance to 3 other ladies in the house to
fillful his wish.

Dennis Hof