Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

---

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF NEVADA

---

| | |
|---|---|
| **RUSSELL G. GREER,** an individual | **DECLARATION OF RUSSELL GREER** |
| Plaintiff | Case No.: 2:21-cv-01905 |
| v. | |
| **FREMANTLE PRODUCTIONS,** a corporation, **ET AL.** | Judge Richard F. Boulware, II |
| Defendant | Magistrate Judge Nancy J. Koppe |

1

I, Russell Greer, declare as follows.

1. I am 30 years old and am employed. I have a paralegal degree and am of a reasonable and healthy mind.

2. I live in Las Vegas, Nevada

3. I am the Plaintiff in the above captioned case.

4. I declare that on January 6th, 2022, I indeed had a phone call with Molly Lens, lawyer for Fremantle and Marathon.

5. I declare that Ms. Lens was hostile to me over the phone and laughed at me for telling her my sincere plight and laughed at me for telling her case law of judges within the 9th Circuit finding that reality tv show releases have not absolutely barred a Plaintiff's claims. For instance, *Dieu v. McGraw (Cal Crt of Appeals 2011)*.

6. I declare that I was nervous, flustered and honestly surprised over the phone at how a lawyer was laughing at me.

7. I declare that I told Ms. Lens I did not agree to arbitrate. I did not knowingly waive my ADA rights.

8. I declare that I asked for us to settle the case by letting me go on America's Got Talent.

9. However, as the phone call was seemingly going no where, I admittedly **MISSPOKE** by saying if Fremantle paid for my arbitration, I would do that.

10. I declare that I said that to get Ms. Lens off the phone.

11. I declare that I said that to end a hostile phone conversation. I was placating her.

12. I declare that I was using puffery and I misrepresented my intent, as I had no intention of arbitrating. And I figured Fremantle wouldn't want to pay for arbitration for me, since they were showing this much resistance to letting me go on the show. It was a bad attempt at reverse psychology. I should have not said anything at all and just maintained no arbitration, instead of trying to placate Fremantle.

13. I declare that after the phone call, I sent Ms. Lens an email entitled, "Question for your clients to ponder."

14. In it, I talked about sending her the second amended complaint. **EXHIBIT A.**.

15. But I also asked her: why drag this out? I was wanting us to dismiss the case and let me go on the show.

16. I then explained to her two different possible scenarios that would cost money.

17. Arbitration, like she wanted, would cost Fremantle money. I used the words, "scenario 1: I accept arbitration." I did not mean that I literally accept arbitration. I was saying that as the first scenario IF I ACCEPTED. It could have been worded better, sure.

18. If I continued the lawsuit, Scenario 2, would cost us money. In it, I said: "scenario 2: I continue the lawsuit."

19. So any reasonable person who is HONEST could easily read that as me laying out different scenarios. Scenario 1. Accepting arbitration would be costly. Scenario 2 is also costly. That was simply what I was saying.

20. I asked for us to settle the case and let me go on the show, not arbitration.

21. I declare that Ms. Lens is either lying or misrepresenting my views because no where in that January 6th email do I affirm doing arbitration. Laying out different scenarios is not agreeing to anything. I shouldn't need to add large disclaimers for a lawyer to understand I'm speaking hypothetically by laying out scenarios. I used the words "scenario 1" and used a colon to set up the hypothetical scenario.

22. Any college educated person could easily understand that I was speaking hypothetically and not literally agreeing to anything. I was showing her how arbitration and continuing the lawsuit are both expensive as compared to letting me go on the show.

23. I then said I would send her the amended complaint ASAP. I no where in the supposedly "smoking gun email" say anything about dismissing the case and doing arbitration.

24. On Monday January 10th, Ms. Lens emailed me a proposed stipulation to do arbitration.
**EXHIBIT B.** In that email, Ms. Lens states: "Please confirm that we have your approval."

25. I declare that I never approved.

26. In fact, I sent Ms. Lens a reply on 01-11-22 and told her that I "admittedly misspoke" when I said I would accept arbitration on the phone and that it was a "slip of the tongue." **EXHIBIT C.**

27. I then reaffirmed in the email, "I never purposely waived my civil rights." I told her that Arbitration cannot give me what I'm after: to use my ADA remedies.

28. I then said, I'm sorry, I will not be agreeing to dismiss the case to arbitrate.

29. Ms. Lens  replied and disagreed with my slip of the tongue assertion and  claims that I somehow "reconfirmed" arbitration when I sent her the scenarios email.

30. Again, as shown, Ms. Lens has either purposely twisted my email or misunderstood what I was saying. Laying out different scenarios is not agreeing to do anything.

31. I affirm that I could have made the scenario email a bit more clear. But her thinking that I literally accepted arbitration in that scenario is DISHONEST AND UNPROFESSIONAL.

32. This is exactly why I wished I had an attorney representing me because I feel Lens has taken advantage of my pro se status and misconstrued a clearly worded email as something that it is not. But I can't afford an attorney.

33. If I had wrote, "scenario 3: I go on the show," would that mean I go onto the show automatically? Of course not. So a plain reading would show that I was laying out scenarios and not literally accepting arbitration. I was trying to show her that it would be less expensive to let me on and is why I used the puffery tactic on the phone because I figured they wouldn't want to pay any money.

**34.** I replied, once again confirming I misspoke without thinking when I said what I said on the phone. **EXHIBIT D.**

**35.** I then said I agreed to delay her responding to the injunction. **EXHIBIT E.**

**36.** I then informed her I needed to file an amended injunction and to hold off on compelling arbitration. **EXHIBIT F.**

**37.** Ms. Lens then agreed to file a stipulation re time. **EXHIBIT G.**

**38.** I then replied that I agreed to stipulate time. I had to write out the words "stipulation re time" to confirm it was only that I was agreeing to and not arbitration. **EXHIBIT H.**

**39.** I then sent Ms. Lens and her associates an email at 2 AM trying to further establish why I said what I said on the phone. I told her reverse psychology, which is essentially puffery. I then for a third time, RECONFIRMED "I'm not doing arbitration at all because I simply didn't agree to it in good faith." I was doing my best to make sure Ms. Lens understood I DID NOT intentionally agree to arbitration. It should have been that simple to comprehend. **EXHIBIT I.**

**40.** That should have been the end of that, but on 01-19-22, Ms. Len's associate, Zach Dekel, emailed me and demanded that I comply with arbitration. And threatened me with attorneys fees. Ms. Lens had earlier threatened me in January with attorneys fees. **EXHIBIT J.**

**41.** I emailed Mr. Dekel back and said, "please stop threatening." **EXHIBIT K.**

**42.** I then further said I am not accepting arbitration because I didn't specifically agree to arbitrate my ADA rights.

**43.** Since Mr. Dekel and Ms. Lens were repeatedly threatening me, I puffed up my chest and made some threats of my own: by going to the news about this because it is telling that Fremantle claims to be for disabled people, but fights them to the bloody end. I was tired

of being pushed and bullied by Lens and Dekel. I referred to this as a game of chess because they were essentially playing a game with me by not respecting my words.

44. On 01-27-22, I told Ms. Lens that a process server served Marathon's agent. **EXHIBIT L.**

45. On 02-04-22, Fremantle and Marathon filed a Motion to Compel, a Judicial Notice and a Declaration.

46. In Ms. Len's declaration, UNDER PENALTY OF PERJURY, she declares that Russell Greer agreed to arbitrate.

47. I was upset upon reading her declaration because it simply was not true.

48. While I do not want to accuse Ms. Lens of committing perjury, I will say that she has misrepresented my views, in violation of ABA Rule 8.4(C ).

49. I decided to write this declaration of my own to show that in no where did I tell Ms. Lens I would agree to arbitrate, aside from the phone, which I once again declare I was using puffery and misrepresentation, and that I was trying to end a hostile phone call.

50. I further declare that the scenario email on 1-6-22 could easily be read by an average-minded person to mean what I meant it to mean: me laying out different hypotheticals.

51. This is further backed up by the emails contained within this declaration showing that I misspoke and I didn't mean what I said.

52. This is further backed up by me not signing their stipulation to arbitrate.

53. This is further backed up by asking Ms. Lens why she lied after she filed her declaration on 02-04-22. **EXHIBIT M.**

54. I emailed Ms. Lens after Fremantle filed their documents and I again confirmed I did not agree to arbitrate.

55. I do not appreciate her misrepresenting my words.

56. This declaration was filed to offer the true version of events.

**57.** I declare that everything said here in is the truth.

Respectfully

DATED:  February 6th, 2022

Respectfully submitted,

By:

Russell Greer
Pro Se Litigant
/rgreer

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing DECLARATION with the Clerk of the

Court by using email. I certify that the following participants in this case are registered electronic

filing systems users and will be served electronically. Served are:

Joel Schwarz: joel@h1lawgroup.com

Molly Lens: mlens@omm.com

Zachary Dekel: zdekel@omm.com

Counsel for Fremantle and Marathon.

**EXHIBIT A**



.ıll Verizon 🤍    6:10 AM    ⏷ 84% ▭)

**< Sent**    ⌃  ⌄

**RG**  **Russell Greer**    1/6/22
To: Molly M. Lens >

# Question for your clients to ponder

Molly,

Nice talking to you today. I will have the proposed amended complaint to you at the latest by tonight.

But the question I wanted to pose is: why drag this out?

What I'm asking for is not money. In fact, the two other scenarios facing

🗑    🗂    ↩    ✎





So not only is having me on the show the cheaper option, It's also pretty hard to argue unfairness and integrity of having me on, when in my motion, I showed that the producers are well-known to recruit acts who bypass the preliminary audition. That in itself is unfair and belies the unfairness argument.

Also, I do have controlling case law here in the 9th circuit of a blind law student getting to take the Bar exam longer than other students. Even when she failed, she sued again abs was once again given longer time to take it. Some might say that was unfair. but it was to

**EXHIBIT B**



all Verizon LTE          4:55 AM              100%

‹ Inbox          14 Messages          ⌃   ⌄

**ML**   **Molly M. Lens**          1/10/22
        To: Russell  Cc: Joel ›

# RE: Question for your clients to ponder

Russell –

Thanks for your email. As reflected below, during our call on Thursday, you proposed two alternatives: (1) you dismiss the complaint and commence arbitration, provided that Marathon agrees to pay your ½ of the arbitration costs; or (2) Marathon agrees to allow you to advance to the next round of the show, without any admission of liability. Marathon agrees to your first proposal – that is, in exchange for your dismissal of the complaint in federal court, Marathon will agree cover your ½ of JAMS'



arbitration fees (based on the representations in your in pro per application). Please understand that this is not an admission of liability. To the contrary, Marathon continues to strenuously deny your assertions. However, Marathon has accepted your proposal to avoid the time and expense of bringing a motion to compel arbitration. For the avoidance of doubt, Marathon does not agree to any other changes to the audition agreement.

To facilitate this process, I've prepared the attached short stipulation, which memorializes the parties' agreement. Please confirm that we have approval to sign on your behalf, and we can get this on file tomorrow, which will also avoid the need for you to amend your complaint and preliminary injunction motion.

All rights reserved

**EXHIBIT C**



**EXHIBIT D**



**EXHIBIT E**



**EXHIBIT F**



Anyways. I need to file an amended injunction because I need to remove the IIED claim, which my second amended complaint removes.

Can you hold off on compelling arbitration until I file the second amended complaint?

www.russellgreer.com

Sent from my iPhone

On Jan 11, 2022, at 4:01 PM,

**EXHIBIT G**



Russell –

Thank you for confirming your agreement that Fremantle need not respond to the motion for a preliminary injunction until after you've amended it. And, yes, Fremantle agrees not to move to compel arbitration until after the court decides whether to accept your further amended complaint. I've gone ahead and prepared the attached short stipulation, memorializing the parties' agreements. Can you please confirm we have approval to /s/ sign on your behalf? I'd like to get this on file today.

Otherwise, I'll call you tomorrow or Thursday to discuss the service issue, and I'd also like to continue our conversation about arbitration.

**EXHIBIT H**



**EXHIBIT I**



.ıll Verizon 🛜 ❄️     5:19 AM          95% 🔋

14 Messages

‹ Inbox   **Question for you...**   ⌃  ⌄

RG   From: **Russell Greer** ›
     To: **Molly M. Lens** ›
     Cc: **Russell Greer** ›
     **Joel Schwarz** ›
     January 12, 2022 at 2:52 AM

Additionally to me misspeaking about arbitration, I was also only saying that as reverse psychology. My thinking was that if I say only do it if they paid, Fremantle/Marathon wouldn't want to do arbitration because they wouldn't want to pay, thus closing all avenues of arbitration. So that was my mistake for saying that at all. I reaffirm that I'm not doing arbitration at all because I simply didn't agree to it in good faith.

🗑️        📁        ↩️        📝

**EXHIBIT J**



Sent from my iPhone

On Jan 19, 2022, at 7:02 PM, Dekel, Zachary L. <zdekel@omm.com> wrote:

Russell,

Thank you for your email.

As an initial matter, we ask again that you comply with your agreement to arbitrate this dispute. Should you continue to refuse to do so, we will have no choice but to move to compel arbitration and, in conjunction with our motion, reserve our right to seek our fees and costs in conjunction therewith, as the motion should not have been necessary. That said, should you proceed with your proposed Second

**EXHIBIT K**



.ıll Verizon 🛜 ☀️   5:26 AM   94% 🔋

‹ Sent

**Russell Greer**   1/19/22
To: Zachary   Cc: Molly ›

## Re: Proposed 2nd Amended Complaint

Zachary.

Please stop threatening me with arbitration and attorneys fees. You can thank your clients for having such a vague and confusing arbitration agreement. I am not accepting arbitration because I didn't specifically agree to arbitrate my civil rights claims. No where in that agreement did it mention me arbitrating my civil rights. *Nelson v.*



such a vague and confusing arbitration agreement. I am not accepting arbitration because I didn't specifically agree to arbitrate my civil rights claims. No where in that agreement did it mention me arbitrating my civil rights. *Nelson v. Cyprus Bagdad Copper Corp (9th Cir. 1997). A person signing the agreement* **must explicitly agree to waive the specific right** in question. That is controlling law in this circuit! Your clients further shot themselves in the foot by not having any way for a person to ask a question when signing the agreement, thus forcing them in a take it or leave it position.



Also, if they don't want to sign the stipulation, I have a few news reporters lined up who are interested in covering this. I know big orgs like Fremantle and Marathon hate bad publicity.

So I have the major pieces in this game of chess. Again, I ask that Marathon/Fremantle sign the stipulation and we resolve this quietly because I'm pretty hurt by my treatment by your clients and have done my best to keep this on the hush-hush.

Russell

**EXHIBIT L**



.ull Verizon 🛜                5:33 AM                🡭 92% 🔋

< Sent                                        ⌃    ⌄

**RG**  **Russell Greer**              1/27/22
       To: Russell & 3 more... >

# Re: Activity in Case 2:21-cv-01905-RFB-NJK Greer v. Fremantle Productions Summons Issued

Molly,

I have yet to file the proofs, but yesterday, a process server served the registered agent for Marathon. I have a Television show im trying to get on and thus do not have time to wait 60 days.

Best.

www.russellgreer.com

Sent from my iPhone

On Jan 25, 2022, at 11:10 AM, Russell Greer <russmark@gmail.com> wrote:

Hi, Molly

Please let me think about it and i will get back to you by Thursday.

**EXHIBIT M**





things.

With all due respect, why did you lie in your declaration? Where did I agree to arbitrate? How in the heck did you perceive me laying out different scenarios as me agreeing to arbitrate? YOU wanted me, under threat of attorneys fees, to arbitrate. So I was laying out different scenarios and was showing you how different scenarios would not benefit Fremantle, as arbitration was costly.

I told you the reverse psychology and the slip of the tongue to help explain why I said what I said over



costly.

I told you the reverse psychology and the slip of the tongue to help explain why I said what I said over the phone. Since I NEVER signed ANY agreement, my words were exactly what I told you they were: misunderstanding. I even said in the email you think is smoking gun evidence that *what I said was a mistake and I shouldn't have said anything at all.*

So I will be documenting this for my reply motion so it can be perfectly clear that I do not appreciate you putting words in my mouth.