Russell Greer
PO BOX 46602
LAS VEGAS, NV 89114
801-895-3501
russellgreer30business@gmail.com
Pro Se Litigant

# IN THE UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF NEVADA

| | |
|---|---|
| **RUSSELL G. GREER,** an individual<br><br>    Plaintiff<br><br>v.<br><br>**FREMANTLE PRODUCTIONS,** a corporation, **ET AL.**<br><br>    Defendant | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Case No.: 2:21-cv-01905<br><br>Judge Richard F. Boulware, II<br><br>Magistrate Judge Nancy J. Koppe |

1

## INTRODUCTION

Plaintiff came across additional authority and information he failed to bring up in his Opposition Response, filed on 02-06-22.

The additional information and authority will be laid out in the following points: (1) the 9th Circuit as of 2021 has still referred to the knowing standard as "good law", (2) the procedural unconscionability is expounded upon in more-depth and (3) the substantive unconscionability will be further elaborated upon.

### 1. THE KNOWING STANDARD IS STILL GOOD LAW

In *Zoller*, the Plaintiff signed an arbitration agreement and initially had the motion to compel defeated. Upon appeal, the 9th Circuit stated, "We assume, without deciding, that the knowing waiver requirement remains good law." The Court held, "We hold that this appeal is resolved on the arbitration agreement's clear language encompassing employment disputes and evidence that Zoller knowingly waived her right to a judicial forum to resolve her statutory claims." Zoller v. GCA Advisors, LLC, 993 F.3d 1198, 1201 (9th Cir. 2021). The evidence the court used to find that Zoller knowingly waived her judicial forum was that (1) she didn't sign some "vague form". *Id.* (2) She signed and accepted multiple documents, with one containing the FINRA Rule 2263 disclosure form ( https://www.finra.org/rules-guidance/rulebooks/finra-rules/2263, which did not prohibit arbitration of employment discrimination claims. Lastly, she had the opportunity to "consult with legal counsel of [her] choice before signing" both the contract and the employee confidentiality, non-solicitation and arbitration agreement.

One other district court in this district has cited *Zoller* since it was decided and the Court found that the Plaintiff knowingly signed away a judicial forum, in part, because the forms she signed "expressly stated that it covered employment-related disputes, including claims of harassment and discrimination under the Civil Rights Act of 1964." *Graham v. United Services Auto Association,* No. CV-20-02210-PHX-DWL. (D. AZ 2021). The form she signed stated,

2

"allegations of discrimination based on race. . . national origin. . . or other legally protected characteristic" and "legally prohibited retaliation."  *Id.* The *Graham* court stated that case's details easily distinguished from the Ninth Circuit decisions in which agreements to arbitrate Title VII (and other statutory) claims were deemed unknowing and unenforceable. See, e.g., Prudential Ins. Co. v. Lai, 42 F.3d 1299, 1301-05 (9th Cir. 1994) (knowing waiver requirement not satisfied because arbitration was never mentioned, the plaintiffs never received the document containing the arbitration provision, and the "provision did not even refer to employment disputes"); Nelson v. Cyprus Bagdad Copper Corp., 119 F.3d 756, 761 (9th Cir. 1997) (knowing waiver requirement not satisfied because "[n]othing in that acknowledgment [form] notified Nelson either that the Handbook contained an arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA"); Kummetz v. Tech Mold, Inc., 152 F.3d 1153, 1155 (9th Cir.1998)(knowing waiver requirement not satisfied because "[t]he Acknowledgement did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies").

## A.  **GREER'S CASE IS DISTINGUISHED WITH FACTS**

*Zoller* is distinguished from Greer's case facts because Greer did indeed sign a "vague form". "We held that Lai and Viernes could not have understood that signing the U4 form included an agreement to arbitrate discrimination actions because the form did not describe the types of actions subject to arbitration. We also observed that, even if Lai and Viernes had signed a contract containing the NASD arbitration clause, it would not have provided them with the requisite notice because the provision did not refer to employment disputes." *Zoller* citing *Prudential v. Lai,* 42 F. 3d 1299 (9th Circuit 1994). The same with Greer. Greer did not knowingly know it applied to discrimination claims because there was no explicit language saying so. Another paragraph of the Release cites 1542 of the California Code, but that had

3

nothing to do with ADA or disability claims. Even if agreeing to a release of all claims, several other Courts involving reality show cases have held that one cannot refuse to release intentional claims, only negligent claims: *Lundin v. Discovery Communications* (D. AZ 2018) and Dieu v. McGraw (Court of Appeals CA 2011).

Secondly, distinguishing from *Zoller,* the three page release/arbitration form was the only document Greer signed, and again, nothing in there points to discrimination claims being knowingly waived.

Third, distinguishing from *Zoller,* Greer had no access to attorneys. Greer couldn't afford to pay to consult an attorney. The Contract attorney Greer had write a letter to Fremantle was a lawyer with a contracting company called Letter Dash and they write demand letters for $400 dollars. The form Greer signed listed no contact info for a direct person at Marathon or Fremantle. It only listed an address. As shown in the Complaint, Greer could never reach anybody for reconsideration of his act, so how could he have reached anybody with a question about what the form entailed.

Lastly, Greer has testified in his Declaration that he didn't think ADA rights could be arbitrated, reaffirming his lack of knowledge in regards to if the arbitration form applied to discrimination. (Doc. 34, paragraph 7, paragraph 27, paragraph 42). He further said this in Doc 21 (he didn't think ADA statutes could be waived. He thought all claims applied to tort and contract statutes). This all shows that Greer lacked knowledge that signing that form would be waiving his discrimination claims to be litigated.

B. **THE KNOWING STANDARD HAS BEEN LONG FOLLOWED IN THE 9th Circuit**

Many cases within this circuit have long-held the knowing requirement and that waiver of a judicial forum be explicit in regards to discrimination because Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed

4

to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes." *Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1304 (9th Cir. 1994).

"Here, the paragraph concerning arbitration to which Gaines agreed refers to "any dispute between the undersigned and Mr. Formal, Inc., which may arise at any time concerning any matter." There is no mention of a waiver of a right to a jury trial. Thus, the clause does not meet Nelson's requirement that a waiver of the right to a judicial forum for civil rights claims be expressly presented and agreed to by the employee. The paragraph does not reference any of the statues under which Gaines brings her claims. No mention is made of any particular claims, including discrimination claims. As in Lai, the paragraph does not even state that it applies to employment disputes." *Gaines v. Mr. Formal,* Case No. 04-588-Kl.  (D. Oregon July 30th, 2004).

"Under these circumstances, it cannot be said that the parties agreed to submit discrimination claims to arbitration or that plaintiff knowingly waived her right to have her day in court. To conclude that there was waiver of such an important right, there must at least be evidence that the plaintiff intended such waiver." *Trumbull v. Century Marketing,* 12 F. Supp. 2d 683 (N.D. Ohio 1998) (citing *Nelson).*

"Similar to the too-general waiver in *Nelson,* here, the Employment Agreement and arbitration clause do not address waiver of Plaintiff's civil rights or at all mention Title VII or FEHA. Where nothing in the Employment Agreement put Berdechowski on notice that she had waived rights to bring civil rights claims, the Court finds that she did not knowingly waive those rights. Under these circumstances, the Court concludes that compelling arbitration is inappropriate. *See, e.g., Fallbrook Hosp. Corp. v. California Nurses Ass'n/Nat'l Nurses Org. Comm. (CNA/NNOC), AFL-CIO,* No. 1:13-CV-1233-GPC-WVG, 2014 WL 654607, at *3 (S.D. Cal. Feb. 19, 2014) (Curiel, J.) ("a knowing waiver does not occur where neither the arbitration clause nor any other written employment agreement expressly put the plaintiffs on notice that

they were bound to arbitrate [employment discrimination] claims.") *Berdechowski v. The Reach Group,* Case No. 1:16-CV-00177-LJO-JLT. (E.D. CA 2016).

### C. NONE OF THE CASES DEFENDANTS CITE HAD TO DO WITH VAGUE FORMS OR KNOWING REQUIREMENTS

All of the cases Defendants cite in their motion to compel have nothing to do with signing vague forms or the knowing standard. Each Plaintiff in the cases they cited all signed very clear and knowing waivers that put them on notice they were waiving civil right statutes. This was already established in Greer's Opposing Response.

### 2. RECENT NEVADA SUPREME COURT CASE BOLSTERS PROCEDURAL UNCONSCIONABILITY

As Greer was doing more research after filing the Opposition, he came across a Nevada Supreme Court case that mirrors his case in facts: *FQ Men's Club v. Jane Doe Dancers,* No. 79265 (Nevada 2020). The case helps him factually and legally because both cases involve performers who were rushed into signing an agreement. "Unconscionability involves mixed questions of law and fact." D.R. Horton Inc. v. Green, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004),

To help show procedural unconscionability, Greer relies on *FQ*. The club imposed on its dancers a "time restraint". This type of take it or leave approach is indicative of an unconscionable adhesion contract. *FQ* at 9. Similar to dancers in FQ, Greer and his performers couldn't enter the competition until they all signed the arbitration agreement. EXHIBIT A. They had to sign the forms before entering the audition and so they were all rushed. Like the dancers in FQ, they all had "to sign as quickly as possible to ensure they could begin earning money." *Id*. In Greer's case, sign as quickly as possible to audition and push through acts.

Even if Greer and his band mates had waited to talk with a producer during the Zoom session, that just wouldn't have been possible because it wasn't a private zoom session where it

6

was a one on one with the producer. It was an open Zoom call with hundreds of people watching, who were waiting to audition and each person was allotted a certain amount of time. It was hectic, needless to say. *FQ* follows this "hectic" holding. "The hostess agreed that the circumstances in which she presented the memorandum and GCPLA were "hectic"; the Men's Club debuted those documents over the New Years' holiday, where a large number of performers, employees, and customers were entering the building at the same time." *Id.* There were so many people watching and waiting, that talking about arbitration logistics wouldn't have been feasible.

In addition, it was one producer at the audition. The producer did not disclaim any legal qualifications or hold himself out as a lawyer, nor did he ask if anybody had questions about the arbitration agreement. And reiterating the above point: in an open zoom call, it was not the place to ask about arbitration forms. Regardless, Greer wouldn't have been able to audition if he didn't sign the form. "We nevertheless conclude that the district court's findings support a determination that the Dancers "lack[ed] a meaningful opportunity to agree to the" GCPLA "because of unequal bargaining power, *as in an adhesion contract.*" [D.R. Horton, 120 Nev. At 554, 96 P.3d at 1162](). *FQ* citing *DR Horton.*

As stated in Greer's Opposition Response, he didn't realize he would be arbitrating his disability claims. In fact, that is why Greer dropped his IIED claims because he knew at the very most that a claim and controversy would involve torts. Greer's limited knowledge with arbitration clauses did not help him decipher what the clause meant. Although he does have a paralegal degree, and he is a paralegal technically *by education,* he is not a *paralegal by occupation.* He does not work in a law firm or with any lawyers, so his limited knowledge would not have helped him understand what he was signing. Regardless, the clause does not explicitly state he would be taking discrimination claims to arbitration, so any average person would not know this. Just going through case law supports this explicit requirement. "No indication in this

7

case, however, that Gilmer, *an experienced businessman*, was coerced or defrauded into agreeing to the arbitration clause in his registration application." *Gilmer v. Interstate/Johnson,* 500 U.S. 20 (1991). Again, it is settled law in Nevada that if " the draftsmanship of a contract prevents a party from "readily ascertain[ing]" the contract and its effects, as the district court found here, then such a consideration properly supports a finding of procedural unconscionability. [D.R. Horton, 120 Nev. At 554, 96 P.3d at 1162](). *FQ* citing *DR*.

### 3. SUBSTANTIVELY UNCONSCIONABILITY EXPOUNDED UPON

Further, Greer offers additional arguments to bolster his substantive claims.

### LACK OF MUTUALITY

As stated in his Opposition Response, the agreement was unconscionable because it lacks mutuality. There is no modicum of bilaterality in the agreement, for Greer to give up his injunction rights. "Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing advantage. Arbitration was not intended for this purpose." *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1541.

So for the Defendants to say that arbitrating does not give up the substantive rights of the statute, it only gives up the forum, it is very misleading because the delegation clause clearly says that the contestant gives up his injunction rights. It states: "I AGREE THAT THE REMEDY FOR ANY CLAIM BROUGHT SHALL BE LIMITED TO AN ACTION FOR MONETARY DAMAGES AND IN NO EVENT SHALL I BE ENTITLED TO RECOVER PUNITIVE OR EXEMPLARY DAMAGES OR TO RESCIND THIS AGREEMENT OR SEEK INJUNCTIVE OR ANY OTHER EQUITABLE RELIEF."

With that clause, it renders Greer's ADA injunction rights useless and powerless. There is no caveat for discrimination statutes. Says simply: no injunctive relief. The arbitrator can only go off what is on the form. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)

8

(the arbitrator … is not free to ignore or abandon the plain language of the [parties' agreement]…an arbitrator exceeds his powers … when he reforms material terms of a contract so that the agreement conforms with his own sense of equity or justice.). Additionally, Greer can't seek money from the ADA because it doesn't allow private parties under Title III to collect damages and since Greer is not an attorney, he can't collect attorneys fees. Since he dismissed his IIED claim, he would have nothing to arbitrate.

The agreement does state that the Producer has rights to protect and that they justify that right to maintain their injunctive relief, but what about Greer's rights? Since Marathon and Fremantle are public accommodations and offering goods and services to the public, they fall within the Title III statute and Greer has a right under said statute to use injunctive relief when a public accommodation fails to make a modification to a practice or procedure or policy. *Johnson v. Hubbard Broadcasting*, Inc., 940 F. Supp. 1447, 1462 (D. Minn. 1996). (The district court noted that an agreement denying the full array of statutory remedies established under state and federal law might render the agreement unenforceable as unconscionable.).

As stated, many different courts have held that this lack of mutuality is unconscionable when the stronger power can use injunctive relief, but the person signing can't. *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 152 (Ct. App. 1997) (declining to compel arbitration where "the arbitration clause provides the employer more rights and greater remedies than would otherwise be available and concomitantly deprives employees of significant rights and remedies they would normally enjoy," and finding provision, which deprived employees of remedies such as punitive damages and equitable relief and which allowed employer to litigate certain claims, to be unconscionable). Contrast this case with: *Kuehner v. Dickinson & Co.,* 84 F.3d 316, 320 (9th Cir. 1996) (compelling arbitration of FLSA claim where arbitrator would have full power to award all remedies). Lozano v. AT & T, 216 F.Supp.2d 1071 (C.D.Cal.2002). (The court in Lozano held, inter alia, that an arbitration clause prohibiting class actions was not

9

substantively unconscionable, so long *as the clause allows the arbitrator to provide for declaratory and injunctive relief under state consumer statutes* and authorizes statutory damages on an individual basis.).

Lastly, even if the arbitrator would be allowed to issue injunctive relief, which the clause clearly bars an arbitrator from doing so and bars contestant from being injunctive claims, the relief Greer seeks is immediate. For example, certain types of claims do not lend themselves to arbitration, such as disputes about restrictive covenants and confidentiality agreements. These types of claims often require immediate injunctive relief from a court, which is not available via arbitration. *Arbitration v. Litigation.* Morgan, Lewis & Bockius Annual Seminar (2002). (https://www.morganlewis.com/~/media/files/publication/presentation/speech/0de2775e-ab40-4838-bef993c9bfebb02a_publication.ashx).

## CONTRACT OF ADHESION

Although Greer clearly addressed the adhesion claims, he wanted to clarify that the goods he was competing for was the one million dollar prize and the headliner show in Vegas. As *Rendon* stated, "goods" under the ADA shouldn't be treated as free-standing concepts, but rather focus on what the public accommodation provides. In this case, defendants were providing what he just described: a monetary prize and a show. Further, the contract was completely standardized and not personalized to Greer. He had to take it or leave it because he wouldn't be able to audition without signing. As stated in his Opposition Response, he was hungry and desperate to launch his entertainment career and for money and a show. "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain." *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe,* 996 P.2d 903, 907 (Nev. 2000).

Further, the limited availability of talent shows or reality shows Greer can audition on enforced this desperate signing of the arbitration agreement.

10

## **CONCLUSION**

In light of this additional information and additional authority, showing and expounding and strengthening Greer's arguments that were set forth in his Opposition Response to Defendants' Motion to Compel, Plaintiff respectfully reiterates his request that this Court deny Defendants' motion.

Respectfully submitted,

DATED: February 12th, 2022

By:

Russell Greer

Pro Se Litigant

/rgreer

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing SUPPLEMENTAL MEMORANDUM with the Clerk of the Court by using email.

I certify that the following participants in this case are registered electronic filing systems users and will be served electronically.

Served are:

Joel Schwarz: joel@h1lawgroup.com

Molly Lens: mlens@omm.com

Zachary Dekel: zdekel@omm.com

Counsel for Fremantle and Marathon.