**HONE LAW**
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone 702-608-3720
Fax    702-703-1063

**O'MELVENY & MYERS LLP**
Molly M. Lens, Esq.
mlens@omm.com
*(Pro Hac Vice Petition Pending)*
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Phone 310-246-8593

*Attorneys for Defendants Fremantle Productions North America, Inc. and Marathon Productions, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RUSSELL G. GREER, | Case No. 2:21-cv-01905-RFB-NJK |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| FREMANTLE PRODUCTIONS NORTH AMERICA, INC, a corporation and MARATHON PRODUCTIONS, INC, a corporation, | ***(Filed concurrently with Reply in Support of Request for Judicial Notice)*** |
| Defendants. | |

DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL ARGUMENT ......................................................................................... 2

    A.    An Arbitrator Should Decide the Scope, Applicability, and Enforceability of Greer's Arbitration Agreement. ................................................................. 2

    B.    Greer Waived His Right to Have a Court Decide his Purported ADA Claims. .......................................................................................................... 5

    C.    Greer's Agreement to Arbitrate is Not Unconscionable. ............................ 9

III.  CONCLUSION .................................................................................................. 12

DEFENDANT'S MOTION TO COMPEL ARBITRATION

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

5

*Augustine v. TLC Resorts Vacation Club, LLC,*
  2018 WL 3913923 (S.D. Cal. Aug. 16, 2018) ............................................................ 10

6

*Bank Leumi, USA v. Miramax Distrib. Servs., LLC,*
  2018 WL 7568361 (C.D. Cal. Dec. 27, 2018) .............................................................. 3

7

8

*Becker v. Keshmiri,*
  2020 WL 2733944 (D. Nev. May 26, 2020) ................................................................ 12

9

10

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,*
  622 F.3d 996 (9th Cir.2010) ........................................................................................ 4

11

*Cabot Creekside 8 LLC v. Cabot Inv. Props., LLC,*
  2011 WL 13223878 (C.D. Cal. Apr. 21, 2011) ............................................................ 3

12

13

*Cobb v. Aramark Sports & Ent. Servs., LLC,*
  933 F. Supp. 2d 1295 (D. Nev. 2013) .......................................................................... 9

14

15

*Cohn v. Ritz Transp., Inc.,*
  2014 WL 1577295 (D. Nev. Apr. 17, 2014) ............................................................... 11

16

*CompuCredit Corp. v. Greenwood,*
  565 U.S. 95 (2012) ....................................................................................................... 6

17

18

*Cox v. Station Casinos, LLC,*
  2014 WL 3747605 (D. Nev. June 25, 2014) ............................................................... 12

19

20

*Dylag v. W. Las Vegas Surgery Ctr., LLC,*
  719 F. App'x 568 (9th Cir. 2017) .......................................................................... 8, 12

21

*Edwards v. Verizon,*
  2015 WL 13654015 (C.D. Cal. Jan. 26, 2015) ............................................................ 8

22

23

*Gelbman v. Valleycrest Prod., Ltd.,*
  732 N.Y.S.2d 528 (N.Y. Sup. Ct. 2001) ...................................................................... 9

24

25

*Gibbs-Bolender v. CAG Acceptance, LLC,*
  2015 WL 685217 (D. Nev. Feb. 18, 2015) ............................................................... 4, 5

26

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991) ....................................................................................................... 6

27

28

- ii -

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Green v. New Penn Fin. LLC*,
  831 F. App'x 303 (9th Cir. 2020) ................................................................................. 1

*Harris v. Halliburton Co.*,
  2016 WL 3255074 (E.D. Cal. June 13, 2016) ............................................................... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S.Ct. 524 (2019) ..................................................................................................... 2

*Hurd v. Terhune*,
  8 F. App'x 676 (9th Cir. 2001) ...................................................................................... 1

*Kaufman v. Sony Pictures Television, Inc.*,
  2017 WL 3090256 (D. Mass. July 20, 2017) .............................................................. 11

*Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
  996 P.2d 903 (Nev. 2000) .............................................................................................. 9

*Ledwell v. Ravenel*,
  843 F. App'x 506 (4th Cir. 2021) ................................................................................ 12

*Mallia v. Drybar Holdings, LLC*,
  2020 WL 1250817 (D. Nev. Mar. 16, 2020) .................................................................. 8

*Marina v. Edward D. Jones & Co.*,
  2012 WL 3884305 (D. Nev. Sept. 6, 2012) ................................................................... 8

*Mendoza v. In-N-Out Burgers*,
  2020 WL 10442992 (D. Nev. Nov. 23, 2020) ............................................................... 1

*Metropolitan Edison Co. v. National Labor Relations*,
  460 U.S. 693 (1983) ....................................................................................................... 6

*Mohazzabi v. Wells Fargo, N.A.*,
  2019 WL 4675768 (D. Nev. Sept. 25, 2019) ............................................................... 10

*Nelson v. Cyprus Bagdad Copper Corp.*,
  119 F.3d 756 (9th Cir. 1997) ......................................................................................... 7

*Obstetrics & Gynecologists v. Pepper*,
  693 P.2d 1259 (Nev. 1985) .......................................................................................... 10

*Oliver v. First Century Bank, N.A.*,
  2018 WL 1426877 (S.D. Cal. Mar. 22, 2018) ............................................................... 5

*Raebel v. Tesla, Inc.*,
  451 F. Supp. 3d 1183 (D. Nev. 2020) ............................................................................ 9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rendon v. Valleycrest Prods., Ltd.*,
  294 F.3d 1279 (11th Cir. 2002) ................................................. 9

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ................................................................ 3, 4, 5

*Resnick v. Hyundai Motor Am., Inc.*,
  2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ........................... 1

*Ricci v. Beazer Home Holding Corp.*,
  2010 WL 11579685 (D. Nev. Feb. 12, 2010) ........................... 11

*Sheehan v. Sparks Black Bear, LLC*,
  2019 WL 591445 (D. Nev. Feb. 13, 2019) ............................... 8

*Slaughter v. Stewart Enters., Inc.*,
  2007 WL 2255221 (N.D. Cal. Aug. 3, 2007) ........................... 8

*State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
  199 P.3d 828 (Nev. 2009) ....................................................... 9

*Stichting Pensioenfonds APB v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................... 1

*Urena v. LA Fitness*,
  2021 WL 3209888 (E.D. Pa. July 29, 2021) ............................ 10

*Wright v. Universal Maritime Serv. Corp.*,
  525 U.S. 70 (1998) .................................................................. 7

*Zeevi v. Citibank, N.A.*,
  2021 WL 621423 (D. Nev. Feb. 16, 2021) ............................... 3, 4, 5

*Zoller v. GCA Advisors, LLC*,
  993 F.3d 1198 (9th Cir. 2021) ................................................. 7, 8, 12

**Other Authorities**

Rule 8, JAMS Streamlined Arbitration Rules & Procedures, available at
  https://www.jamsadr.com/rules-streamlined-arbitration/ ........... 2, 3

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION[1]**

3          Greer does not dispute that he signed an arbitration agreement with Marathon Productions.

4   Greer also does not dispute that Fremantle Productions is entitled to enforce his agreement to

5   arbitrate.  Accordingly, Marathon does not address these issues further.  *See, e.g.*, *Green v. New*

6   *Penn Fin. LLC*, 831 F. App'x 303, 305 (9th Cir. 2020) (affirming grant of summary judgment

7   because party failed to oppose dispositive argument raised in summary judgment motion); *Hurd v.*

8   *Terhune*, 8 F. App'x 676, 677 (9th Cir. 2001) (holding that pro se prisoner "waived . . . claim by

9   failing to delineate it specifically and explicitly in his opposition to defendant's motion for

10  summary judgment"); *Mendoza v. In-N-Out Burgers*, 2020 WL 10442992, at *3 (D. Nev. Nov. 23,

11  2020) (accepting argument made in motion because opposing party did not oppose it); *Stichting*

12  *Pensioenfonds APB v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)

13  (collecting cases that "failure to response in an opposition brief to an argument put forward in an

14  opening brief constitutes waiver or abandonment in regard to the uncontested issue"); *Resnick v.*

15  *Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose

16  an argument raised in a motion to dismiss constitutes waiver of that argument.").

17         Rather, in his opposition, Greer argues *only* that his agreement to arbitrate does not

18  encompass claims under the Americans with Disabilities Act ("ADA") (it does) and that the

19  arbitration agreement is unconscionable (it isn't).[2]  The Court need not—and should not—address

20  these issues because Greer agreed to arbitrate any gateway questions of arbitrability.  But, even if

21  the Court did consider Greer's arguments, each argument misstates the law of the Supreme Court,

22  the Ninth Circuit, and this Court.  Accordingly, Marathon respectfully submits that its Motion to

23  Compel Arbitration be granted and Greer's improper action be dismissed.

24

25  [1] All capitalized terms have the same definitions as set forth in Marathon's opening motion.

26  [2] Greer's opposition also attempts to explain his many prior lawsuits involving women celebrities.  For
    example, he describes one as "dumb" and admits that another "was more of a publicity stunt gone wrong."
27  *See* ECF No. 33 at 3.  Greer, however, *does not deny* that he filed the lawsuits, that five of them involved
    songs written for woman celebrities, all his prior lawsuits resulted in dismissals or judgments against him,
28  and that at least one resulted in a restraining order against Greer.  The relevant facts are thus not in dispute.

- 1 -

1    **II.**    LEGAL ARGUMENT

2

     **A.**     **An Arbitrator Should Decide the Scope, Applicability, and Enforceability of**

3          **Greer's Arbitration Agreement.**

4       Marathon's Motion explained that Greer's Audition Agreement requires that an

5 arbitrator—and not this Court—decide gateway questions of arbitrability for three independent

6 reasons: (1) it explicitly states that any disputes regarding the "scope or applicability" of the

7 arbitration clause will be decided by an arbitrator; (2) it incorporates the JAMS Streamlined

8 Arbitration Rules which grant the arbitrator exclusive jurisdiction to decide "disputes over the

9 formation, existence, validity, interpretation or scope of the agreement under which Arbitration is

10 sought"; and (3) it mandates that all disputes "arising out of or relating to" the agreement be

11 decided by an arbitrator.  ECF No. 31, Motion to Compel Arbitration ("Motion" or "Mot.") at 4-7.

12 However, the *only* arguments that Greer raises in his Opposition are gateway question of

13 arbitrability.  Thus, Greer's own Opposition confirms that Marathon's Motion should be granted.

14 *See Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S.Ct. 524, 528 (2019) ("When the

15 parties' contract delegates the arbitrability question to an arbitrator, the courts ***must*** respect the

16 parties' decision as embodied in the contract.").[3]

17       *First*, Greer argues that his agreement to arbitrate disputes arising out of or relating to his

18 Audition Agreement does not apply to any such disputes arising under the ADA.  ECF No. 33,

19 Opposition to Motion to Compel Arbitration ("Opposition" or "Opp.") at 5-8.  The Audition

20 Agreement, however, explicitly states that any disputes regarding the "scope or applicability" of

21 the arbitration clause will be decided by an arbitrator.  ECF No. 32, Request for Judicial Notice

22 ("RJN"), Ex. A at J003.  The JAMS Rules similarly require an arbitrator to decide "disputes over

23 the . . . interpretation or scope of the agreement under which Arbitration is sought."  *See* Rule 8(b),

24 JAMS Streamlined Arbitration Rules & Procedures ("JAMS Rule 8(b)"), available at

25 https://www.jamsadr.com/rules-streamlined-arbitration/.  Thus, Greer clearly and unmistakably

26 agreed that an arbitrator should decide whether his agreement to arbitrate encompasses claims

27

28 [3] All emphases added, and citations and quotations omitted, unless noted otherwise.

DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   under the ADA.  *See, e.g.*, *Bank Leumi, USA v. Miramax Distrib. Servs., LLC*, 2018 WL 7568361,

2   at *6 (C.D. Cal. Dec. 27, 2018) ("By requiring arbitration of disputes over the 'scope or

3   applicability' of arbitration, the parties clearly and unmistakably agreed to arbitrate the question of

4   whether and to what extent Plaintiff's claims are subject to arbitration."); *Cabot Creekside 8 LLC*

5   *v. Cabot Inv. Props.*, LLC, 2011 WL 13223878, at *14-15 (C.D. Cal. Apr. 21, 2011) (parties

6   clearly and unmistakably agreed that arbitrator would decide whether particular claims were

7   encompassed by arbitration clauses where they agreed that determinations regarding the "scope or

8   applicability" of the arbitration clause would be made by an arbitrator, not a court).[4]

9       *Second*, Greer argues that the delegation clause in his arbitration agreement is

10  unconscionable.[5]  Opp. at 8-11.  But once again the Audition Agreement expressly delegates this

11  question to an arbitrator.  In particular, the JAMS Rules provide that: "disputes over the . . .

12  validity . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled

13  on by the Arbitrator."  *See* JAMS Rule 8(b).  And the Audition Agreement similarly mandates that

14  all disputes "arising out of or relating to" the Audition Agreement—such as a dispute over the

15  enforceability of the Audition Agreement—be decided by an arbitrator.  RJN, Ex. A at J003; *see*

16  *also Zeevi v. Citibank, N.A.*, 2021 WL 621423, at *3 (D. Nev. Feb. 16, 2021) (compelling

17  arbitration on question of unconscionability where parties' arbitration agreement delegated "the

18  authority to decide the unconscionability of the arbitration agreement" to an arbitrator).

19      The Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)

20  confirms that Greer's claim of unconscionability must be arbitrated.  In *Rent-A-Center*, the

21  Supreme Court considered whether "a district court may decide a claim that an arbitration

22  agreement is unconscionable, where the agreement explicitly assigns that decision to the

23  arbitrator."  *Id.* at 65.  The Supreme Court held that, unless such a delegation clause itself is

24  challenged, the Court should defer ruling on the gateway questions to the arbitrator.  *Id.* at 70-71.

25  Critically, the Supreme Court continued to explain that is not enough for a party to simply state

26  _____

27  [4] As explained below, Greer's argument that ADA claims are not encompassed within the Arbitration Agreement's scope is manifestly wrong.

28  [5] By referring to the "delegation clause," Marathon assumes that Greer is referring to those portions of his Audition Agreement that delegate gateway questions of arbitrability to an arbitrator.

that they are challenging a delegation clause.  Rather, a party must raise arguments that uniquely apply to the delegation clause as opposed to the arbitration agreement as a whole.  *Id.* at 72 ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see also Gibbs-Bolender v. CAG Acceptance, LLC*, 2015 WL 685217, at *3 (D. Nev. Feb. 18, 2015) (noting that a court may only decide arbitrability questions "when a plaintiff argues that [a delegation] clause, standing alone, is unenforceable—***for reasons independent of any reasons the remainder of the contract might be invalid***") (citing *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010)).

The Supreme Court then applied this standard to the case before it.  There, the plaintiff argued that the delegation clause was purportedly unconscionable because, *inter alia*, the agreement was "one-sided" in that it only required arbitration of claims that he was likely to bring and not claims that his employer was likely to bring.  *Rent-A-Ctr., W., Inc.*, 561 U.S. at 73.  The Court held that this argument was not "specific to the delegation provision" because it applied to the agreement *as a whole.  Id.* at 73-74.

Similarly, in *Zeevi v. Citibank, N.A.*, the plaintiff claimed that the delegation clause in their arbitration agreement was unconscionable because, among other reasons, a "disparity in bargaining power [resulted] in a take-it-or-leave-it contract of adhesion."  2021 WL 621423, at *3.  The court held that this challenge was "more appropriately aimed at the unconscionability of the arbitration agreement as a whole, and thus [was] not specifically challenging the delegation clause" and compelled arbitration so that an arbitrator could decide if the agreement, including the delegation clause, was unconscionable.  *Id.*  By contrast, in *Gibbs-Bolender v. CAG Acceptance, LLC,* a court in this district considered a challenge to a delegation clause because it was "independent and severable" from any challenges to the arbitration agreement as a whole.  2015 WL 685217, at *4.  Specifically, the plaintiff argued that the delegation clause violated Nevada Revised Statutes section 97.165(1), which provides that "[e]very retail installment contract must be contained in a single document which must contain the entire agreement of the parties[.]"  *Id.* at *4-5.  Because the delegation clause was included in a separate document from the plaintiff's retail installment

- 4 -

1  contract, she argued that it was unenforceable and the court considered this argument because it

2  uniquely applied to the delegation clause.  *Id.* at *4.  But the court refused to consider other

3  challenges to the delegation clause that were not "independent and severable" from plaintiff's

4  challenges to the arbitration agreement as a whole.  *See id.* ("Unlike her challenge under the single

5  document rule, Gibbs–Bolender's unconscionability argument is directed at the arbitration

6  agreement as a whole and not specifically at the delegation provision. . . . As a result, whether the

7  arbitration agreement as a whole is unconscionable would be a question for the arbitrator, not the

8  court.")

9          Here, like the plaintiffs in *Rent-A-Center* and *Zeevi* (and unlike in *Gibbs-Bolender*),

10  Greer's challenge to the delegation clause in the Audition Agreement are not specific to the

11  delegation clause, but rather challenge the Audition Agreement as a whole.  Greer's claim that the

12  Audition Agreement is a "contract of adhesion" plainly applies to the agreement as a whole and is

13  in no way specific to the delegation clause.  *See Zeevi*, 2021 WL 621423, at *3 (claim that

14  arbitration agreement was a "contract of adhesion" did not "specifically challeng[e] the delegation

15  clause").  And Greer's claims that the arbitration provision lacks "mutuality" and that it did not

16  adequately notify him that it applies to ADA claims have nothing to do with the delegation clause,

17  but instead challenge the scope of Greer's agreement to arbitrate.  *See Rent-A-Center*, 561 U.S. at

18  73 (holding claim that arbitration provision was "one-sided" was not "specific to the delegation

19  provision"); *see also Oliver v. First Century Bank, N.A.,* 2018 WL 1426877, at *2 (S.D. Cal. Mar.

20  22, 2018) (finding that party did not specifically challenge delegation clause where they only made

21  "general grievances against the arbitration provision").

22          Because none of Greer's unconscionability arguments specifically challenge the delegation

23  clause in his Audition Agreement, the Court must preserve these arguments for an arbitrator—

24  precisely as Greer agreed.  *See Zeevi*, 2021 WL 621423, at *3 ("Accordingly, any threshold

25  questions, including unconscionability, fall within the authority of the arbitrator, and Defendant's

26  Motion to Compel Arbitration is granted.").

27          **B.      Greer Waived His Right to Have a Court Decide his Purported ADA Claims.**

28          "It is by now clear that statutory claims may be the subject of an arbitration agreement,

1    enforceable pursuant to the FAA."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26

2    (1991).  Here, as discussed in detail in Marathon's Motion, Greer agreed to arbitrate "***any***

3    controversy or claim arising out of or relating to [his Audition] Agreement."  Mot. at 8-9. Because

4    Greer's ADA claims assert that Marathon discriminated against him ***during his audition***, his

5    claims arise out of or relate to his Audition Agreement and Greer has agreed to arbitrate these

6    claims.  *Id.*  Nevertheless, in his Opposition, Greer claims that the Arbitration Agreement does not

7    apply to claims under the ADA because "controlling law" purportedly requires an arbitration

8    agreement to explicitly identify every statutory claim that is subject to arbitration.  Opp. at 5-8.

9    There is no such requirement and not a single case Greer cites supports this proposition.

10        Greer cites two categories of "controlling law" as support for his position.  *First*, he claims

11   that the U.S. Supreme Court has required that an agreement to arbitrate statutory anti-

12   discrimination claims "be explicitly stated."  Opp. at 6.  Not so.  To the contrary, the Supreme

13   Court has previously found that a party agreed to arbitrate statutory anti-discrimination claims

14   even where their arbitration agreement did not specifically reference those claims.  For example, in

15   *Gilmer v. Interstate/Johnson Lane Corporation*, the Court held that a party agreed to arbitrate

16   statutory anti-discrimination claims arising under the Age Discrimination in Employment Act

17   ("ADEA") where their arbitration agreement simply contained a general reference to "any dispute,

18   claim or controversy."  500 U.S. at 23.  Similarly, in *CompuCredit Corp. v. Greenwood*, the Court

19   required a plaintiff to arbitrate claims under the Credit Repair Organizations Act ("CROA") where

20   the arbitration agreement at issue only contained general reference to "[a]ny claim, dispute or

21   controversy" and did not reference the CROA specifically.  565 U.S. 95, 97, 104-05 (2012).

22        By contrast, the two Supreme Court decisions Greer cites in his Opposition both arose in

23   the union context and involved unique issues specific to collective bargaining agreements that are

24   inapplicable here.  One of the cases, *Metropolitan Edison Co. v. National Labor Relations Board*,

25   460 U.S. 693 (1983), did not even involve an arbitration agreement.  Rather, it concerned an

26   alleged waiver of a union's right to strike.  *Id.* at 710.  The other case, *Wright v. Universal*

27   *Maritime Service Corporation*, merely held that a union could not waive statutory rights to a

28   judicial forum *on behalf of its members* unless the waiver was "clear and unmistakable."  525 U.S.

70, 80-81 (1998).  The Court's decision thus turned on when union representatives could agree to arbitrate claims belonging to their members, with the Court going out of its way to note that had the case "involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees . . . the 'clear and unmistakable' standard [would] not [be] applicable." *Id.*

*Second*, Greer claims that in the Ninth Circuit an arbitration agreement must "mention a specific statutory right" that is subject to arbitration.  Opp. at 7.  As support, Greer relies on *Nelson v. Cyprus Bagdad Copper Corp*., 119 F.3d 756 (9th Cir. 1997).  Greer misinterprets *Nelson*.  In *Nelson* the court held that to agree to arbitrate certain statutory civil rights claim a party must knowingly waive their right to a judicial forum.  *Id.* at 761.  Thus, in *Nelson*, the Court held that where an employee had merely acknowledged receipt of an employee handbook containing an arbitration clause, but had not otherwise agreed to arbitrate disputes arising out of his employment, he had not knowingly agreed to arbitrate claims arising under the ADA.  *See id.* at 761-62 ("We conclude that . . . the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee to waive a statutory remedy provided by a civil rights law.").  *Nelson* therefore stands simply for the proposition that a party must knowingly enter into an arbitration agreement, not that the agreement has to explicitly state every statutory claim covered by that agreement.

Not surprisingly then, even after *Nelson*, the Ninth Circuit has repeatedly confirmed that arbitration agreements need not specifically delineate that statutory claims are covered.  For example, in *Zoller v. GCA Advisors, LLC*, a banker filed suit against her former employer claiming, among other things, violations of the Equal Pay Act, Fair Pay Act, California Fair Employment and Housing Act, and the Civil Rights Act of 1871.  993 F.3d 1198, 1200 (9th Cir. 2021).  She claimed that these statutory claims were not subject to arbitration because she did not knowingly waive her right to pursue them in court.  *Id.* at 1201.  The Ninth Circuit disagreed.  It held that, because the plaintiff signed an arbitration agreement that specifically stated it applied to controversies or claims relating to or arising out of her employment and employment agreement, she had knowingly agreed to arbitrate her statutory claims even though the agreement did not

- 7 -

1   explicitly reference any statutes or discrimination claims.  *See id.* at 1200, 1203-04 ("Ultimately,

2   the facts here are easily distinguishable from our prior decisions holding that a plaintiff did not

3   knowingly waive judicial consideration. . . . [The] arbitration agreement included explicit language

4   regarding employment disputes so that Zoller's statutory claims are clearly encompassed by the

5   agreement. The clear terms of the arbitration provisions also state that the enforcement or

6   interpretation of the Letter Agreement 'shall be exclusively settled by final and binding

7   arbitration[.]'").  Similarly, in *Dylag v. W. Las Vegas Surgery Center, LLC*, the Ninth Circuit held

8   that "[b]y entering into an employment contract with an arbitration provision that encompasses

9   'any dispute aris[ing] out of' that contract, [plaintiff] knowingly bargained away his right to

10   litigate his ADEA and ADA claims against [defendant]."  719 F. App'x 568, 570 (9th Cir. 2017).

11       Consistent with these cases, post-*Nelson* numerous district courts in the Ninth Circuit—

12   including this Court—have found that an arbitration agreement need not explicitly reference

13   statutory claims to encompass those claims.  For example, in *Mallia v. Drybar Holdings, LLC*, this

14   Court held that a party agreed to arbitrate claims under the ADA where they signed an arbitration

15   agreement that stated simply that it "applies without limitation, to disputes with any entity or

16   individual arising out of or related to . . . the employment relationship or the termination of that

17   relationship."  2020 WL 1250817, at *1, 4 (D. Nev. Mar. 16, 2020) (J. Boulware II).  There was no

18   explicit mention of statutory civil rights claims.  *Id.*; *see also  Sheehan v. Sparks Black Bear, LLC*,

19   2019 WL 591445, at *1, *3 (D. Nev. Feb. 13, 2019) (finding party agreed to arbitrate ADA claim

20   where arbitration agreement only referred generally to disputes and did not explicitly reference the

21   ADA or discrimination claims); *Marina v. Edward D. Jones & Co.*, 2012 WL 3884305, at *1 (D.

22   Nev. Sept. 6, 2012) (same); *Namisnak v. Uber Techs., Inc*., 315 F. Supp. 3d 1124, 1129 (N.D. Cal.

23   2018) (same); *Harris v. Halliburton Co.*, 2016 WL 3255074, at *9 (E.D. Cal. June 13, 2016)

24   (same); *Edwards v. Verizon*, 2015 WL 13654015, at *4 (C.D. Cal. Jan. 26, 2015) (same);

25   *Slaughter v. Stewart Enters., Inc.*, 2007 WL 2255221, at *1-*2 (N.D. Cal. Aug. 3, 2007) (same).

26   / / /

27       Accordingly, because Greer knowingly entered in an arbitration agreement providing that

28   "any controversy or claim arising out of or relating to" his Audition Agreement would be subject

- 8 -

1  to arbitration, Greer waived his right to have a court decide his purported ADA claim.  *See also*

2  *State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 199 P.3d 828, 833 & n.5 (Nev.

3  2009) (noting that the phrase "arising out of or relating to" "constitute[s] the broadest language the

4  parties could reasonably use to subject their disputes to [arbitration].").

5           **C.      Greer's Agreement to Arbitrate is Not Unconscionable.**

6           Greer "bear[s] the burden of establishing that [an] Arbitration Provision is procedurally *and*

7  substantively unconscionable."  *Raebel v. Tesla, Inc*., 451 F. Supp. 3d 1183, 1189 (D. Nev. 2020).

8  Here, Greer claims that his agreement to arbitrate is unconscionable for three reasons, none of

9  which satisfies his burden to establish that the Audition Agreement is unconscionable.

10          *First*, Greer claims that his agreement to arbitrate is unconscionable because his Audition

11  Agreement is supposedly an adhesion contract.  Opp. at 8-9.  However, as explained in Marathon's

12  Motion, the Audition Agreement is not a contract of adhesion because Greer is not a "consumer[]

13  of goods and services."  *See Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 996 P.2d

14  903, 907 (Nev. 2000) ("An adhesion contract is a standardized contract form offered to consumers

15  of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a

16  realistic opportunity to bargain.").  While Greer claims that courts have found prospective

17  contestants on reality shows to be "competing for goods," *see* Opp. at 9, the only case he cites is an

18  out-of-circuit decision, *Rendon v. Valleycrest Productions*, Ltd., 294 F.3d 1279 (11th Cir. 2002),

19  that did not even address whether a contract was a contract of adhesion.

20          By contrast, numerous courts have found that agreements—like the Audition Agreement—

21  involving voluntary recreational activities are not contracts of adhesion.  *See, e.g.*, *Gelbman v.*

22  *Valleycrest Prod., Ltd*., 732 N.Y.S.2d 528, 533 (N.Y. Sup. Ct. 2001) (holding that contract to

23  appear on a game show was not a contract of adhesion because, among other factors, plaintiff was

24  given "the opportunity to win vast sums of money . . . and all the plaintiff was to give in return was

25  to appear on the show (which is something he clearly wanted to do)"); *Cobb v. Aramark Sports &*

26  *Ent. Servs., LLC*, 933 F. Supp. 2d 1295, 1299 (D. Nev. 2013) (holding that liability waiver from

27  water sports company was "not an adhesion contract because it concerns a voluntary recreational

28  activity"); *Urena v. LA Fitness*, 2021 WL 3209888, at *3 (E.D. Pa. July 29, 2021) ("Courts have

- 9 -

1  consistently held that agreements to participate in voluntary sporting or recreational activities are

2  not contracts of adhesion because the signer is a free agent who can simply walk away without

3  signing the release and participating in the activity, and thus the contract signed under such

4  circumstances is not unconscionable.").

5      Moreover, even if the Audition Agreement were a contract of adhesion—which it is not—

6  that would still not render it unenforceable.  "[A]n adhesion contract need not be unenforceable if

7  it falls within the reasonable expectations of the weaker or 'adhering' party and is not unduly

8  oppressive."  *Mohazzabi v. Wells Fargo, N.A.*, 2019 WL 4675768, at *3 (D. Nev. Sept. 25, 2019)

9  (J. Boulware II) (quoting *Obstetrics & Gynecologists v. Pepper*, 693 P.2d 1259, 1261 (Nev.

10  1985)).  Here, the Audition Agreement contains just two pages of substantive text and draws

11  particular attention to the arbitration provisions by presenting them prominently in all caps letters.

12  *See* RJN, Ex. A at J003.  Further, the very first two lines of the Audition Agreement admonishes—

13  in bold and underlined text—"**Do Not Sign Until You Have Completely Read The Following:**

14  **Personal Release And Arbitration Provision ('Agreement')**."  *Id*. at J002.  The Audition

15  Agreement also clearly and unambiguously states that Greer would have to arbitrate claims arising

16  out of his audition.  *Id.* at J003.  The Agreement also provides that arbitration will be conducted

17  pursuant to JAMS streamlined rules, and provided the website where Greer could review those

18  rules.  *Id.*  And the agreement provides that all parties shall pay their own pro rata share of the fees

19  and expenses associated with arbitration.  *Id.*  The Audition Agreement thus falls within Greer's

20  reasonable expectations and is not unduly oppressive.  *See Mohazzabi*, 2019 WL 4675768, at *4

21  (finding arbitration agreement to be an adhesion contract, but not substantively unconscionable

22  where, *inter alia*, arbitration provisions were provided in "clear language" and "require[d] each

23  party to bear its own costs"); *Augustine v. TLC Resorts Vacation Club, LLC*, 2018 WL 3913923, at

24  *6-7 (S.D. Cal. Aug. 16, 2018) (finding arbitration agreement to be enforceable despite its

25  "adhesive nature" where, *inter alia*, arbitration would be conducted pursuant to the standard rules

26  of the American Arbitration Association and rejecting argument that "mere inconvenience and

27  expense [were] sufficient to establish substantive unconscionability") (applying Nevada law).

28      *Second*, Greer claims that the Audition Agreement supposedly lacks mutuality because it

- 10 -

permits Marathon, but not Greer, to seek injunctive relief.  Opp. at 9-10.  However, under Nevada law, an arbitration agreement need only contain a "modicum of bilaterality" to be enforceable.  *See Cohn v. Ritz Transp., Inc*., 2014 WL 1577295, at *15 (D. Nev. Apr. 17, 2014) ("The agreement is unconscionable unless the arbitration remedy contains a modicum of bilaterality.").  For example, in *Ricci v. Beazer Home Holding Corporation*, a court in this district held that an arbitration agreement had a "modicum of bilaterality" where it required "[t]he cost of the arbitrator(s) [to] be borne equally" even though the plaintiff argued that, as applied to him, those costs were "financially burdensome."  2010 WL 11579685, at *1, 3 (D. Nev. Feb. 12, 2010).

Moreover, courts have recognized that there may be appropriate circumstances in which parties to an arbitration agreement are entitled to different remedies.  For example, in *Kaufman v. Sony Pictures Television, Inc*., the parties entered into an arbitration agreement that provided that "under certain limited circumstances only the Defendants [producers of the reality TV show *Shark Tank*] have the right to seek injunctive or other equitable relief."  2017 WL 3090256, at *6 (D. Mass. July 20, 2017).  The agreement went on "to validate this caveat by highlighting the fragility of the television reality competition business where divulging certain information prematurely can result in large financial losses not covered by monetary damages to Defendants," thus necessitating the ability for Defendants to seek injunctive relief.  *Id.*  By contrast, the court noted that "the burden [was] on [plaintiff] to set forth sufficient factual allegations to challenge the legitimate commercial need for the different treatment."  *Id.* at *7.  Because plaintiff failed to do so, the court held that his agreement and its arbitration clause were valid and enforceable.  *Id.*

The same is true here.  As the Audition Agreement itself explicitly explains, "given the unique nature of the Program [i.e., *AGT*] and the commercial realities of the entertainment industry, which rely upon confidentiality and intellectual property rights, any actual or anticipated breach of [Greer's] confidentiality obligations . . . or any infringement by [Greer] of [Marathon's] intellectual property rights, would cause . . . irreparable injury and damage . . . and, therefore, [Marathon] shall be entitled to seek and obtain injunctive and other equitable relief[.]"  RJN, Ex. A at J003.  There is thus a legitimate commercial need for the disparity between Marathon's and Greer's rights to seek injunctive relief and Greer provides no basis to challenge this need.  *See also*

*Ledwell v. Ravenel*, 843 F. App'x 506, 508 (4th Cir. 2021) (upholding releases to appear on a reality TV show that "allowed Corporate Defendants to pursue limited equitable relief from the courts, whereas [plaintiff's] only recourse was through arbitration" and noting that "the releases [were] not unenforceable simply because . . . Defendants enjoy a slightly broader remedy").[6]

*Third*, Greer claims that the Agreement is unconscionable because it did not inform him that he was waiving his ADA statutory rights.  Opp. at 10.  As noted above though, there is no requirement that an arbitration agreement delineate every claim that might be subject to arbitration.  *See supra* § II.B.  Greer agreed to arbitrate "any controversy or claim arising out of or relating to [his Audition] Agreement" and numerous courts have found that nearly identical language constitutes a knowing waiver of the right to have a court decide statutory claims, including claims arising under the ADA.  *See, e.g.*, *Zoller*, 993 F.3d at 1203-04; *Dylag*, 719 F. App'x at 570.

Accordingly, as Greer has not identified a single basis for the Court to find his agreement to arbitrate unconscionable, the Court should uphold Greer's agreement and compel arbitration.

## III.   CONCLUSION

For the foregoing reasons, and for the reasons stated in Marathon's Motion, Marathon respectfully requests an order (1) that an arbitrator will decide the question of arbitrability or, in

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] Even if the provisions of the Audition Agreement permitting Marathon, but not Greer, to seek injunctive relief were impermissibly one-sided (they are not), the Court should simply sever those provisions from the Audition Agreement.  *See, e.g.*, *Becker v. Keshmiri*, 2020 WL 2733944, at *7 (D. Nev. May 26, 2020) ("Typically, when one provision within an arbitration agreement is improper, the solution is not to invalidate the entire agreement, but rather to sever the suspect provision from the rest of the contract."); *Cox v. Station Casinos, LLC*, 2014 WL 3747605, at *4 (D. Nev. June 25, 2014) ("Even if a contract provision is unconscionable, Nevada recognizes the doctrine of severability.").

DEFENDANT'S MOTION TO COMPEL ARBITRATION

the alternative, compelling Greer to submit to binding arbitration of all of the claims he has

asserted against Marathon; and (2) dismissing this litigation.

Dated this 14th day of February 2022.

HONE LAW
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074

O'MELVENY & MYERS LLP
Molly M. Lens*
mlens@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
*Pro Hac Vice Petition Pending

*Attorneys for Defendants Fremantle
Productions North America, Inc. and
Marathon Productions, Inc.*

- 13 -

1

**CERTIFICATE OF SERVICE**

2    The undersigned, an employee of Hone Law, hereby certifies that service of the foregoing

3  document was made on the 14th day of February 2022 via the Court's CM/ECF filing system

4  addressed to all parties on the e-service list.

5

6    Candice Ali, an employee of HONE LAW

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO COMPEL ARBITRATION