**HONE LAW**
Eric D. Hone, NV Bar No. 8499
ehone@hone.law
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone: 702-608-3720
Fax: 702-703-1063

**O'MELVENY & MYERS LLP**
Molly M. Lens, Esq.
mlens@omm.com
(Pro Hac Vice)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Phone 310-246-8593

Attorneys for Defendants FREMANTLE
PRODUCTIONS NORTH AMERICA, INC. and
MARATHON PRODUCTIONS, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RUSSELL G. GREER,<br><br>        Plaintiff,<br><br>v.<br><br>FREMANTLE PRODUCTIONS NORTH AMERICA, INC, a corporation and MARATHON PRODUCTIONS, INC, a corporation,<br><br>        Defendants. | Case No. 2:21-cv-01905-RFB-NJK<br><br>Judge Richard F. Boulware, II<br><br>Magistrate Judge Nancy J. Koppe<br><br>**OPPOSITION TO GREER'S EMERGENCY MOTION FOR LEAVE TO FILE A SUPPLEMENTAL MEMORANDUM** |

The Court should deny Greer's improper emergency motion for leave to file a supplemental memorandum as his proposed second opposition raises no new arguments or facts that were unavailable when Greer filed his opposition to Marathon's Motion to Compel Arbitration. Not surprisingly then, even if the Court were to consider Greer's supplemental opposition, such opposition only confirms that Marathon's Motion to Compel Arbitration should be granted.

## I. THE COURT SHOULD DENY GREER'S REQUEST TO FILE A SUPPLEMENTAL MEMORANDUM.

"A party may not file supplemental [] briefs . . . without leave of court granted for good cause." LR 7-2(g). "Sur-replies are highly disfavored[.]" *Sky Zone, LLC v. Raymond*, 2015 WL 1815581, at *4 (D. Nev. Apr. 22, 2015)[1]; *see also* LR 7-2(b) ("[M]otions for leave to file a surreply are discouraged."). "Court[s] will typically only find good cause under LR 7-2(g) if there is a showing that the party seeking good cause was reasonably diligent." *Mallia v. Drybar Holdings, LLC*, 2020 WL 1250817, at *4 (D. Nev. Mar. 16, 2020) (J. Boulware II).

Greer *concedes* that he has not been reasonably diligent. In fact, Greer admits that "after filing his Opposition, Greer did more research and found additional authority" that purportedly supports his arguments. ECF No. 40 (Motion for Leave to File Supplemental Memorandum) ("Mot. to Supplement") at 2; *see also* ECF No. 40-1 (Proposed Supplemental Memorandum) ("Supp. Memo") at 6 (describing a case that Greer "came across" as he was "doing more research after filing the Opposition"). Nothing prevented Greer from conducting this research before filing his opposition, and all of the "additional authority" was available prior to Greer submitting his opposition.

Courts routinely deny requests by *pro se* plaintiffs to submit supplemental briefs that—as here—simply expand on arguments raised in prior briefing. *See, e.g.*, *Hoot v. Univ. of Nev., Las Vegas*, 2016 WL 320115, at *5 (D. Nev. Jan. 25, 2016) (refusing to grant *pro se* plaintiff leave to file sur-reply on grounds that it was "duplicative because it reiterates arguments that [plaintiff]

---

[1] Unless otherwise noted, all emphases added and all internal citations and quotations omitted.

asserted in prior filings"); *Hill v. England*, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (refusing to consider sur-reply filed by *pro se* plaintiff where "[i]t [was] apparent from the sur-reply brief that plaintiff is merely posing the same or additional arguments in opposition to the [defendants' motion]"); *Finley v. Maricopa Cnty. Sheriff's Off.*, 2016 WL 777700, at *1 n.1 (D. Ariz. Feb. 29, 2016), *aff'd sub nom. Finley v. Fax*, 683 F. App'x 630 (9th Cir. 2017) (denying *pro se* plaintiff leave to file proposed sur-reply that "merely reiterate[d] arguments made in her response brief").

Moreover, Greer chose to file his opposition early—Greer's opposition was not due until February 18 but he filed it on February 6. ECF No. 33 (Opp. to Mot. to Comp.). Put simply, Greer had time to fully research and prepare his opposition; he simply chose not to use it. Greer should not be permitted to shift the consequences of his own decision onto this Court and Marathon with a second opposition. *Cf. Dragonas v. Macerich*, 2021 WL 3912853, at *6 (D. Ariz. Sept. 1, 2021) (denying *pro se* plaintiff leave to file sur-reply where he "had ample notice and opportunity to address [defendants'] arguments in his [initial] response"); *FNBN-RESCON I LLC v. Ritter*, 2014 WL 979930, at *6 (D. Nev. Mar. 12, 2014) ("[A]llowing a party to file supplemental arguments and evidence whenever they wish it would subvert the local rules that are in place to ensure timely responses."); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197-98 (N.D. Ga. 2005) (denying leave to file supplemental brief that raised no new arguments because "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs").[2]

## II. EVEN IF THE COURT WERE TO CONSIDER GREER'S SUPPLEMENTAL OPPOSITION—WHICH IT SHOULD NOT—MARATHON'S MOTION TO COMPEL WOULD STILL NEED TO BE GRANTED.

For the reasons stated above, the Court should not permit Greer to file his proposed supplemental opposition. However, if the Court does permit Greer to file his supplemental

---

[2] Greer has also improperly designated his motion as an "Emergency Motion." "Emergency motions should be rare" and "are not intended for requests for procedural relief[.]" LR 7-4(b). Because Greer's failure to research his opposition does not constitute an "emergency," the Court should not treat Greer's motion as an Emergency Motion under Local Rule 7-4. *See also id.* ("A party or attorney's failure to effectively manage deadlines . . . or any other aspect of litigation does not constitute an emergency.").

opposition, Greer's second opposition only confirms that Marathon's Motion to Compel should be granted.

      **A.**     **Greer Raises Only Threshold Questions of Arbitrability That Must Be Decided by an Arbitrator.**

As Marathon's Motion and Reply explain, the parties' arbitration agreement requires that the arbitrator—and not this Court—decide all threshold questions of arbitrability. ECF No. 31 (Mot. to Compel Arbitration) at 4-7; ECF No. 41 (Reply ISO Mot. to Compel Arbitration) at 2-5. Yet the only two issues that Greer's supplemental opposition raises—that the arbitration agreement purportedly does not include ADA claims and that his audition agreement is unconscionable—are threshold questions of arbitrability. Accordingly, the Court should not consider any of the arguments in Greer's supplemental memorandum and should grant Marathon's Motion to Compel Arbitration so that an arbitrator can decide those arguments. *See, e.g.*, *Bank Leumi, USA v. Miramax Distrib. Servs., LLC*, 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) ("By requiring arbitration of disputes over the 'scope or applicability' of arbitration, the parties clearly and unmistakably agreed to arbitrate the question of whether and to what extent Plaintiff's claims are subject to arbitration."); *Zeevi v. Citibank, N.A.*, 2021 WL 621423, at *3 (D. Nev. Feb. 16, 2021) (compelling arbitration on question of unconscionability where parties' arbitration agreement delegated "the authority to decide the unconscionability of the arbitration agreement" to an arbitrator); *Gibbs-Bolender v. CAG Acceptance, LLC*, 2015 WL 685217, at *3 (D. Nev. Feb. 18, 2015) (a court may only decide arbitrability questions "when a plaintiff argues that [a delegation] clause, standing alone, is unenforceable—*for reasons independent of any reasons the remainder of the contract might be invalid*") (quoting *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010)).

Even further still, as explained below, all of Greer's threshold arbitrability arguments fail.

      **B.**     **Greer Knowingly Agreed to Arbitrate His ADA Claim.**

Greer's supplemental opposition argues that the "knowing waiver" standard is still good law in the Ninth Circuit. Supp. Memo at 2. Greer misses the point. The knowing waiver standard requires that a party knowingly enter into an arbitration agreement—not that the

1 agreement must explicitly identify every statutory claim covered by the agreement, as Greer
2 argues. *See Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1301 (9th Cir. 1994) (knowing
3 waiver standard not satisfied where "[a]rbitration was never mentioned, and plaintiffs were never
4 given a copy of the NASD Manual, which contains the actual terms of the arbitration
5 agreement"); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997)
6 (knowing waiver standard not satisfied where plaintiff merely signed acknowledgement form
7 upon receipt of employee handbook, but "[n]othing in that acknowledgment notified [plaintiff]
8 . . . that the Handbook contained an arbitration clause"); *Kummetz v. Tech Mold, Inc.*, 152 F.3d
9 1153, 1155 (9th Cir. 1998) (knowing waiver standard not satisfied where "[t]he
10 Acknowledgement [plaintiff] signed did not refer to the fact that the 'Information Booklet' that he
11 had just received included an arbitration clause that waived his right to go to court").

12 Here, Greer does not—and could not—claim that he was unaware that he was agreeing to
13 arbitration. After all, Greer knowingly signed an agreement consisting of just two pages of
14 substantive text, which *prominently* and repeatedly explains that Greer was agreeing to arbitrate
15 "any controversy or claim arising out of or relating to [his Audition] Agreement." ECF No. 32
16 (Request for Judicial Notice), Ex. A at J002 ("**Do Not Sign Until You Have Completely Read**
17 **The Following:  Personal Release And Arbitration Provision ('Agreement')**.") (emphasis in
18 original); *id*. at J003("I agree that [any] controversy or claim, including the scope or applicability
19 of this agreement to arbitrate, shall . . . be resolved by final and binding confidential
20 arbitration[.]"); *see also State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 199
21 P.3d 828, 833 & n.5 (Nev. 2009) (the phrase "arising out of or relating to" "constitute[s] the
22 broadest language the parties could reasonably use to subject their disputes to [arbitration]").

23 What's more, Greer admits that "[e]ach Plaintiff in the cases [Marathon] cited all signed
24 very clear and knowing waivers that put them on notice they were waiving civil right statutes."
25 Supp. Memo at 6. Greer thus concedes that his position has no merit. As Marathon's authority
26 demonstrates, courts—including this Court—routinely compel arbitration of ADA claims where,
27 as here, the arbitration clause in question does not make a reference to the ADA or other statutory
28 claims. *See* ECF No. 41 (Reply ISO Mot. to Compel Arbitration) at 8 (collecting cases); *see also*

1  *Mallia*, 2020 WL 1250817 at *1, *4 (holding that a party agreed to arbitrate claims under the
2  ADA where they signed an arbitration agreement that stated simply that it "applies without
3  limitation, to disputes with any entity or individual arising out of or related to . . . the employment
4  relationship or the termination of that relationship.") (J. Boulware II).

### C. Greer's Audition Agreement is Not Unconscionable.

Greer next tries a veritable grab bag of claims to try to support his claim that the Audition Agreement is supposedly unconscionable. None has merit.

*First*, he argues it was purportedly "hectic" when he signed the Audition Agreement. Supp. Memo at 6-8. Greer makes this *unsupported* assertion to try to latch onto the Nevada Supreme Court's decision in *FQ Men's Club, Inc. v. Doe Dancers I*, 471 P.3d 753, 2020 WL 5587435 (Nev. 2020) (unpublished disposition). As an initial matter, *FQ Men's Club* is an unpublished, and therefore non-binding, decision. More importantly, its facts render it inapplicable here. For example, the *FQ Men's Club* defendants affirmatively misrepresented the contents of the arbitration agreement the dancers signed. *Id.* at *3-4. In addition, the agreement contained numerous drafting errors, including the omission of "essential words and phrases" which prevented the dancers from "readily ascertaining the contract and its effects." *Id*. No such facts are present here.

*Second*, Greer claims that his Audition Agreement is unconscionable because it prohibits Greer, but not Marathon, from seeking injunctive relief. Supp. Memo at 8-10. As Marathon has explained, however, courts recognize that there are circumstances in which parties to an arbitration agreement may be entitled to different remedies. *See* ECF 41 (Reply ISO Mot. to Compel Arbitration) at 11-12; *see also Ledwell v. Ravenel*, 843 F. App'x 506, 508 (4th Cir. 2021) (upholding releases to appear on a reality TV show that "allowed Corporate Defendants to pursue limited equitable relief from the courts, whereas [plaintiff's] only recourse was through arbitration" and noting that "the releases [were] not unenforceable simply because . . . Defendants enjoy a slightly broader remedy"). This precisely one such situation. As the Audition Agreement *itself* explains, "given the unique nature of [*America's Got Talent*] and the commercial realities of the entertainment industry, which rely upon confidentiality and intellectual property rights,"

Marathon retained the right to seek injunctive relief to prevent "any actual or anticipated breach of [Greer's] confidentiality obligations . . . or any infringement by [Greer] of [Marathon's] intellectual property rights." ECF No. 32, Request for Judicial Notice, Ex. A at J003; *see also Kaufman v. Sony Pictures Television, Inc.*, 2017 WL 3090256, at *6 (D. Mass. July 20, 2017) (upholding arbitration agreement where "only the Defendants [producers of the reality TV show *Shark Tank*] ha[d] the right to seek injunctive or other equitable relief" because of "the fragility of the television reality competition business where divulging certain information prematurely can result in large financial losses not covered by monetary damages to Defendants").[3]  In fact, even Greer himself concedes the appropriateness of injunctive relief regarding "confidentiality agreements." Supp. Memo at 10.[4]

*Third*, Greer claims that the Audition Agreement is an adhesion contract because he wanted to win the prize money. Greer ignores that numerous courts have held that agreements involving voluntary recreational activities (such as a gameshow) are not contracts of adhesion. *See, e.g.*, *Gelbman v. Valleycrest Prod., Ltd.*, 732 N.Y.S.2d 528, 533 (N.Y. Sup. Ct. 2001) (holding that contract to appear on a game show was not a contract of adhesion because, among other factors, plaintiff was given "the opportunity to win vast sums of money . . . and all the plaintiff was to give in return was to appear on the show (which is something he clearly wanted to do)"); *Cobb v. Aramark Sports & Ent. Servs., LLC*, 933 F. Supp. 2d 1295, 1299 (D. Nev. 2013)

---

[3] Greer asserts that, because the ADA does not permit monetary recovery, the Audition Agreement effectively renders his ADA claim "useless." Supp. Memo at 8-9. But parties can waive their right to seek certain forms of relief, including their right to seek relief under the ADA. *See Strickland v. GE Cap. Retail Bank*, 2015 WL 1966553, at *4 (D. Ariz. May 1, 2015), *aff'd*, 670 F. App'x 582 (9th Cir. 2016) ("[C]ourts within the Ninth Circuit enforce agreements that waive and release ADA claims.") (collecting cases). Moreover, Greer claims to have other claims that he could purportedly assert against Marathon even if he cannot assert a claim under the ADA. *See* Supp. Memo at 7 (noting that Greer considered bringing a claim for intentional infliction of emotional distress).

[4] Further still, even if the injunctive relief provisions in the Audition Agreement were unconscionable, the Court would simply sever those provisions, rather than refuse to enforce the agreement altogether. *See, e.g.*, *Becker v. Keshmiri*, 2020 WL 2733944, at *7 (D. Nev. May 26, 2020) ("Typically, when one provision within an arbitration agreement is improper, the solution is not to invalidate the entire agreement, but rather to sever the suspect provision from the rest of the contract."); *Cox v. Station Casinos, LLC*, 2014 WL 3747605, at *4 (D. Nev. June 25, 2014) ("Even if a contract provision is unconscionable, Nevada recognizes the doctrine of severability.").

(holding that liability waiver from water sports company was "not an adhesion contract because it concerns a voluntary recreational activity"). By contrast, the only case that Greer cites, *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), is an out-of-circuit decision, which Greer himself acknowledges did not even address whether an agreement was a contract of adhesion. *See* Supp. Memo at 10.

### III. CONCLUSION

The Court should summarily deny Greer's request for leave to file a supplemental opposition. Alternatively, if the Court considers Greer's supplemental opposition, it should still grant Marathon's motion because Greer raises exclusively threshold questions of arbitrability which must be decided by the arbitrator (and not this Court) and/or because all Greer's arguments fail on the merits.

Dated:     February 28, 2022

/s/ *Joel Z. Schwarz*
Joel Z. Schwarz, NV Bar No. 9181
jschwarz@hone.law
701 N. Green Valley Parkway, Suite 200
Henderson, NV 89074
Phone: (708) 608-3720

O'MELVENY & MYERS LLP

/s/ *Molly M. Lens*
Molly M. Lens (*pro hac vice*)
mlens@omm.com
1999 Avenue of the Stars, 8th floor
Los Angeles, CA 90067
Phone: (310) 553-6700

Attorneys for Defendants Fremantle Productions North America, Inc. and Marathon Productions, Inc.