UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RUSSELL G. GREER,<br><br>                              Plaintiff,<br><br>      v.<br><br>FREEMANTLE PRODUCTIONS, *et al.*,<br><br>                             Defendant. | Case No. 2:21-cv-01905-RFB-NJK<br><br>**ORDER** |

## I.    INTRODUCTION

Before the Court are Plaintiff's Motions for Preliminary Injunction (ECF Nos. 7, 27, 52), Defendants' Motion to Compel Arbitration (ECF No. 31), and Plaintiff's Motion for Leave to File Supplemental Memorandum (ECF No. 40).

## II.    PROCEDURAL BACKGROUND

Plaintiff filed the Complaint and Application for Leave to Proceed *in forma pauperis* on October 15, 2021. ECF No. 1. Plaintiff filed a Motion for Preliminary Injunction on October 31, 2021. ECF No. 7. Plaintiff filed an Amended Complaint on January 42, 2022. ECF No. 23. Plaintiff filed an Amended Motion for Preliminary Injunction on January 28, 2022. ECF No. 27.

On February 4, 2022, Defendants filed a Motion to Compel Arbitration along with a Request for Judicial Notice accompanying that motion. ECF Nos. 31, 32. Plaintiff responded on February 6, 2022 and filed a Motion for Leave to File Supplemental Memorandum on February 13, 2022. ECF Nos. 33, 40. Defendants filed a Reply in support of their Motion to Compel on February 14, 2022. ECF No. 41. Defendants opposed Plaintiff's Motion for Leave to File Supplemental Memorandum on February 28, 2022. ECF No. 45. On May 18, 2022, Plaintiff filed his second Amended Motion for Preliminary Injunction. ECF No. 52. On May 24, 2022, this Court

entered an Order granting the parties' stipulation for extension of time. ECF No. 54. The Order indicated that Defendants shall not oppose the second Amended Motion for Preliminary Injunction until and unless the Court denies the pending Motion to Compel Arbitration. Id.

This Order follows.

### III.    FACTUAL BACKGROUND

Plaintiff Russell Greer is a musician and resident of Las Vegas, Nevada. Defendants Freemantle Productions North America, Inc. and Marathon Productions, Inc. are companies incorporated in Burbank, California. Defendants produce the popular televised talent show competition, "America's Got Talent" ("AGT"). To compete on AGT, contestants first audition. After the audition, contestants may be selected to advance through the competition and eventually appear on a televised round of AGT, where they perform in front of a line-up of celebrity judges for the opportunity to win a large cash prize.

In 2020, Plaintiff decided he wanted to audition for Season 16 of AGT. Plaintiff produced an original song about AGT celebrity judge Heidi Klum. Plaintiff has Moebius Syndrome, which causes facial nerve paralysis. Because Plaintiff could not perform his song by himself due to his facial paralysis, he hired professional musicians to help him perform his song. Plaintiff moved to Las Vegas to scout for talent, and eventually hired a drummer, a singer, and a backup dancer to help him with his act. On February 8, 2021, Plaintiff and his band auditioned over Zoom for AGT. Plaintiff alleges that the audition "went smoothly" and that he was told he would be notified by spring 2021 as to whether he and his band would advance to audition before the celebrity judges. Plaintiff never heard back from anyone affiliated with AGT. On March 6, 2021, Plaintiff contacted the AGT helpline email, and was told to "try again next year." On April 12, 2021, Plaintiff sent a letter to Defendants indicating he believed he had been discriminated against on the basis of his disability. Plaintiff subsequently initiated the instant suit alleging claims under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 (the "ADA").

IV.     **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two methods for enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending litigation raising a dispute referable to arbitration. 9 U.S.C §§ 3, 4.

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986), (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)).

The determination of whether a particular issue should be determined by the arbitrator rather than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case

are within the reach of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a district court to dismiss the action. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). A request for a stay is not mandatory. Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978).

V.   DISCUSSION

### a. The Court Denies Leave to File Supplemental Memorandum

As a preliminary matter, the Court denies Plaintiff's Motion for Leave to File Supplemental Memorandum in Support of his Opposition to Defendant's Motion to Compel Arbitration. ECF No. 40. The Local Rules require the parties to obtain leave of the Court before filing any supplemental briefs; surreplies are not permitted without leave of the court. L-R 7-2(g). The Court may grant leave to file supplemental authority "for good cause" found. Id. "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP, 526 F. Supp. 3d 805, 812 (D. Nev. Mar. 17, 2021). Plaintiff argues that the additional information and authorities set forth in his supplemental filing "are significant and directly relevant to opposing the merits of Defendants' motion [to compel arbitration]." ECF No. 40 at 2. Defendants argue that Plaintiff's motion should be denied because it raises no new arguments or facts that were unavailable to Plaintiff when he filed his initial opposition to the motion to compel arbitration.

The Court finds that Plaintiff has failed to establish good cause for obtaining leave of the Court to file a supplemental memorandum. Plaintiff filed his opposition to the Motion to Compel early; his opposition was not due until February 18, 2022, but he filed it on February 6, 2022. Thus, Plaintiff had the opportunity to address Defendants' arguments thoroughly in his initial response but chose not to do so. See FNBN-RESCON 1 LLC v. Ritter, No. 2:11-cv-1867-JAD-VCF, at *25 (D. Nev. Mar. 12, 2014) ("Allowing a party to file supplemental arguments and evidence whenever they wish it would subvert the local rules that are in place to ensure timely responses."). This is

not a situation where there has been a new development in the law following the close of a filing deadline. Furthermore, the Court finds that the proffered supplemental authority does not control the outcome of the litigation and is not particularly persuasive or helpful. Instead, it simply expands upon the arguments raised in Plaintiff's initial Response to the Motion to Compel Arbitration. The Court finds that Plaintiff's supplemental filing merely restates the same arguments raised in the initial opposition – namely, that the arbitration agreement at issue does not bind Plaintiff because he did not knowingly agree to have it apply to discrimination claims, and because it is unconscionable. Because these arguments are already thoroughly briefed in Plaintiff's Response to the Motion to Compel Arbitration, the Court finds that good cause does not exist for the filing of a surreply. The Court accordingly denies Plaintiff's Motion for Leave to File Supplemental Memorandum.

### b. The Court Grants the Motion to Compel Arbitration

The Court next turns to Defendants' Motion to Compel Arbitration. Defendants argue the Court should compel arbitration, including on any threshold questions of arbitrability, because Plaintiff signed an Audition Agreement that contained a delegation clause explicitly stating that an arbitrator would decide gateway questions of arbitrability. In the alternative, Defendants argue that if the Court proceeds to decide arbitrability, it should compel arbitration because federal law favors enforcement of arbitration provisions, the plain language of the Audition Agreement encompasses the dispute, and the arbitration agreement is not unconscionable. Plaintiff argues that the Court should deny Defendants' motion because the agreement to arbitrate disputes arising out of or relating to the Audition Agreement does not apply to any disputes arising under the ADA, and because the delegation clause within the Agreement is unconscionable.

The Court first considers if the parties agreed to arbitrate the threshold question of whether the arbitration agreement covers Plaintiff's ADA claim. "Parties can agree to arbitrate 'gateway questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). Gateway questions of arbitrability can be expressly delegated to an arbitrator where "the parties clearly and unmistakably provide" for such delegation. AT & T Techs, Inc. v. Comms.

Workers of Am., 475 U.S. 643, 649 (1986). "Clear and unmistakable evidence of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent" or "an express agreement to do so." Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011).

The Court finds that the parties agreed to arbitrate threshold questions of arbitrability – including the scope of claims that may be arbitrated – when they executed the Audition Agreement. Plaintiff concedes that he signed an Audition Agreement prior to auditioning for AGT, which contained an arbitration agreement. He does not dispute that the arbitration clause was contained within a valid, enforceable contract. See AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). Further, it is not disputed that the Audition Agreement included a delegation clause indicating that gateway questions regarding the scope of the arbitration agreement would be sent to an arbitrator. The arbitration agreement and delegation clause stated, in relevant part:

> I agree that if any controversy or claim arising out of or relating to this Agreement cannot be settled through direct discussions, I shall endeavor first to settle the controversy or claim by a mediation administered by JAMS under its applicable rules. IF THE DISPUTE IS NOT OTHERWISE RESOLVED THROUGH DIRECT DISCUSSIONS OR MEDIATION, I AGREE THAT THE CONTROVERSY OR CLAIM, INCLUDING THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL THEN BE RESOLVED BY FINAL AND BINDING CONFIDENTIAL ARBITRATION ADMINISTERED BY JAMS IN ACCORDANCE WITH ITS STREAMLINED ARBITRATION RULES AND PROCEDURES OR SUBSEQUENT VERSIONS THEREOF . . . .

ECF No. 32-1 at J003.

The Agreement thus explicitly states that disputes regarding the "scope and applicability" of the arbitration clause will be decided by an arbitrator. Id. The Ninth Circuit has determined that similar language in other agreements constitutes a clear and unmistakable agreement to arbitrate threshold questions of arbitrability. See Momot, 652 F.3d at 988 (9th Cir. 2011) (holding that language delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of" the arbitration clause constitutes an agreement to arbitrate threshold issues of

arbitrability in "clear[]" and "unmistakeabl[e]" terms); Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1208 (9th Cir. 2016) (stating that "language delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement"). Further, the Audition Agreement states that any controversy or claim arising out of or related to the agreement will "be resolved by final and binding confidential arbitration administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures or subsequent versions thereof." ECF No. 32-1 at J003. The Ninth Circuit has held that incorporation of the JAMS arbitration rules constitutes a clear and unmistakable agreement to arbitrate arbitrability. Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc., 497 F. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability.").

The Court rejects Plaintiff's argument that threshold questions regarding the arbitrability of his ADA claims may not submitted to an arbitrator because he did not explicitly waive his statutory rights. It is well-settled that arbitration agreements need not specifically state that statutory claims are covered for such claims to be sent to arbitration. Zoller v. GCA Advisors, LLC, 993 F.3d 1198 (9th Cir. 2021) (finding that plaintiff knowingly agreed to arbitrate her statutory antidiscrimination claims even though the agreement did not explicitly reference any statutes or discrimination claims, because the plaintiff signed an arbitration agreement that specifically stated it applied to controversies or claims relating to or arising out of her employment and employment agreement); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Indeed, the ADA itself encourages parties to resolve disputes through arbitration where appropriate. See 42 U.S.C. § 12212 ("Where appropriate and to the extent authorized by law, the use of alternative dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter."). Thus, the Court concludes that based on the language of the delegation clause contained within the Audition Agreement, the parties clearly and

unmistakably agreed to arbitrate gateway issues, including whether Plaintiff's ADA claim falls within the scope of the arbitration agreement.

The Court further rejects Plaintiff's claim that the delegation clause is itself unconscionable. In order for a contract or contract provision to be unconscionable, it must be both procedurally and substantively unconscionable. See United States Home Corp. v. Ballesteros Trust, 415 P.3d 32 (Nev. 2018); Burch v. Second Judicial Dist. Court, 49 P.3d 647 (Nev. 2002). A contract is unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." D.R. Horton, Inc. v. Green, 96 P.3d 1159, 1162 (Nev. 2004). When considering an unconscionability challenge to a delegation provision, courts consider arguments "specific to the delegation provision." Willis v. Fitbit, Inc., No. 19-cv-01377-DMS-WVG, 2020 U.S. Dist. LEXIS 13338, at *8 (S.D. Cal. Jan 24, 2020) (quoting Rent-A-Ctr., 561 U.S. at 73). "In other words, the nonmovant must 'argue that the agreement to delegate to an arbitrator his unconscionability claim was itself unconscionable' for the Court to address the unconscionability challenge." Id. (quoting Brenan v. Opus Bank, 796 F.3d 1125, 1133 (9th Cir. 2015)). "Unless the nonmovant 'challenge[s] the delegation provision specifically, [courts] must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the [Arbitration] Agreement as a whole for the arbitrator.'" Id. (quoting Rent-A-Ctr., 561 U.S. at 72).

Plaintiff argues that the delegation clause is unconscionable because it is an adhesion contract that puts Plaintiff in a "take-it-or-leave-it" position. See ECF No. 33 at 10 (quoting D.R. Horton, 96 P.3d at 1162). He also argues that the arbitration agreement as a whole lacks mutuality, because it gives Defendants the ability to seek injunctive relief, but requires Plaintiff to give up his rights to injunctive relief. The Court rejects both of these arguments. First, Plaintiff cannot establish substantive or procedural unconscionability because he has not persuasively shown that the Audition Agreement is an adhesion contract. "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." Kindred v. Second Jud. Dist. Ct. ex rel.

Cnty. of Washoe, 996 P.2d 903, 907 (Nev. 2000). Plaintiff identifies no binding or persuasive caselaw which states that prospective contestants on reality shows are "consumers of goods and services." To the contrary, courts in this circuit have held that "strictly voluntary recreational pursuits . . . do not constitute the rendition of essential services" such that courts would be likely to find that a contract of adhesion exists. Charnis v. Watersport Pro, LLC, No. 2:07-cv-00623-RLH-GWF, 2009 U.S. Dist. LEXIS 76022, at *14-15 (D. Nev. May 1, 2009); see also Pokrass v. Directv Group, Inc., No. EDCV-07-423-VAP-JCRx, 2008 U.S. Dist. LEXIS 110441, at *20 (C.D. Cal. Jul. 14, 2008) (stating that "courts have consistently declined to find procedural unconscionability in contracts for nonessential recreational activities"). Furthermore, even if Plaintiff could show that he was subjected to a contract of adhesion, which he has not, he has not identified how the contract is "unduly oppressive." Mohazzabi v. Fargo, No. 2:18-cv-02137-RFB-VCF, 2019 U.S. Dist. LEXIS 163961, at *8 (D. Nev. Sept. 25, 2019) ("[A]n adhesion contract need not be unenforceable if it falls within the reasonable expectations of the weaker or 'adhering' party and is not unduly oppressive."). With regards to Plaintiff's argument that the arbitration agreement is unconscionable because it lacks mutuality, the Court finds that this is not an argument directed specifically to the unconscionability of the delegation clause. See Brennan, 796 F.3d at 1133. As such, the Court need not consider this issue, because "it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." Id.

In sum, the Court finds that the parties clearly and unmistakably agreed that disputes arising out of the Audition Agreement, including the scope and applicability of the agreement to arbitrate, shall be decided by an arbitrator. As such, the Court finds it appropriate for an arbitrator to decide the question of whether Plaintiff's ADA claim is arbitrable and grants Defendant's Motion to Compel Arbitration.

VI.   **CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Supplemental Memorandum (ECF No. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Arbitration (ECF No.

31) is **GRANTED**. All claims in this case are dismissed as the Court finds they are subject to mandatory arbitration.

      This Order terminates all pending motions. The Clerk of the Court is instructed close this case.

DATED: August 18, 2022

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**